## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **THE DISTRICT OF COLUMBIA** | : | |
| | : | |
| Plaintiff, | : | |
| | **:** | |
| v. | : | **Civil Action No. 06-2105 (PLF)** |
| | : | |
| **LARRY ABRAMSON and** | : | |
| **CAROLINE NEWMAN,** | : | |
| | : | |
| Parents and next friend of S.A., | : | |
| | : | |
| Defendants. | : | |
| ──────────────────────── | : | |

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, by counsel, hereby respectfully moves this Court, pursuant to F.R.Civ.P. 56, to grant summary judgment in their favor in the above-captioned action.

The Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §1400 et seq. (IDEIA), provides that the school district where a student attends is responsible for evaluating a student for special education services. The student in this case attends school in Connecticut; therefore, the Connecticut school district is responsible for the student's evaluations. Nevertheless, the hearing officer ordered the District of Columbia Public Schools to evaluate the student for special education services, and, if found eligible, to pay the student's tuition costs at the Connecticut school, in violation of IDEIA.

As established by the administrative record, the accompanying supporting memorandum, and the statement of material facts as to which there is no genuine dispute,

the administrative determinations under IDEIA are inappropriate and should be

overturned.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

*/s/ Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**March 30, 2007**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **THE DISTRICT OF COLUMBIA** | : | |
| | : | |
| Plaintiff, | : | |
| | **:** | |
| **v.** | : | **Civil Action No. 06-2105 (PLF)** |
| | **:** | |
| **LARRY ABRAMSON and** | : | |
| **CAROLINE NEWMAN,** | : | |
| | : | |
| Parents and next friend of S.A., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**</u>

<u>**INTRODUCTION AND BACKGROUND**</u>

The student, S.A., was born January 16, 1991, and is a resident of the District of
Columbia.  *See Administrative Record ("AR") filed herein February 23, 2007, p. 20;
Plaintiffs' Answer ("Answer") filed herein December 29, 2006, para. 5.*  He attended
Janney Elementary School in the District of Columbia from kindergarten through second
grade. *AR, p. 78; Answer, para. 6.* Thereafter, S.A.'s parents unilaterally placed him at
The Lowell School, a private, non-special-education school, which he attended from third
through sixth grades.  *AR, p. 78; Answer, para. 7.*  In the seventh grade, S.A. began
attending Georgetown Day School, where he was again unilaterally placed by his parents.
He continued there until February, 2006, as a ninth grader.  *AR, pp. 22, 78.*  S.A. did not
receive special education services at Georgetown Day School, The Lowell School or
Janney Elementary School.  *AR, p. 76; Answer, para. 9.*

S.A. is now a fifteen-year-old high school student, who is extremely bright, with many cognitive scores in the 99th percentile. Until the 2005-2006 school year, S.A. had always been a good student. *AR, pp. 22, 82, 103-105.* Prior to the 2005-2006 school year, S.A.'s parents had never contacted the District of Columbia Public Schools ("DCPS") to request special education services. *Answer, para. 11.*

On January 4, 2006, S.A.'s mother visited the C.A.R.E. Center at Shaw Junior High School, requesting that S.A. be evaluated for special education services. *AR, p. 76; Answer, para. 12.* At that time she informed the C.A.R.E. Center that S.A.'s school performance had dropped off sharply, and that he had begun exhibiting organizational, attentional and behavioral problems at home and at school. His grades had dropped from A's and B's to C's and D's. *AR, p. 80; Answer, para. 13.*

On January 18, 2006, the C.A.R.E. Center staff convened a Multidisciplinary Team ("MDT") meeting to discuss S.A.'s eligibility for special education services. No decision was reached at that time. The C.A.R.E. Center requested additional information from S.A.'s parents. *Answer, para. 14.* In furtherance of the special education evaluation process, the C.A.R.E. Center contacted Georgetown Day School in February, 2006, to schedule a classroom observation for S.A. However, Georgetown Day informed the C.A.R.E. Center that S.A. had withdrawn from school, effective February 27, 2006. *AR, p. 60.*

In a letter dated March 13, 2006, counsel for Defendants, Michael Eig, informed the C.A.R.E. Center that S.A. had been removed from Georgetown Day School, and would be attending The Grove School ("Grove"), a therapeutic residential placement, in Madison, Connecticut. *AR, p. 158; Answer, para. 16.* In a follow-up letter dated April

17, 2006, Mr. Eig informed the C.A.R.E. Center that S.A. began attending Grove on April 4, 2006. *AR, p. 159; Answer, para. 17.*

In letters dated May 4, 2006, and May 23, 2006, The C.A.R.E. Center informed Mr. Eig that, pursuant to IDEIA, since S.A. was currently attending school in Connecticut, DCPS was no longer obligated to complete the evaluation process. The C.A.R.E. Center provided Mr. Eig with contact information for special education services for the Madison School District in Connecticut. *AR, pp. 60-61.*

On May 23, 2006, Defendants filed a request for an administrative due process hearing, alleging that DCPS violated its obligations under IDEIA by referring Defendants to the Madison, Connecticut School District. *AR, pp. 20-24; Answer, para. 19.* A resolution session was held on June 6, 2006, but the parties were unable to resolve the issues. *AR, pp. 88-90.*

In June, 2006, Grove evaluated S.A. and developed a Comprehensive Service Plan ("CSP") for him. A CSP is similar to an Individualized Educational Program ("IEP"). *AR, pp. 163-186; Answer, para. 21.*

The due process hearing was held on August 21, 2006, and the Hearing Officer's Determination ("HOD") issued on September 14, 2006. Although the hearing officer specifically declined to find that S.A. is a child with a disability, he found that DCPS's failure to complete the eligibility process within 120 days resulted in a denial of a free appropriate public education ("FAPE"). *AR, pp. 7-12.* The hearing officer ordered DCPS to convene a student evaluation plan meeting, conduct evaluations, convene an MDT meeting, and determine if S.A. is eligible for special education services. *Id.* If DCPS found S.A. eligible, they were to develop an Individual Education Plan ("IEP") for

S.A. *Id.* In addition, the hearing officer ordered DCPS to reimburse Defendants for

S.A.'s tuition at Grove from the date that an eligibility determination should have been

made by DCPS, until such time as the student was provided an appropriate placement. *Id.*

Plaintiff is appealing that HOD.

Plaintiff contends that 20 U.S.C. §1412(a)(10)(A) provides that each Local

Education Agency ("LEA") must conduct child find and provide equitable services to

parentally-placed private school children who attend private school *located in the LEA*,

regardless of where the child resides. As of April 4, 2006, the date S.A. began attending

Grove, the LEA in Madison, Connecticut became responsible for conducting child find

and providing equitable services to S.A.

## ARGUMENT

### I.    The Standards of Review Applicable in This Case

#### A.  The requirements for summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to

summary judgment if "there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C.Cir. 1994). Although a court should draw

all reasonable inferences from the records submitted by the nonmoving party, the mere

existence of a factual dispute, by itself, is insufficient to bar summary judgment. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To be genuine, the issue

must be supported by sufficiently admissible evidence such that a reasonable trier of fact

could find for the nonmoving party; to be material, the factual assertion must be capable

of affecting the substantive outcome of the litigation.  See id.; see also Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C.Cir. 1987).

In cases such as this, the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §1400 et seq. ("IDEIA"), dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B).  When (as here) neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997).

**B.  The criteria for review of administrative decisions under IDEIA**

IDEIA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(i)(2)(A).  In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  Stated differently, the court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them." Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Educ., 2001 U.S.Dist.LEXIS 6994, *12 (N.D.Ill. March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect. Angevine v. Smith, 292 U.S.App.D.C. 346, 959 F.2d 292, 295 (1992); Kerkam v. McKenzie, 274 U.S.App.D.C. 139, 862 F.2d 884, 887 (1988); Lyons v. Smith, 829 F.Supp. 414, 417 (D.D.C. 1993). While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." Lyons v. Smith, supra, 829 F.Supp. at 418. As recently expressed in S.H. v. State-Operated School Dist. of the City of Newark, 336 F.3d 260, 269-271 (3d Cir. 2003), a district court reviewing an HOD is "required to defer to the ALJ's factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record". This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices. Rowley, supra, 458 U.S. at 207-08.

Accordingly, before this Court may reverse the hearing officer's decision at issue, the Plaintiffs must show by a "preponderance of the evidence," giving the hearing officer's finding "due weight," that the hearing officer was wrong.

**II.  The HOD is Contrary to Law and Should be Overturned.**

> **A.  The School District where a Student Attends is Responsible for Conducting Evaluations to Determine Eligibility for Special Education Services.**

A state is eligible to receive federal monies to provide special education services, if the state has policies and procedures in place that meet the statutorily imposed criteria pursuant to IDEIA. *20 U.S.C. §1412(a)*. One criterion is that the monies received must be distributed proportionately to students enrolled by their parents in private schools

located within the local education agency ("LEA").  *20 U.S.C. §1412(a)(10)(i)(I)*.  To assure that the monies are proportionately distributed, the LEA, "after timely and meaningful consultation with representatives of private schools as described in clause (iii), **shall conduct a thorough and complete child find process** to determine the number of parentally placed children with disabilities attending private schools **located in the local educational agency**."  *20 U.S.C. §1412(a)(10)(i)(II)*.  Thus, the LEA where the student attends school is responsible for conducting evaluations to determine whether the student is eligible for special education services, *regardless of where the parents reside*.

IDEIA enacted in 2004 significantly changed the obligations of the LEA.  These changes are discussed in the Department of Education, Rules and Regulations, Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children With Disabilities, August 14, 2006, 71 FR 46540-01.  *AR, pp. 218-246.*  Prior to the 2004 revisions, the LEA where the parents reside was responsible for conducting the child find process.  After the 2004 revision, the LEA where the private school is located and where the child is enrolled is required to conduct child find and provide equitable services to parentally-placed private school children with disabilities, 71 FR 46590 (2006).  *AR, pp. 219, 224-225.*

Although this issue—whether the LEA in which the student is enrolled or the LEA in which the parents reside is responsible for completing the child find process—is one of first impression for this Court and other courts across the country, The Department of Education comments and discussion clarify the legislative intent and simplify the Court's decision.

Comment: One commenter recommended that the LEA where private schools are located be responsible for locating and identifying children with disabilities enrolled by their parents in private schools and the LEA where the children reside be responsible for conducting individual evaluations.

Discussion: [IDEIA] requires that the LEA where private elementary schools and secondary schools in which the child is enrolled are located, **not the LEA where the child resides**, is responsible for conducting child find, including an individual evaluation for a child with a disability enrolled by the child's parent in a private elementary school or secondary school located in the LEA. **The Act specified that the LEA where the private school is located is responsible for conducting both the child find process and the initial evaluation.** (Emphasis added).

*AR, p. 230-231; 71 FR 46591-92 (2006).*

Comment: A few commenters stated that [IDEIA] does not address which LEA has the responsibility for reevaluations.

Discussion: The LEA **where the private schools are located** is responsible for conducting reevaluations of children with disabilities enrolled by their parents in private elementary schools and secondary schools **located within the LEA.** Reevaluation is a part of the LEA's child find responsibility for parentally-placed private school children.

*AR, p. 237; 71 FR 46593 (2006).*

It is clear from the comments and discussion that IDEIA revised in 2004 intended the LEA in which the student is enrolled to bear the child find responsibilities. In this case, Defendants requested DCPS to begin the child find process in January, 2006. Two months later Defendants informed DCPS that S.A. would be attending school in Madison, Connecticut. Once S.A. enrolled in the Grove School in April, 2006, the LEA in Madison, Connecticut became responsible for conducting the child find process. Indeed, the fact that The Grove School completed a Comprehensive Service Plan, similar to an IEP, within two month of S.A.'s enrollment, indicates that the LEA of Madison, Connecticut was aware of its responsibility to conduct child find under IDEIA.

The Hearing Officer concluded that DCPS' failure to complete the eligibility process within 120 days of the parental request was a denial of FAPE. However, since it was the responsibility of the Madison, Connecticut LEA to conduct the child find process, there was no denial of FAPE. Accordingly, the HOD must be overturned.

**B.  Providing FAPE and Conducting Child Find are not Inconsistent Principles.**

The purpose of IDEIA is to ensure that all children **with disabilities** have available to them a free appropriate public education ("FAPE"). *20 U.S.C. §1400(d)(1)(A).* Thus, in order to be eligible to receive services pursuant to IDEIA, one must first show that a child is disabled, and that the disability affects his learning capabilities. To show that a child is disabled and eligible to receive FAPE, an agency must first conduct child find—"a full and individual initial evaluation"—20 U.S.C. §1414(a)(1)(A). Once a child has been determined disabled pursuant to the statute, and is deemed eligible to receive special education and related services, the LEA where the child *resides* must provide FAPE. *20 U.S.C. §1412(a)(1)(A).* However, the responsibility for the child find process—which **precedes** a determination of whether the child is eligible for FAPE—lies  with the LEA in which the parentally placed child in enrolled. *20 U.S.C. §1412(a)(10)(i)(II).*

In this case, the Hearing Officer concluded that since "DCPS must offer FAPE to all children who reside in the District," and DCPS did not complete the evaluation process, DCPS denied the student FAPE. *AR, p. 9.* Plaintiff does not dispute that DCPS must offer FAPE to disabled children **who are eligible** pursuant to IDEIA. However, what the Hearing Officer failed to consider is that an eligibility determination must

precede an offer of FAPE, and the responsibility for that eligibility determination rests
with the Connecticut LEA.

## **CONCLUSION**

In considering the legal issues presented here, the sequence and practicalities of
Defendants' conduct should be borne clearly in mind.  Until 2006, S.A. had attended
private schools in general education settings; he was a successful 15-year-old student and
had not attended a DCPS school since second grade.  The student's parent first asked for
an evaluation of  S.A. by DCPS in January of  2006, based on a then-recent decline in the
student's grades from A's and B's to C's and D's.  DCPS promptly convened a meeting
to consider S.A.'s eligibility for special education, but needed additional information.
Among other things, efforts to observe S.A. at Georgetown Day School, a private school
S.A. was then attending, were unsuccessful because the student had been withdrawn from
that school in February, 2006.  In March and April, 2006—before the end of the 120-day
period for conducting evaluations—Defendants' counsel informed DCPS of  S.A.'s
removal from the District and his unilateral enrollment at The Grove School—a
Connecticut private school whose annual tuition exceeds $80,000.   See
www.groveschool.org.  Defendants demanded that DCPS reimburse that expense.  And
the Hearing Officer's acceding to that demand was plainly wrong.

IDEIA transferred the responsibility to conduct the child find process from the
LEA in which the parents reside to the LEA in which the student is enrolled.  Therefore,
once Defendants unilaterally placed S.A. in a private school in Madison, Connecticut, the
Madison County School District became responsible for conducting the child find
process.  Since it was no longer the responsibility of DCPS to continue with the

evaluation process, there was no denial of FAPE.  Accordingly, the HOD must be

overturned, and Plaintiff's Motion for Summary Judgment must be granted.


                              Respectfully submitted,

                              LINDA SINGER
                              Acting Attorney General for the
                                District of Columbia

                              GEORGE C. VALENTINE
                              Deputy Attorney General
                              Civil Litigation Division

                              /s/ *Edward P. Taptich*_____
                              EDWARD P. TAPTICH (012914)
                              Section Chief
                              Equity Section Two

                              /s/ *Veronica A. Porter*_____
                              VERONICA A. PORTER (412273)
                              Assistant Attorney General
                              Civil Litigation Division
                              Equity Section Two
                              441 Fourth Street, N.W., Sixth Floor South
                              Washington, D.C.  20001
                              (202) 724-6651 (phone)
                              (202) 727-3625 (facsimile)
                              veronica2.porter@dc.gov


**March 30, 2007**

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **THE DISTRICT OF COLUMBIA** | : | |
| | : | |
| Plaintiff, | : | |
| | **:** | |
| v. | : | **Civil Action No. 06-2105 (PLF)** |
| | : | |
| **LARRY ABRAMSON and** | : | |
| **CAROLINE NEWMAN,** | : | |
| | : | |
| Parents and next friend of S.A., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

### STATEMENT OF MATERIAL FACTS AS TO WHICH
### THERE IS NO GENUINE ISSUE

1.  The student, S.A., was born January 16, 1991, and is a resident of the District of Columbia.  *See Administrative Record (AR) filed herein February 23, 2007, p. 20; Plaintiffs' Answer (Answer) filed herein December 29, 2006, para. 5.*

2.  S.A. attended Janney Elementary School (Janney) in the District of Columbia from kindergarten through second grade.  *AR, p. 78; Answer, para. 6.*

3.  S.A. was unilaterally placed by his parents at The Lowell School, a private, non-special education school from third through sixth grades.  *AR, p. 78; Answer, para. 7.*

4.  S.A. began attending Georgetown Day School in seventh grade, where he was again unilaterally placed by his parents, and continued there until February, 2006, when he was in ninth grade.  *AR, pp. 22, 78.*

5.  S.A. did not receive special education services at Georgetown Day School, The Lowell School or Janney Elementary School.  *AR, p. 76; Answer, para. 9.*

6.  S.A. is now a fifteen-year-old high school student, who is extremely bright, with many cognitive scores in the 99th percentile.  Up until the 2005-2006 school year, S.A. had always been a good student.  *AR, pp. 22, 82, 103-105.*

7.  Prior to the 2005-2006 school year, S.A.'s parents had never contacted the District of Columbia Public Schools ("DCPS") to request special education services.  *Answer, para. 11.*

8.  On January 4, 2006, S.A.'s mother visited the C.A.R.E. Center at Shaw Junior High School, requesting that S.A. be evaluated for special education services. *AR, p. 76; Answer, para. 12.*

9.  On January 4, 2006, S.A.'s mother informed the C.A.R.E. Center that S.A.'s school performance had dropped off sharply, and that he had begun exhibiting organizational, attentional and behavioral problems at home and at school.  His grades had dropped from A's and B's to C's and D's.  *AR, p. 80; Answer, para. 13.*

10.  On January 18, 2006, the C.A.R.E. Center staff convened a Multidisciplinary Team ("MDT") meeting to discuss S.A.'s eligibility for special education services.  No decision was reached at that time.  The C.A.R.E. Center requested additional information from S.A.'s parents.  *Answer, para. 14.*

11.  In furtherance of the special education evaluation process, the C.A.R.E. Center contacted Georgetown Day School in February, 2006, to schedule a classroom observation for S.A.  However, Georgetown Day informed the C.A.R.E. Center that S.A. had withdrawn from school, effective February 27, 2006.  *AR, p. 60.*

12.  In a letter dated March 13, 2006, counsel for Defendants, Michael Eig, informed the C.A.R.E. Center that S.A. had been removed from Georgetown Day School, and would be attending The Grove School ("Grove") in Madison, Connecticut—a therapeutic residential placement.  *AR, p. 158; Answer, para. 16.*

13.  In a follow-up letter dated April 17, 2006, Mr. Eig informed the C.A.R.E. Center that S.A. began attending Grove on April 4, 2006.  *AR, p. 159; Answer, para. 17.*

14.  In letters dated May 4, 2006 and May 23, 2006, The C.A.R.E. Center informed Mr. Eig that, pursuant to IDEIA, since S.A. was currently attending school in Connecticut, DCPS was no longer obligated to complete the evaluation process.  The C.A.R.E. Center provided Mr. Eig with contact information for special education services for the Madison School District in Connecticut.  *AR, pp. 60-61.*

15.  On May 23, 2006, Defendants filed a request for an administrative due process hearing, alleging that DCPS violated its obligations under IDEIA by referring Defendants to the Madison, Connecticut School District.  *AR, pp. 20-24; Answer, para. 19.*

16.  In June, 2006 Grove evaluated S.A. and developed a Comprehensive Service Plan ("CSP") for him.  A CSP is similar to an Individualized Educational Program ("IEP").  *AR, pp. 163-186; Answer, para. 21.*

                Respectfully submitted,

                LINDA SINGER
                Acting Attorney General for the
                  District of Columbia

                GEORGE C. VALENTINE
                Deputy Attorney General
                Civil Litigation Division

/s/ *Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

/s/ *Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **THE DISTRICT OF COLUMBIA** | : | |
| | : | |
| Plaintiff, | : | |
| | **:** | |
| v. | : | **Civil Action No. 06-2105 (PLF)** |
| | **:** | |
| **LARRY ABRAMSON and** | : | |
| **CAROLINE NEWMAN,** | : | |
| | : | |
| Parents and next friend of S.A., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**ORDER**

On consideration of Plaintiff's motion for summary judgment filed March 30, 2007, the response thereto and the record in this proceeding, it is, this _____ day of _____, 2007,

**ORDERED**, That the September 14, 2006, Hearing Officer's Determination is vacated; it is

**FURTHER ORDERED**, That summary judgment for the Plaintiff is granted;

**FURTHER ORDERED**, an award of attorneys fees and costs to the Plaintiff.

_____
UNITED STATES DISTRICT JUDGE