**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE DISTRICT OF COLUMBIA, | |
| Plaintiff, | |
| v. | Civil Action No. 06-CV-2105 (PLF) |
| LARRY ABRAMSON and CAROLINE NEWMAN parents and next friend of S.A., | |
| Defendants. | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants respectfully request that this Court enter summary judgment in their favor.  The grounds for this motion appear in the accompanying memorandum of points and authorities.

WHEREFORE, defendants respectfully request that this motion be granted.

Respectfully submitted,

/s/ (filed electronically)
Michael J. Eig          #912733_____
Haylie M. Iseman       #471891
Matthew B. Bogin       #911552
Paula A. Rosenstock    #494580

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE DISTRICT OF COLUMBIA,<br><br>    Plaintiff,<br><br>    v.<br><br>LARRY ABRAMSON and<br>CAROLINE NEWMAN<br>parents and next friend of S.A.,<br><br>    Defendants. | Civil Action No. 06-CV-2105 (PLF) |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION.**

S.A. is a child with a disability who resides in the District of Columbia.  As a resident, under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§1400, *et seq*., he is entitled to receive special education and related services from plaintiffs through the District of Columbia Public Schools ("DCPS" or "the school system").  However, When DCPS failed to provide S.A. with *any* educational services whatsoever, and refused to complete the legally required special education process, S.A. and his parents, Larry Abramson and Caroline Newman ("the family" or "the parents"), initiated an administrative appeal alleging a failure to provide S.A. with the free appropriate public education ("FAPE") and due process of law to which he is entitled under IDEA.

Through their administrative appeal, the parents sought placement at The Grove School ("Grove") in Madison, Connecticut, a non-public therapeutic residential program where S.A. receives all of his special education services in a setting appropriate to meet his educational

1

needs.  This action comes in response to the school system's appeal of a decision of the Hearing

Officer, who correctly found that DCPS denied S.A. a FAPE by failing to comply with the 120-

day timeline for eligibility, ordered DCPS to complete the special education process within forty-

five days and, once found eligible, ordered DCPS to provide the parents with reimbursement for

S.A.'s placement at Grove.

As there are no material facts in dispute, and as defendants are entitled to judgment as a

matter of law, we respectfully request that this Court enter summary judgment in favor of S.A.

and his parents, thereby continuing to provide them with the relief to which they are entitled.

## II. FACTUAL BACKGROUND.

### A.    The 2005-06 School Year.

S.A. is a sixteen-year-old young man who is currently, and at all times during this process

has been, a resident of the District of Columbia.  *See* Hearing Officer's Decision at ¶ 9.  S.A. is

extremely bright, with many cognitive scores in the 99th percentile.  However, he has been

diagnosed with Asperger's Syndrome and has a history of attention deficit hyperactivity disorder

and emotional and behavioral difficulties, that have increased significantly over the past year.

Complaint ¶ 10; Answer ¶ 10; Administrative Record, pages 92-110.[1]

Beginning in the seventh grade, and until February 27, 2006, S.A. attended the

Georgetown Day School ("Georgetown Day"), a private facility within the District of Columbia.

---

[1]    The Administrative Record was submitted to the Court on February 23, 2007.  Citations
to the record will here hereafter appear as "Admin. Rec. at ___"

2

Complaint ¶ 8; Hearing Officer's Decision at ¶3.[2]  At Georgetown Day S.A. received

individualized support designed to meet his particular needs, in a structured and supportive

environment with a lower than typical student:teacher ratio and class size.  Answer ¶ 9.

On January 4, 2006, the parents went to DCPS to register S.A. as a non-attending DCPS

student.  Complaint ¶¶ 12 and 13; Answer ¶¶ 12 and 13;  Admin. Rec. at 157.  They did so by

going to the Central Assessment Referral and Evaluation Center ("C.A.R.E. Center") and

bringing documents to evidence the family's residency in the District.  They also brought with

them a number of S.A.'s evaluative and educational documents, in order to give DCPS an

opportunity to understand the educational challenges posed by his disabilities.  Complaint ¶¶ 12

and 13; Answer ¶¶ 12 and 13;  Hearing Officer's Decision at ¶2.  Staff at the C.A.R.E. Center,

permitted the parents to register S.A. as a non-attending DCPS student.  *Id.*

On January 18, 2006, the C.A.R.E. Center staff convened a Multidisciplinary Team

Meeting ("MDT Meeting") with the parents, to discuss IDEA eligibility and services for S.A.  At

that time, and at the direction of the C.A.R.E. Center staff, the parents changed the date on the

Private/Religious School Student Referral Form to January 18, 2006.  DCPS did not complete

the IDEA's educational planning process on this date.  Complaint ¶14; Answer ¶14.

In February 2006, S.A. had to be permanently removed from Georgetown Day due to his

increased difficulty within the school setting.  Via a letter, the parents advised DCPS of his

immediate need for a change in placement from Georgetown Day.  Complaint ¶¶ 15 and 16;

---

[2]    Impartial Hearing Officer Coles Ruff decided the administrative case, in *S.A. v. District of Columbia Public Schools*, (September 14, 2006).  Citations to this determination will hereafter appear as "Hearing Officer's Decision at ___" or, as it relates to his findings of fact, "Hearing Officer's Decision ¶ ___".  The Hearing Officer's Decision can also be found in the Administrative Record at pages 2-15.

Answer ¶¶ 15 and 16; Admin. Rec. at 158-160.    On April 4, 2006, S.A.'s parent enrolled him in

a therapeutic residential placement at Grove in Madison, Connecticut and they advised DCPS of

this new placement.  Complaint ¶ 17; Answer ¶ 17; Hearing Officer's Decision at ¶5 and 6;

Admin Rec. at 159-60.

On May 5, 2006, DCPS convened a second MDT Meeting, which the parents attended.

However, the MDT declined to continue any further with the IDEA process, explaining that S.A.

was no longer the responsibility of DCPS, since he was by then attending a private school outside

of the District.  The C.A.R.E. Center staff informed the family that they would instead have to

register S.A. within the school system of the county in which Grove is located.  Complaint ¶ 18;

Answer ¶18; Hearing Officer's Decision at ¶8; Admin. Rec. at 84, 87-90.

### B.    The Due Process Hearing.

On May 23, 2006, S.A.'s parents filed a request for a due process hearing based on the

failure of DCPS to evaluate S.A., determine his eligibility, and provide him with an

Individualized Education Program ("IEP") and special education placement.  Complaint ¶ 19;

Answer ¶ 19; Admin. Rec. at 71-75.  A hearing was held on August 21, 2006 and the Hearing

Officer issued his decision on September 14, 2006.  Complaint ¶ 22; Answer ¶ 22; Hearing

Officer's Decision at 1-11.

The Hearing Officer concluded that as S.A.'s Local Educational Agency ("LEA"), DCPS,

is responsible for offering a FAPE by evaluating him, convening an eligibility meeting,

determining eligibility, and if S.A. is found eligible, developing an IEP and offering an

appropriate placement.  Complaint ¶¶ 23-28; Hearing Officer's Decision at 8-10.  Further, he

found that DCPS denied S.A. a FAPE by failing to complete the eligibility process within the

120-day timeline.  Complaint ¶ 24; Hearing Officer's Decision at 9.  The Hearing Officer ordered

DCPS to promptly complete the special education process and upon a finding of eligibility,

reimburse the parents for the Grove tuition until such time that DCPS provides an appropriate

placement. Complaint ¶¶ 26-28;  Hearing Officer's Decision at 10.

### C.    Events That Have Occurred Since the Hearing Officer's Decision.[3]

On September 14, 2006, the Hearing Officer ordered DCPS to determine S.A.'s eligibility

for IDEA services, draft an IEP, and propose a placement within forty-five days.  Further, if

eligible, the Hearing Officer ordered DCPS to reimburse the parents for S.A.'s placement at

Grove.  Hearing Officer's Decision at 10-11.

DCPS met the deadline to hold the student evaluation plan meeting, but, as of November

17, 2006, sixty-four days after the Hearing Officer's decision, DCPS had failed to complete

evaluations or propose a program or placement for S.A.  Specifically, by November 17, 2006,

DCPS had conducted no evaluations, had not followed through on the parents' signed

authorizations to consult with professionals working with S.A. at Grove, had not clarified,

despite repeated requests, whether the school system had to physically see S.A. to conduct its

process and, if so, whether that could be done in his school placement at Grove or he had to be

brought to DC.  In fact, as of November 17, 2006, DCPS had stopped responding to the parents'

---

[3]     Defendants acknowledge that the events that have occurred since the Hearing Officer's
Decision, and the documents that support those events, are not currently in the record before this
Court.  However, these events are important in order to gain an overall understanding of the case
and we therefore request that the Court consider them as additional evidence.  The IDEA
provides that, in any action brought to appeal the results of a due process hearing, "the court…
*shall hear additional evidence* at the request of a party."  20 U.S.C. § 1415 (i)(2)(C)(ii)(emphasis
added).  Further, Courts can take additional evidence especially when it pertains to after-
occurring events directly relating to the student's on-going special education needs.  *See Justin
G. v. Bd. of Educ.*, 148 F.Supp. 2d, 576 (D.Md. 2001).

letters asking for guidance. See Letters between Michael Eig and Patricia Young (attached as Exhibits 1, 2, 3, 4, and 5). In other words, despite the Hearing Officer's specific order, DCPS simply shut down all meaningful communications regarding S.A.

After unsuccessfully requesting that the Hearing Officer reopen the hearing, S.A.'s parents filed a new due process hearing request on November 17, 2006, again requesting that DCPS be ordered to place and fund S.A. at Grove. *See* November 17, 2006 letter to Coles Ruff from Michael Eig (attached as Exhibit 6), and November 17, 2006 Due Process Hearing Complaint (attached as Exhibit 7).

On December 20, 2006 DCPS finally completed evaluations of S.A. and scheduled an IEP meeting. Based on these events, S.A.'s parents withdrew the due process hearing request without prejudice on January 17, 2007.

At a March 9, 2007 MDT meeting, DCPS found S.A. eligible to receive special education services as a student with autism, other health impairment, and an emotional disability. At the meeting, the team drafted an IEP. *See* March 9, 2007 MDT Meeting Notes and IEP (attached as Exhibit 8). However, to date – 176 days after the Hearing Officer issued his order – DCPS has failed to propose a placement for S.A. DCPS has egregiously violated the Hearing Officer's Order by failing to comply with the deadlines and S.A. is still without a proposed placement.

## III.  ARGUMENT.

### A.    Summary Judgment in Favor of the Defendants Is Appropriate.

For summary judgment to be appropriate, a party must demonstrate that there are no material facts in dispute and that one party is entitled to judgment as a matter of law. Fed. R.

6

Civ. P. 56(c).  An issue of fact is considered to be "genuine" if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the context of the IDEA, a federal court must give "due weight to the findings of the local and state educational agencies even though it must also make an independent decision based upon a preponderance of the evidence."  *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 205-06 (1982).  The primary source of evidence in an IDEA case should come from the administrative hearing, and the administrative proceedings must not be considered a dry run for protracted litigation in federal court.  *Springer v. Fairfax County Sch. Bd.*, 134 F. 3d 659, 667 (4th Cir. 1997); *Burlington Sch. Comm. v. Department of Educ.,* 471 U.S. 359 (1985), *aff'g Town of Burlington v. Department of Educ. for the Commonwealth of Mass.*, 736 F.2d 773 (1st Cir. 1984).

The findings of the Hearing Officer are crucial under the IDEA appellate scheme. The Hearing Officer hears all of the evidence, asks questions at times, and has received both specialized training and on-the-job experience in the educational issues being presented.  The administrative findings, therefore, are not easily disturbed.  While this Court is required to make an independent decision based upon the preponderance of the evidence, it first affords due weight to the *regularly made* findings of fact at the administrative level.  A Hearing Officer's findings of fact are considered *prima facie* correct   *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991) (emphasis supplied).  Only if  these findings are not regularly made, or the application of the law to the facts is plainly erroneous, does the decision not merit significant deference.  *Teague Independent School Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993).

7

Here, based on the specificity and quality of both the Hearing Officer's factual findings and legal analysis, the deference to be afforded the due process decision is nearly controlling. The Hearing Officer considered all relevant, reliable evidence and properly applied the law to the facts. The school system's apparent dissatisfaction with his result does not change the evidence or the legal result.

Thus, we would respectfully submit that this Court should afford the normal deference to the Hearing Officer's findings and conclusions. The Hearing Officer correctly concluded that defendants' failure to complete the eligibility process within the 120-day timeline is a denial of FAPE. Further, the Hearing Officer correctly ordered DCPS to provide reimbursement to the family once S.A. was found eligible for special education services. The decision therefore should be granted due weight by this Court. Further, this Court should order DCPS to continue to place and fund S.A. at Grove, consistent with the Hearing Officer's Decision.

**B.    This Court Should Affirm the Hearing Officer's Findings that DCPS Has a Fundamental Obligation to Provide S.A. with a FAPE.**

Apparently, plaintiffs would have this Court believe that, pursuant to the recently re-authorized IDEA, DCPS is relieved of its obligation to evaluate a student's special education needs and provide a FAPE when the student is attending a private school located outside of the district. Instead, the school system argues that the LEA in which the student's private school is located is responsible for evaluating the student and providing a FAPE, regardless of where the student resides.

This position is based on a misunderstanding of the law. Both federal and local law provide that an LEA "shall make a free appropriate public education available to each child with

a disability, ages three to twenty-two, *who resides in*, or is a ward of, the District."  5 D.C.M.R. §

3002.1(a) (emphasis added); *see also* 20 U.S.C. § 1412(a)(1)(a).  In addition, the IDEA's child-

find provision requires that:

> All children with disabilities *residing in the State*, including . . .
> children with disabilities attending private schools, regardless of
> the severity of their disabilities, and who are in need of special
> education and related services, are identified, located, and
> evaluated and a practical method is developed and implemented to
> determine which children with disabilities are currently receiving
> needed education and related services.

20 U.S.C. § 1412(a)(3)(A)  (emphasis added).  The federal and local law are explicit – DCPS has

a responsibility to evaluate all students *residing* within the District of Columbia, and provide

them with a FAPE, regardless of where they attend school.  This responsibility is particularly true

when, as in this case, the parents come to the school system and ask for it to evaluate their child.

By failing to consider S.A.'s special education needs, DCPS denied him FAPE.

In making its argument, DCPS relies upon the changes to the law which state that "each

LEA must locate, identify, and evaluate all children with disabilities who are enrolled by their

parents in private, including religious, elementary and secondary schools located in the school

district served by the LEA . . . ."  34 C.F.R. 300.131(a).  However, as the Hearing Officer notes,

"The 'child find' requirement referenced above, is distinct from the requirement of an LEA to

provide FAPE to its residents.  IDEA 2004 did not eliminate the need for [sic] an LEA to offer

FAPE to all children who reside in the LEA's educational district, even if the child is privately

placed by the parents in another jurisdiction."  Hearing Officer's Decision at 7.  Furthermore, in

S.A.'s case, the Hearing Officer notes that, "In the case of parental request for evaluation, the

student has already been identified by the parental request, thus obviating the LEA need to

9

identify that student as a possible student with a disability.  However, the LEA is then obligated

to move forward with the requirement of IDEIA § 1414(a)(1) and determine whether the student

is in fact a child with a disability."  Hearing Officer's Decision at 8.[4]  Clearly, DCPS' argument

is based on a misunderstanding of the law.

> **C.**    **20 U.S.C. § 1412(a)(10) Deals With the Provision of Equitable Services to Parentally-Placed Students and Does Not Affect the LEA's Responsibility to Provide a FAPE to Students Who Reside in its Jurisdiction.**

Plaintiffs' argument is based upon a misunderstanding of 20 U.S.C.

§ 1412(a)(10) of the IDEA.  Section 1412(a)(10)(A) of the IDEA refers to children[5] whose

parents have enrolled them in private school.  Typically, these students enroll in religious schools

and/or small independent schools and are entitled to what are referred to as "equitable services."

20 U.S.C. §1412(a)(10)(A)(vi).  The "equitable services" provision of the IDEA requires that

each LEA spend a proportionate amount of the subgrants that it receives for special education

services on students whose parents have placed them in private schools.  *See* Admin. Rec. at 139-

41.  Under the re-authorized IDEA, the LEA in which each child attends school is responsible for

providing him or her with equitable services, and must provide these services within the LEA's

jurisdiction.  This change to the IDEA is logical, since it is more efficient for a child to receive

---

[4]    On March 29, 2007 Hearing Officer H. St. Clair issued his decision in *A.M. v. District of Columbia Public Schools* (March 29, 2007) (attached).  In his decision, which is discussed in further detail below, he makes clear that the Child Find requirements which DCPS relies upon are not controlling by noting that "'Child Find' or 20 U.S.C. 1412 (a)(3) was not an issue in this matter because the parent requested evaluations of the student for special education services at DCPS, not the LEA [where the private school is located]." *See A.M.* at 3.

[5]    The IDEA identifies three categories of children in private schools: 1) students enrolled in private schools by their parents; 2) students placed in, or referred to, private schools by public agencies; and 3) parents seeking reimbursement for "education of children enrolled in private schools without consent of or referral by the public agency."  20 U.S.C. § 1412 (a)(10)(A) - (C).

(and for an LEA to provide) such limited after-school or during-school services in the same geographic area in which the child is located during the school day (as opposed to traveling during or after school, just to receive limited services). In addition, this change allows private schools the ease of having just one LEA with which to consult to ensure that children in their schools can participate in IDEA equitable services. *Id*.

This section of the IDEA is clearly not intended to deal with a child, such as S.A. whose parents wish to enroll him in the public school system in order to receive a determination of his eligibility for special education, and an offer of an appropriate educational program and placement.[6] Such a student remains entitled to the full panoply of individualized services contemplated in Section 1412(a)(1)-(9), and, if so placed by DCPS, to the continuing protections of 1412(a)(10)(B), et seq.

The United States Department of Education, Office of Special Education, has issued Questions and Answers on this precise issue. Question F-1 reads:

> Question:   If a parentally placed private school child is
>             identified through the child find process as a child
>             eligible for special education and related services,
>             which LEA is responsible for offering FAPE to a
>             parentally placed private school child with a
>             disability?
>
> Answer:     If a determination is made that a child has a
>             disability and needs special education and related
>             services, the LEA where the child resides is
>             responsible for making FAPE available to the child.

---

[6]     The fact that S.A. is already enrolled in and attending Grove makes no difference. As a resident of the District, and a student whose disabilities qualify him for services under the IDEA, he is still entitled to FAPE, which DCPS is responsible for providing.

11

*See* Admin. Rec. at 142-155. Therefore, the responsibility for identifying privately-placed children for the purpose of providing them equitable services is unrelated to the school system's responsibility to provide FAPE to each disabled student who resides in the District.

Furthermore, in January 2007 the Department of Education again restated its position and distinguished between those students seeking equitable services, and those asking the LEA of residence for a determination of FAPE by explaining that, there is "nothing in IDEA that prohibits parents from requesting that their child be evaluated by the LEA responsible for FAPE for purposes of having a program of FAPE made available to the child at the same time that the parents request that the LEA where the private school is located evaluate their child for purposes of considering the child for equitable services." *See* U.S. Department of Education, Questions and Answers On Serving Children with Disabilities Placed by Their Parents in Private Schools, Question and Answer E-1 (January, 2007), *available at* http://idea.ed.gov/explore/view/p/%2 Croot%2Cdynamic%2CQaCorner %2C1%2C.

Further, the Department makes clear that the *only* time an LEA where a private school is located is responsible to make an offer of FAPE is when "a parentally-placed private school child also resides in that LEA. . . . If a parentally-placed private school child resides in a different LEA, the district in which the private elementary or secondary school is located *is not responsible for making FAPE available to that child*." *Id*. at Question and Answer E-2. The Department has confirmed that the LEA of residence is responsible for both evaluating a student and providing a FAPE even when the student is attending a private school outside of the LEA of residence.

This issue was also recently addressed in *Ms. K. v. Maine Sch. Admin. Dist*, 2006 WL 3081555 (D. Me.).[7]  The Court considered whether 20 U.S.C. § 1412(a)(10)(A)(I) relieves the LEA where the child resides of its duty to provide services under the IDEA and instead places the burden on the LEA where the child's private school is located.  The Court held that it did not.  "The District construes this language as an instruction from Congress that the only LEA authorized to carry out the objectives of the IDEA for a child placed in a private school by his or her parents is the LEA in which the private school is located.  I disagree with this assertion and believe the hearing officer erred as a matter of law when he read the IDEIA as relieving the District [of residence] of all responsibility . . . ." *Ms. K* at 14.  Further, the Court states that it:

> cannot stress forcefully enough [its] opinion that the District's use of the IDEIA as some kind of trap door through which to jettison a special education child who is parentally placed in a private school because of parental dissatisfaction with the IEP subverts, utterly, the most basic objective of the IDEIA

*Id*.

Finally, several other Hearing Officers in the District of Columbia have addressed this very issue and found that DCPS must provide residents of the District who are seeking IDEA services with special educations services.  All of these cases have similar facts – a student was parentally placed at a private school outside of the District when the student's parent attempted to enroll him/her at the C.A.R.E. Center and begin the process of determining special education eligibility and placement.  In all of these cases, DCPS refused to register the student arguing that

---

[7]     *Mrs. K* was decided by a Magistrate Judge.  At the end of the decision it is noted that, "failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order."  *Mrs. K*, 2006 WL 3081555 at 15.  The decision was issued on October 26, 2006.  No objections or appeals were filed.

the parent must register the child in the LEA where the private school is located.  Similarly, in all

of these cases the Hearing Officers have held that DCPS' actions are a denial of FAPE.  Impartial

Hearing Officer David Smith issued his opinion in *C.S. v. District of Columbia Pub. Sch.,*(May 9,

2006) (attached).  In that case, DCPS refused to complete the registration process for C.S.

because she was already attending a private special education school located in Montgomery

County, Maryland.  While the Hearing Officer acknowledged the change to the IDEA, he

ultimately rejected DCPS' argument and found that, "*IDEA 2004 did not eliminate the need for*

*an LEA to offer FAPE to all children who reside in the LEA's educational district, even if the*

*child is privately placed by the parents in another jurisdiction*."  *C.S.* at 9 (emphasis added).  The

Hearing Officer found that by failing to properly register this student, DCPS denied her FAPE,

and ordered DCPS to place and fund her at the private school in Maryland.

More recently, in *R.S. v. District of Columbia Public Schools* (March 27, 2007)

(attached), the Hearing Officer found that DCPS failed to follow applicable law when turning

away a student attending school in Montgomery County, Maryland, and held that, "As a resident

of the District of Columbia, the student is entitled to be offered FAPE from DCPS,

notwithstanding the student attending a private school in Maryland." *R.S.* at 6.  The Hearing

Officer found that "to do nothing, as here, is not an attempt to meet the FAPE obligation, and in

fact, denies the student FAPE." *R.S.* at 7.  Accordingly, he ordered DCPS to reimburse the

parents for the student's placement retroactive to the start of the school year.  Finally, on March

29, 2007, Impartial Hearing Officer H. St. Clair issued his opinion in *A.M. v. District of*

*Columbia Public Schools* (March 29, 2007) (attached).  The Hearing Officer held that, "the

refusal of DCPS on January 4, 2007 to enroll the student at CARE as a non-attending student and to evaluate him for special education services was a Denial of FAPE as of that date." *A.M.* at 3.

DCPS has been told time and again that it is wrong, yet it continues to make the same argument and now appeals to this Court for relief.  The school system must be told that it is grossly misinterpreting the law and denying students their due process rights.  Therefore, this Court should affirm the decision and issue the appropriate relief.

> **D.    When a Student Has Been Denied FAPE, the Funding of a "Proper" Parental Placement Is the Appropriate Relief.**

Since the date of the Hearing Officer's Decision, DCPS has held an eligibility meeting and found S.A. eligible for special education services.  Therefore, according to the Hearing Officer's Decision, the family is entitled to reimbursement at Grove and continued prospective placement.  In addition, DCPS had forty-five days to from the date of the order to develop an IEP and propose placement for S.A.  To date, **DCPS has failed to propose a placement.**  DCPS has exceeded the timeline set forth by the Hearing Officer by more than 100 days.  We therefore ask that this Court order DCPS to place and fund S.A. at Grove for the remainder of the 2006-07 school year.

Under established Supreme Court law, the school system's failure to provide S.A. with a FAPE leads directly to the determination of whether his parents identified a placement that provided her with educational benefit.  The proper analysis in such an inquiry is found in *Burlington,* 471 U.S. 359 and *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993), *aff'g* 950 F.2d 156 (4th Cir. 1991).

In *Burlington*, the Supreme Court explained that "parents who disagree with the proposed [educational program] are faced with a choice: go along with the [proposed program] to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement." 471 U.S. at 370. To avoid compromising a child's right to a FAPE, the Court concluded that if "a court determined that a private placement desired by the parents was *proper* under the Act and that [a proposed] placement in a public school was inappropriate," the IDEA authorizes "retroactive reimbursement to parents." *Id.* (emphasis added). This result is necessary because "[t]he Act was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives." *Id.*

In *Carter*, the Supreme Court reaffirmed its ruling in *Burlington* and explained that "public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice." 510 U.S. at 13. Here, however, since DCPS failed to propose a placement for S.A. within the timeline, the inquiry must turn to whether his placement at Grove is "proper."

> **E.    Grove is a "Proper" Placement for S.A.**

The undisputed and unrebutted evidence demonstrates that S.A.'s placement at Grove meets the standard of "properness." At Grove, S.A. receives full-time special education in a highly structured, specialized, and therapy-integrated setting. Admin. Rec. 113-127, 162-187, 198-200. Grove has developed an individualized program for him that includes goals and objectives imperative to his educational success. Admin. Rec. 163-187. It simply cannot be

disputed that S.A. is receiving significant educational benefit at Grove and is making academic progress. Admin. Rec. at 198-200. Grove is the proper placement for him and anything less restrictive would not be appropriate to meet his needs. *Id*.

**IV.    CONCLUSION.**

For these reasons, and because the Hearing Officer here established a clear basis for his factual findings as well as applying applicable law to those findings of fact, we respectfully request that the Court affirm his decision, deny the motion for summary decision on behalf of plaintiffs, and grant the family the judgment to which they are entitled, including placement and funding for S.A. at The Grove School.

Respectfully submitted,

/s/ (filed electronically)
Michael J. Eig          #912733
Haylie M. Iseman       #471891
Matthew B. Bogin       #911552
Paula A. Rosenstock   #494580

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Defendants

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE DISTRICT OF COLUMBIA, | |
| Plaintiff, | |
| v. | Civil Action No. 06-CV-2105 (PLF) |
| LARRY ABRAMSON and CAROLINE NEWMAN parents and next friend of S.A., | |
| Defendants. | |

**STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7.1(h), plaintiffs submit this statement of material facts as to which there is no genuine issue.

1.      S.A. is a sixteen-year-old young man who is currently, and at all times during this process has been, a resident of the District of Columbia.  *See* Hearing Officer's Decision at ¶ 9.

2.      S.A. is extremely bright, with many cognitive scores in the 99th percentile. However, he has been diagnosed with Asperger's Syndrome and has a history of attention deficit hyperactivity disorder and emotional and behavioral difficulties, that have increased significantly over the past year.  Complaint ¶ 10; Answer ¶ 10; Administrative Record, pages 92-110.

3.      Beginning in the seventh grade, and until February 27, 2006, S.A. attended the Georgetown Day School ("Georgetown Day"), a private facility within the District of Columbia. Complaint ¶ 8; Hearing Officer's Decision at ¶3.  At Georgetown Day S.A. received individualized support designed to meet his particular needs, in a structured and supportive environment with a lower than typical student:teacher ratio and class size.  Answer ¶ 9.

4.      On January 4, 2006, the parents went to DCPS to register S.A. as a non-attending DCPS student.  Complaint ¶¶ 12 and 13; Answer ¶¶ 12 and 13;  Admin. Rec. at 157.  They did so by going to the Central Assessment Referral and Evaluation Center ("C.A.R.E. Center") and bringing documents to evidence the family's residency in the District.  They also brought with them a number of S.A.'s evaluative and educational documents, in order to give DCPS an opportunity to understand the educational challenges posed by his disabilities.  Complaint ¶¶ 12 and 13; Answer ¶¶ 12 and 13;  Hearing Officer's Decision at ¶2.

5.      Staff at the C.A.R.E. Center, permitted the parents to register S.A. as a non-attending DCPS student.  *Id*.

6.      On January 18, 2006, the C.A.R.E. Center staff convened a Multidisciplinary Team Meeting ("MDT Meeting") with the parents, to discuss IDEA eligibility and services for S.A.  At that time, and at the direction of the C.A.R.E. Center staff, the parents changed the date on the Private/Religious School Student Referral Form to January 18, 2006.  DCPS did not complete the IDEA's educational planning process on this date.  Complaint ¶14; Answer ¶14.

7.      In February 2006, S.A. had to be permanently removed from Georgetown Day due to his increased difficulty within the school setting.  Via a letter, the parents advised DCPS of his immediate need for a change in placement from Georgetown Day.  Complaint ¶¶ 15 and 16; Answer ¶¶ 15 and 16; Admin. Rec. at 158-160.

8.      On April 4, 2006, S.A.'s parent enrolled him in a therapeutic residential placement at Grove in Madison, Connecticut and they advised DCPS of this new placement. Complaint ¶ 17; Answer ¶ 17; Hearing Officer's Decision at ¶5 and 6; Admin Rec. at 159-60.

9.      On May 5, 2006, DCPS convened a second MDT Meeting, which the parents attended.  However, the MDT team declined to continue any further with the IDEA process, explaining that S.A. was no longer the responsibility of DCPS, since he was by then attending a private school outside of the District.  The C.A.R.E. Center staff informed the family that they would instead have to register S.A. within the school system of the county in which Grove is located.  Complaint ¶ 18; Answer ¶18; Hearing Officer's Decision at ¶8; Admin. Rec. at 84, 87-90.

10.      On May 23, 2006, S.A.'s parents filed a request for a due process hearing based on the failure of DCPS to evaluate S.A., determine his eligibility, and provide him with an Individualized Education Program ("IEP") and special education placement.  Complaint ¶ 19; Answer ¶ 19; Admin. Rec. at 71-75.

11.      A hearing was held on August 21, 2006 and the Hearing Officer issued his decision on September 14, 2006.  Complaint ¶ 22; Answer ¶ 22; Hearing Officer's Decision at 1-11.

12.      The Hearing Officer concluded that as S.A.'s Local Educational Agency ("LEA"), DCPS, is responsible for offering a FAPE by evaluating him, convening an eligibility meeting, determining eligibility, and if S.A. is found eligible, developing an IEP and offering an appropriate placement.  Complaint ¶¶ 23-28; Hearing Officer's Decision at 8-10.  Further, he found that DCPS denied S.A. a FAPE by failing to complete the eligibility process within the 120-day timeline.  Complaint ¶ 24; Hearing Officer's Decision at 9.

13.      The Hearing Officer ordered DCPS to promptly complete the special education process and upon a finding of eligibility, reimburse the parents for the Grove tuition until such

3

time that DCPS provides an appropriate placement.  Complaint ¶¶ 26-28;  Hearing Officer's Decision at 10.

14.    DCPS met the deadline to hold the student evaluation plan meeting, but, as of November 17, 2006, sixty-four days after the Hearing Officer's decision, DCPS had failed to complete evaluations or propose a program or placement for S.A.  Exhibits 1, 2, 3, 4, and 5 (attached to Defendants' Motion for Summary Judgment).

15.    After unsuccessfully requesting that the Hearing Officer reopen the hearing, S.A.'s parents filed a new due process hearing request on November 17, 2006, again requesting that DCPS be ordered to place and fund S.A. at Grove.  Exhibit 6 (attached to Defendants' Motion for Summary Judgment and Exhibit 7 (attached to Defendants' Motion for Summary Judgment).

16.    On December 20, 2006 DCPS finally completed evaluations of S.A. and scheduled an IEP meeting.  Based on these events, S.A.'s parents withdrew the due process hearing request without prejudice on January 17, 2007.

17.    At a March 9, 2007 MDT meeting, DCPS found S.A. eligible to receive special education services as a student with autism, other health impairment, and an emotional disability. Exhibit 8 (attached to Defendants' Motion for Summary Judgment).

18.    At the meeting, the team drafted an IEP. Exhibit 8.  However, to date – 176 days after the Hearing Officer issued his order – DCPS has failed to propose a placement for S.A.


Respectfully submitted,

/s/ (filed electronically)

4

Michael J. Eig          #912733
Haylie M. Iseman        #471891
Matthew B. Bogin        #911552
Paula A. Rosenstock     #494580

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Defendants

5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE DISTRICT OF COLUMBIA,

     Plaintiff,

       v.

                                   Civil Action No. 06-CV-2105 (PLF)

LARRY ABRAMSON and
CAROLINE NEWMAN
parents and next friend of S.A.,

     Defendants.

**ORDER**

Upon consideration of the parties' cross-motions motion for summary judgment, along with the related pleadings and any oppositions thereto, it is the finding of the Court that the facts are not in dispute, that the defendants are entitled to judgment as a matter of law, and it is by the Court, this _____ day of _____, 2006, hereby

ORDERED, that plaintiffs' motion for summary judgment be and the same is hereby DENIED; and it is

FURTHER ORDERED, that defendants' motion for summary judgment be and the same is hereby GRANTED; and it is

FURTHER ORDERED, that the administrative decision is affirmed.

                                _____
                                   United States District Judge

6

10/11/2006 11:29 FAX                                                    ☑002/002

 **DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Division of Special Education**
825 North Capitol Street, N.E., 6ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us


October 11, 2006


Michael J. Eig and Associates, P.C.
Attorneys at Law
5454 Wisconsin Avenue
Chevy Chase, Maryland 20815-6938

Re: S█t█ A█████████

Dear Mr. Eig:

On September 27, 2006, the DCPS multi-disciplinary team held a Student Evaluation Plan (SEP) meeting in which you and ████ parents were in attendance. At that time, documents including a comprehensive service plan, Grove's School clinical report, advisor review, academic program, student schedule, and report card were shared with our staff for review. In addition to these outside reports, the DCPS staff would like to have the opportunity to complete the eligibility process for Seth by conducting an observation, student interview and further assessments if necessary. Please inform me as to the date that ████ will be available for DCPS to complete this process.


Sincerely,

*Patricia Young*
Patricia Young
C.A.R.E. Center Director


cc: Gloria Everett
    Stephanie RamJohn

MICHAEL J. EIG AND ASSOCIATES, P.C.
ATTORNEYS AT LAW
SUITE 760
5454 WISCONSIN AVENUE
CHEVY CHASE, MARYLAND 20815-6938

(301) 657-1740
FACSIMILE (301)657-3843

OCT 1 2 2006

October 12, 2006

Patricia Young
Division of Special Education
825 North Capitol Street, NE, 6th floor
Washington, DC 20002

Re: S█ Ab█████
*via facsimile and first-class mail*

Dear Ms. Young:

A little over two weeks ago, the MDT meeting we attended for ███ concluded with DCPS staff asking for additional time to check with counsel regarding the possibility of DCPS staff going to the Grove School to complete its evaluation process. At our suggestion, my clients also signed authorizations for public school staff to contact virtually all of the professionals who have worked with, or evaluated, ███.

Now you have written inquiring when ███ would be available for "observation, student interview and further assessments if necessary." He is, and has been, available since before the MDT meeting—at Grove. That is obviously the only place he can be observed in class now.

Please clarify what it is that DCPS wants to do and where. We will then do everything in our power to cooperate. Thank you.

Sincerely,

Michael Eig

cc:    Larry Abramson and Caroline Newman
       The Grove School

**MICHAEL J. EIG AND ASSOCIATES, P.C.**
ATTORNEYS AT LAW
SUITE 760
5454 WISCONSIN AVENUE
CHEVY CHASE, MARYLAND 20815-6938
————
(301) 657-1740
FACSIMILE (301)657-3843

OCT 1 7 2006

October 17, 2006

Patricia Young
Division of Special Education
825 North Capitol Street, NE, 6th floor
Washington, DC 20002

Re: S█ Ab████
*via facsimile and first-class mail*

Dear Ms. Young:

Enclosed please find a copy of the final school report for the 2005-06 school year, as well as an interim progress report for the above-referenced student.

I am also still waiting for a response to my letter of October 12, 2006, a copy of which I have enclosed. Thank you.

Sincerely,

Michael J. Eig

*Enclosure*



**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**

**Division of Special Education**
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

October 18, 2006

Michael J. Eig and Associates, P.C.
Attorneys at Law
5454 Wisconsin Avenue
Chevy Chase, Maryland 20815-6938

Re: S███ A███████

Dear Mr. Eig:

I previously sent you a letter requesting that you and your clients inform DCPS, on the
date and time that ████ can be made available to the multi-disciplinary team at the
C.A.R.E. Center so that the eligibility process for special education services can be
completed. As of today, you have not given us a date or a time that ████ would be
available in the District.

Dr. Denise White-Jennings, psychologist, would like to conduct a clinical interview, and
administer the Behavior Assessment System for Children (BASC). Please inform our
office of the date and time that Seth will be available for DCPS to complete this process.

Sincerely,

Patricia Young
Patricia Young
C.A.R.E. Center Director

cc: Gloria Everett, Case Manager
    Stephanie Ramjohn Moore, Attorney Advisor



**MICHAEL J. EIG AND ASSOCIATES, P.C.**
ATTORNEYS AT LAW
SUITE 760
5454 WISCONSIN AVENUE
CHEVY CHASE, MARYLAND 20815-6938

(301) 657-1740
FACSIMILE (301)657-3843

October 18, 2006

Patricia Young
Division of Special Education
825 North Capitol Street, NE, 6th floor
Washington, DC 20002

Re: S██ A██████
*via facsimile and first-class mail*

Dear Ms. Young:

I have just read your letter of earlier this afternoon and cannot understand it. It appears that you either are not being given your mail or are not reading it. Let me try again.

The MDT meeting on September 27th ended with Ms. Everett stating that she would check with DCPS counsel as to one or two team members traveling to Grove to complete all necessary evaluations and/or observations. We were told that we would hear back from her after that; we never have heard from her. We did, however, receive your letter of October 11th, in which you requested a new observation of ████ a student interview, "and further assessments if necessary." You asked me to let you know when ████ would be available for this.

I responded the next day, October 12th, advising you that ████ has been available at Grove throughout this process. I also noted my clients had signed multiple authorizations for DCPS staff to talk to Grove staff and others. I pointed out that the only place that ████ could be available for an observation is at Grove, and closed by asking you to clarify what it was that DCPS was requesting. Receiving no response to that letter (which we sent by fax), I again wrote on October 17th, enclosing a brief new report from Grove and asking for a reply.

Your letter today literally ignores both of my letters and badly misstates what you have requested previously. You have *not* written without my responding about when ████ could be made available at the C.A.R.E. Center; in fact, you did the exact opposite. You asked for an opportunity to observe – which can only be accomplished at Grove – and you have not replied to my letters seeking clarification of what you really want. Now, you write that you want to do a BASC (which does not required ████ presence in DC), and a client interview (which can be accomplished over the phone if necessary), as well as an observation which, according to federal law, must occur "in the child's learning environment."

## MICHAEL J. EIG AND ASSOCIATES, P.C.



Patricia Young
RE: ███ ███████
October 18, 2006
*Page Two*

Please respond specifically to this letter and do so immediately. If you feel that ███ must be taken out of his program for a day or more, please explain why that is necessary and who believes that. As always, we will cooperate to the best of our ability, but we need straight and consistent answers in order to do so.

Thank you for your attention to this matter.

Sincerely,

Michael J. Eig

*Enclosure*

**MICHAEL J. EIG AND ASSOCIATES, P.C.**
ATTORNEYS AT LAW
SUITE 760
5454 WISCONSIN AVENUE
CHEVY CHASE, MARYLAND 20815-6938
(301) 657-1740

FACSIMILE (301) 657-3843



November 17, 2006

Coles B. Ruff, Hearing Officer
Student Hearing Office
District of Columbia Public Schools
825 North Capitol Street, NE, 8th Floor
Washington, D.C. 20002

Re: S███ A█████████/DCPS
*Via facsimile and first class mail*

Dear Mr. Ruff:

About ten days ago, we requested that you re-open the above-referenced matter in order to determine if there has been compliance with your September 14th decision, and if any relief is due the parents. We supported that request with documents indicating that DCPS has failed to assess or observe███, has failed to make an eligibility decision, and has proposed no educational program for him.

In response, DCPS filed on November 14, 2006, an opposition to our request and its own motion to reconsider. In its opposition, DCPS suggests that we file a new hearing request to address our concerns and allegations. It appears that a new hearing request may actually allow you (or another Hearing Officer) to resolve this problem more expeditiously than through litigation over a disputed motion to re-open. We therefore withdraw our request in favor of filing that new hearing request, which we do at this time under separate cover.

As for the school system's motion to reconsider, it is clearly out of time under Section 1005 of the Standard Operating Procedures of the Special Education Student Hearing Office, which requires such a filing to be within ten days of the Decision. It must therefore be denied. Thank you.

Sincerely,

Michael J. Eig

cc:    Stephanie Ramjohn-Moore, Esq.
       Mr. and Mrs. Abramson

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*





NOV 17 2006

# Due Process Complaint Notice

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter School (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. <u>A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).</u>

- The due process complaint must describe an alleged violation that occurred not more that two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.</u> Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. <u>The Student Hearing Office does NOT schedule resolution meetings.</u>

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

## A.   INFORMATION ABOUT THE STUDENT:

Student Name:  S███ A███████     Birth Date:  January 16, 1991

Address:   6419 Barnaby Street, NW; Washington D.C. 20015

Home School:   Wilson High School

Present School of Attendance:  The Grove School

Is this a charter school?  NO     (If yes, you must also provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student:  Larry Abramson and Caroline Newman

Address (if different from the student's above):     same as above

Phone/Contact Number:     see below     Fax Number (if applicable):     see below

**B.  Individual Making the Complaint/Request for Due Process Hearing:**

Name:  Larry Abramson and Caroline Newman

Complete Address: _____ same as above _____

_____

Phone: (h)  see below  (w)  see below  (Fax)  see below  (e-mail) _____

Relationship to the Student:

☒ Parent  ☐ Legal Guardian  ☐ Parent Surrogate

☐ Self/Student  ☐ Local Education Agency (LEA)  ☐ Parent Advocate

**C.  Legal Representative/Attorney (if applicable):**

Name:  Michael J. Eig

Address: _____ Michael J. Eig and Associates, P.C.

_____ 5454 Wisconsin Avenue, Suite 760, Chevy Chase, Maryland 20815

Phone: (w) 301-657-1740  (Fax) 301-657-3843  (e-mail) _____

Will attorney / legal representative attend the resolution session?  ☒ Yes  ☐ No

**D.  Complaint Made Against (check all that apply):**

☒ DCPS school (name of the school if different from page one) _____
☐ Charter school (name of the charter school if different from page one) _____
☐ Non-public school or residential treatment facility (name) _____
☐ Parent

**E.  Resolution Session Between Parent and LEA:**

I understand that it is my right to have a resolution session to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution session to avoid having this meeting.)

X  I wish to waive the Resolution Session.

**E.  Mediation Process:**

IDEA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session. Mediation is also available prior to a due process hearing, but mediation may not be used to deny or delay a parent's right to a hearing on parent's due process complaint. Please check all that apply:

☐ I am requesting mediation as an alternative to the resolution session meeting.
☐ I am requesting mediation services only.
☐ I do not wish to use a mediator at this time.

**G.**   <u>Facts and Reasons for the Complaint</u>:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions. Provide complete details about all the facts supporting your claims. (You may attach additional pages if needed):

1.        What is the nature of the problem, including the facts related to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

Nearly six month ago, we filed a Due Process Hearing Request for ▆▆ and his parents, stating as follows:

"S▆▆ is a fifteen-year old young man who is extremely bright, with many cognitive scores in the 99th percentile, who has been diagnosed with Asperger's Syndrome, and who has a history of attention deficit hyperactivity disorder and behavior difficulties. Until recently, he has been a good student, however, he has been exhibiting increasing signs of inattention, anxiety and depression. As the 2005-06 school year progressed, these issues have risen to the forefront, having a great impact on S▆▆ ability to benefit from his instruction, and causing his educational performance to decline precipitously over the course of a few months. Until March, 2006, S▆▆ attended Georgetown Day School, but due to the severity of his disability and its recent manifestations, he had to be removed. His parents were, at the time, in the middle stages of the initial IDEA eligibility determination process with DCPS, having registered S▆▆ as a non-attending DCPS student in January, 2006. The parents advised DCPS of S▆▆'s immediate need for a change in placement from Georgetown Day, and that they were working to identify an alternative. On April 4, 2006, they enrolled Seth at a therapeutic residential placement at The Grove School in Madison Connecticut, and advised DCPS of this new placement.

"Subsequently, DCPS scheduled a Multidisciplinary Team ("MDT") Meeting for May 5, 2006. The parents agreed to attend, in the hope of completing the eligibility determination process and developing an educational program for their son. However, on May 4, 2006, the day before the MDT meeting, the parents, through counsel, received a letter from Patricia Young. By this letter, DCPS stated its position that the school system has no legal obligation to provide S▆▆ with services under the IDEA. Instead, DCPS advised the parents that, since S▆▆ is attending a school outside the District, "his case has become the obligation of the state of Connecticut." DCPS repeated this position at the MDT Meeting on May 5, 2006.

"The school system's position is based on a misunderstanding of the federal law. The IDEA, which was re-authorized in 2004, discusses and differentiates three categories of children in private schools, who require special education. The parents advised DCPS of their position with respect to these categories, as follows:

- 20 U.S.C. § 1412 (a)(10)(A) deals with "Children enrolled in private schools by their parents."
- 20 U.S.C. § 1412 (a)(10)(B) deals with "Children placed in, or referred to, private schools by public agencies."
- 20 U.S.C. § 1412 (a)(10)(C) deals with "Payment for education of children enrolled in private schools without consent of or referral by the public agency."

The three categories do not overlap.

"The first category, which the law refers to as those children entitled to "Equitable Participation" or "Equitable Services," are children in private school at their parents'

expense, who are only seeking services additional to their private school academic services – such as tutoring or speech/language therapy – usually supplied at the end of a school day at a nearby public school. Such a student's right to equitable participation for such services does entail registration in the public schools, as is clarified in the proposed regulations. This category has seen a change in the responsibility of the local educational agency ("LEA"), between IDEA 1997 and IDEA 2004; the new statute recognizes that after-school services provided to private school students at a nearby public school would be most conveniently provided by the LEA in which the *private school is located* than by the LEA where the *child lives*. That change is clarified by the US Department of Education Memorandum dated June 27, 2005, which the MDT team provided to the Abramson family on May 5, 2006.

"However, the re-authorized 2004 IDEA enacted no significant changes to the second and third categories. The statute still requires that the LEA in which the child resides is responsible for proposing a FAPE for this child, regardless of whether he or she is placed in private school by the parents or by the school system. (This requirement is echoed in the local regulations: 5 D.C.M.R. § 3002.1(a) requires that "DCPS shall make a free appropriate public education (FAPE) available to each child with a disability, ages three to twenty-two, who resides in, or is a ward of, the District.") Of course, as the IDEA's language concerning the third category makes clear, the LEA would only be responsible for the cost of any private school tuition if it lacks or fails to offer an appropriate public program.

"Thus, by referring S▇▇ A▇▇▇▇'s family to the Madison, Connecticut School District, DCPS violated its obligations under the IDEA. The parents so advised DCPS, and formally requested that DCPS complete the educational planning process and offer Seth an education appropriate to meet his needs. DCPS never responded to this request."

For relief in our May 23, 2006, Hearing Request, we asked: "As a remedy for this failure, the parents request that S▇▇ be placed and funded at The Grove School in Madison, Connecticut, retroactive his enrollment on April 4, 2006."

On September 14, 2006, Hearing Officer Coles B. Ruff issued his Impartial Due Process Hearing Officer's Decision finding DCPS to have violated S▇▇'s rights under the IDEA, and ordering DCPS to follow a strict schedule for determining S▇▇'s eligibility and funding his placement at the Grove School (assuming that eligibility). In essence, DCPS was provided fifteen school days to convene a student evaluation plan meeting and forty-five calendar days to complete all evaluations, both deadlines running from September 14, 2006.

DCPS met the deadline to hold the student evaluation plan meeting, but has conducted no evaluations, has not followed through on the parents' signed authorizations to consult with professionals working with S▇▇ (to the best of our knowledge), has not even clarified, despite repeated requests, whether the system has to physically see S▇▇ to conduct its process and, if so, whether that can be done in his school placement at Grove or he has to be brought to DC, and has stopped responding to our letters asking for guidance. In other words, despite the Hearing Officer's specific order, DCPS has simply shut down all communications regarding S▇▇ A▇▇▇▇. It is now sixty-four days since the Hearing Officer's Decision and DCPS has proposed nothing for S▇▇. It is also one month since we wrote DCPS asking for some form of guidance and/or action, and there has been no response.

•     To the extent known to you at this time, how can this problem be resolved?

DCPS should be directed to place and fund ████ at The Grove School as if May 4, 2006, the date the Hearing Officer identified as the deadline DCPS should have had for making an eligibility and placement decision.

•     Issues presented:

Is S██ A█████ an eligible special education student under the IDEA?

Has DCPS continued to violate his rights under the IDEA?

Is Grove School a proper placement for tuition reimbursement for S██ under the IDEA?

**H.**   **Estimated amount of time needed for the hearing:**    **1 day**

Note:   In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing. Please indicate if you believe more that two hours will be needed.

**I.**   **Accommodations and Assistance Needed:**

Please list any special accommodations you may require for a Resolution Session Meeting/Mediation Conference/Due Process Hearing.

- Interpreter (please specify the type)   _N/A_
- Special Communication (please describe the type)   _N/A_
- Special Accommodations for Disability (please be specific) _N/A_
- Other _N/A_

**J.**   **Waiver of Procedural Safeguards:**

☐   I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

**K.**   **Parent Signature and Affirmation:**

I affirm that the information provided on this form is true and correct.

_____
Signature of Parent or Guardian           Date

**L.**   **Signature of Attorney/Legal Representative:**

_____    11-17-06
Legal Representative/Advocate          Date

**M.**  **Signature of LEA Representative (if hearing requested by LEA):**

_____

Representative of LEA                                    Date

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
· Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC 20002
Fax number: 202/442-5556

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT REFERRAL DATE: _____

STUDENT: ████████          SCHOOL: Grove School          DATE: 3/9/07

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Cawline Newman | Caroline Newman | Mother |
| Larry Abramson | Jay Abrams | Father |
| Gloria T. Everett | Gloria J. Everett | LEA |
| Jessie White Jennings | Jessie White Jennings | Clinical Psychiatrist |
| Michael J. Eig | Michael Eig | Counsel for Student |
| Harry Brodenberry | Harry Brodenberry | Gen. Educator |
| Vecia O. Banner | Vecia O. Banner | Spec. Ed / IEP developer |
| Bill Coss | via telephone | Advisor |
| Sherry Masher | Grove School | Case Manager |

The purpose of the meeting was stated and all members
signed MDT form. Grove School participated
via telephone.
Student was found eligible for special education
as an Autism student, and Other Health Impairment
and Emotional Disturbance, student therefore is
considered multi-handicapped. The team
determined that no further assessments are needed.
An IEP was written.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT REFERRAL DATE: _____

| MDT |

STUDENT: ~~S_____ A_____~~     SCHOOL: _Care Center - Grove School_     DATE: 3/9/07

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Sean Kurnawe | via telephone | Spec Ed. Teacher |
| Andy Pollak | via telephone | Therapist |
| | | |
| | | |
| | | |
| | | |
| | | |

**Other Health Impairment (OHI)**
**Eligibility Determination Form**
(Attach MDT Meeting Notes)

| Student's Full Name: | | | |
|---|---|---|---|
| Date of Birth: 1/16/91 | | Student ID: 9021977 | |
| Attending School: Grove School | | Date of MDT: 3/9/07 | |
| | | Neighborhood School: Wilson SHS | |

In order to determine if a student to have the disability of Other Health Impairment and is eligible for specialized instruction and/or related services, the MDT must compare evaluation data and document that:

| ⊙Y   oN  o Insufficient (There is NOT enough documentation available to make a determination) | 1a. | A health impairment caused by chronic or acute health problems such as heart condition, tuberculosis, sickle cell anemia, hemophilia, epilepsy, rheumatic fever, nephritis, asthma, lead poisoning, leukemia, diabetes, acquired immune deficiency syndrome, attention deficit disorder, or attention deficit hyperactive disorder. The diagnosis of Other Health Impairment is (specify):   ADD |
|---|---|---|
| ⊙Y   oN  o Insufficient | 1b. | The impairment effects the following (check all that apply): |
| | | Strength, or |
| | | Vitality, or |
| | | ☒ Alertness (including heightened alertness to environmental stimuli that results in limited alertness with respect to the educational decision. |
| ⊙Y   oN  o Insufficient | 2. | Evaluation information confirms there is an adverse effect on educational performance. Very distracted in class, struggles to respond to prompts to get him on track. |
| ⊙Y   oN  o Insufficient | 3. | Diagnosed by a physician as having an other health impairment. Dx with ADD |
| Supporting Evidence [Type(s) of documentation used to make the determination, i.e., psycho-educational evaluation, speech language evaluation, classroom work, teacher observation, etc.]: | | |
| ⊙Y   oN | | Evaluation information confirms that lack of instruction in reading and/or math was not a determinant factor in the eligibility decision. |
| ⊙Y   oN | | Evaluation information confirms that limited English proficiency was not a determinant factor in the eligibility decision. |

The MDT used the above interpretation of the evaluation data to determine:

☑ The student has Other Health Impairment and is eligible for specially designed instruction and/or related services (Criteria 1, 2, and 3 MUST all be checked to be eligible), or

☐ The student does not have Other Health Impairment, or

☐ Evaluation data is insufficient to determine eligibility. Additional assessments and/or data will be obtained in the area(s) as indicated on the STUDENT EVALUATION PLAN (SEP). The MDT will reconvene by _____ to review and determine eligibility.

* All medical documentation must be reviewed by a DCPS medical doctor.

**Specific Learning Disability**
**Eligibility Determination Form**
**(Attach MDT Meeting Notes)**

| Student's Full Name: ~~[redacted]~~ | Student ID: 90 21977 |
|---|---|
| Date of Birth: 1/16/91 | Date of MDT: 7/9/07 |
| Attending School: *Prime School* | Neighborhood School: *Wilson S.H.S.* |

In order to determine if a student to have a disability of Specific Learning Disability and is eligible for specialized instruction and/or related services, the MDT must compare evaluation data and document that:

| | | |
|---|---|---|
| o Y  ● N<br>o Insufficient<br>(There is NOT enough documentation available to make a determination) | 1a. | The student has a severe aptitude/achievement discrepancy as identified by a validated regression method and does not achieve commensurate with his or her age and ability levels in one or more of the following areas:<br>o    Oral Expression<br>o    Listening Comprehension<br>o    Written Expression<br>o    Basic Reading Skills<br>o    Reading Comprehension<br>o    Mathematics Calculation<br>o    Mathematics Reasoning<br>o    Developmental Skills (e.g., motor skills, language development, memory skills), and |
| o Y  ● N<br>o Insufficient | 1b. | The severe discrepancy between ability and achievement is not primarily the result of a visual, hearing, or motor impairment; mental retardation; emotional disturbance; or environmental, cultural, or economic disadvantage. |
| o Y  ● N<br>o Insufficient | 2. | Evaluation information confirms there is an adverse effect on educational performance. |
| o Y  o N<br>o Insufficient | 3a. | The following relevant behavior was noted during the observation of the child: |
| o Y  ● N<br>o Insufficient | 3b. | Relationship between the observed behavior in 3a. to the child's academic functioning is: |
| Supporting evidence [Type(s) of documentation used to make the determination, i.e., psycho-educational evaluation, speech language evaluation, classroom work, teacher observation, etc.]: | | |
| ● Y  o N | | Evaluation information confirms that lack of instruction in reading and/or math was not a determinant factor in the eligibility decision. |
| ● Y  o N | | Evaluation information confirms that limited English proficiency was not a determinant factor in the eligibility decision. |

The MDT used the above interpretation o d the evaluation data to determine:

☐   The student has Specific Learning Disability and is eligible for specially designed instruction and/or related services (Criteria 1, 2, and 3 must be checked to be eligible), or

☒   The student does not have Specific Learning Disability, or

☐   Evaluation data is insufficient to determine eligibility. Additional assessments and/or data will be obtained in the area(s) as indicated on the **STUDENT EVALUATION PLAN (SEP)**. The MDT will reconvene by _____ _____ to review and determine eligibility.

All medical documentation must be reviewed by a DCPS medical doctor.

September 20, 2002

Specific Learning Disabilities Written Report – Continued

Student's Full Name: ~~[redacted]~~                Student ID: 9 0 2 1 9 7 7
Date of Birth: 1/16/91                              Date of MDT: 3/9/07
Attending School: Prime School                     Neighborhood School: Shelam S A#

Multidisciplinary Team Members: The MDT has reviewed evaluations/reports and determined that the student is ⟨ is not ⟩ eligible for services as a student with a disability classification of Learning Disability (LD)

| Titles | Signatures | Agree | Disagree |
|---|---|---|---|
| LEA Representative | George T. Everett | ✓ | |
| Parent/Guardian | Anthony Newman | ✓ | |
| Regular Education Teacher | Harry Brockenberry | ✓ | |
| Special Education Teacher | Vecia O. Banner | | |
| Psychologist/Evaluator | Denise White | (P.h.D.) | ✓ |
| Speech/Language Therapist | | | |
| Social Worker or Counselor | | | |
| Student | | | |
| Other | Tony Abrams, Father | ✓ | |
| Other | | | |
| Other | | | |

Each MDT member shall certify in writing whether the report reflects his/her conclusion. If it does not reflect his/her conclusion, the team member must submit a separate statement presenting his or her conclusion. By completing the appropriate boxes the MDT will document decisions.

## Autism
### Eligibility Determination Form
(Attach MDT Meeting Notes)

| | |
|---|---|
| Student's Full Name: | Student ID: 9 0 2 1 9 7 7 |
| Date of Birth: 1/16/91 | Date of MDT: 3/9/07 |
| Attending School: Rome School | Neighborhood School: Wilson SHS |

In order to determine if a student to have the disability of Autism and is eligible for specialized instruction and/or related services the MDT must compare evaluation data and document that:

| | | |
|---|---|---|
| ⊙Y  ○N<br><br>○ Insufficient<br>(There is NOT enough documentation available to make a determination) | 1a. | The student has a developmental disability, generally evident prior to age 3, significantly effecting verbal and nonverbal communication (must be present for eligibility),<br>□  delay in, or lack of spoken language development (with no compensation through alternative modes of communication)<br>☒  in verbal persons, marked impairment in conversational skills<br>□  stereotyped and repetitive use of language<br>□  lack of spontaneous age-appropriate make-believe or social imitative play, and |
| ⊙Y  ○N<br><br>○Insufficient | 1b. | The student has a developmental disability effecting social interaction (must be present for eligibility,<br>□  marked impairment in the use of multiple nonverbal behaviors<br>☒  failure to develop age appropriate peer relationships<br>□  lack of spontaneous seeking to share interests and achievement with others<br>☒  lack of social or emotional reciprocity, and |
| ⊙Y  ○N<br><br>○Insufficient | 1c. | The student has a developmental disability effecting behavior (must be present for eligibility,<br>☒  preoccupation with at least one stereotyped and restricted pattern of interest to an abnormal degree<br>☒  inflexible adherence to nonfunctional routines or rituals<br>□  stereotyped and repetitive motor mannerisms<br>□  preoccupation with parts of objects. |
| ⊙Y  ○N<br><br>○Insufficient | 2. | Evaluation information confirms there is an adverse effect on educational performance (must be present for eligibility). Inflexibility - refuses to do work almost impossible to redirect Fixates on non-functional relationships to the detriment of his school work. |

Supporting Evidence [Type(s) of documentation used to make the determination, i.e., psycho-educational evaluation, speech language evaluation, classroom work, teacher observation, etc.]:

| | |
|---|---|
| ⊙Y  ○N | Evaluation information confirms that lack of instruction in reading and/or math was not a determinant factor in the eligibility decision. |
| ⊙Y  ○N | Evaluation confirms that limited English proficiency was not a determinant factor in the eligibility decision. |
| ⊙Y  ○N | The student's deficits are not primarily the result of an emotional disturbance, speech or language impairment or mental retardation. |

The MDT used the above interpretation of the evaluation data to determine:

☒ The student has Autism and is eligible for specially designed instruction and/or related services (Criteria 1and 2 MUST all be checked to be eligible), or  *Asperger's Disorder*

□ The student does not have Autism, or

□ Evaluation data is insufficient to determine eligibility. Additional assessments and/or data will be obtained in the area(s) as indicated on the **STUDENT EVALUATION PLAN (SEP).** The MDT will reconvene by _____ to review and determine eligibility.

*All medical documentation must be reviewed by the DCPS medical doctor.

September 20, 2002

## DOCUMENTED LEVEL OF SERVICE (PERM)
Complete and attach to MDT/IEP meeting notes

| | |
|---|---|
| School | Grove School    Principal Robert Houston    Special Education Coordinator |
| Date | 2/1/07 Case Manager Gloria Everett    Technical Support Supervisor |
| Student | S~~████~~ A~~███~~    DOB 1/16/91 Age 16 Grade 10 ID# 902 1977 SSN# |
| Parent | Mr. + Mrs. Abramson    Telephone (H) 2/686-9212    (W) |
| Address: | 6419 Barnaby St., NW    Washington DC. 20015 |

REFERRAL SOURCE: (Check)  ☒ 120 Day   ☐ Reeval.   ☐ HOD   ☐ SA   ☐ MA

☒ Nonpublic   ☐ Residential   ☐ Citywide   ☐ Courts   ☐ Local School   ☐ Other:

Previous least restrictive environment (LRE Setting): Out of General Education

## JUSTIFICATION FOR SETTING CONSIDERATION
(Submit TAT/MDT Documentation)
### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | |
|---|---|---|---|
| Notes before assignments | Current IEP | Yes ☒ | No ☐ |
| Chunking of task - small amounts | Signatures of required participants (MDT notes) | Yes ☒ | |
| Laptop - technology need because | Intervention Behavior Plan | Yes ☒ | |
| of slow processing | Copies of current class work and homework assignments: | Yes ☐ | |
| Small class size | Medical Reports: | Yes ☒ | No ☐ |
| Role playing | Clinical Reports: | Yes ☒ | No ☐ |
| Verbal cueing/or prompting | Psychiatric Reports | Yes ☐ | No ☐ |
| Buddy system | Medications: | Yes ☒ | No ☐ |
| | Attendance Record    discussed | Yes ☒ | |
| | Copies of most recent evaluation(s) | Yes ☒ | |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| MDT - determined eligibility - 3/9/07 | IEP implemented |

## 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general educators with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☐ combination general education and resource classroom | ☐ combination of general educators, special educators and related service providers | ☐ between 21% and 60% of service time |
| 3 | ☒ *out of general education classroom | ☒ special educators and related service providers | ☒ between 61% and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings.

Check the level of need as indicated:
### DIRECTIONS:

| If two or three boxes are checked in the Row 1, check LOW. If two or three boxes are checked in the Row 2, check MODERATE. If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row, check either MODERATE or HIGH, depending on the need of the student. |
|---|---|

## 7. LEVEL OF NEED

| ☐ LOW | ☐ MODERATE | ☒ HIGH |
|---|---|---|

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)
PRIOR NOTICE

Check Purpose:
☒ Initial Evaluation
☐ Initial Placement
☐ Reevaluation
   ☐ Change in Category Exit
   ☐ Related Service Add
   ☐ Related Service
   ☐ Change in Placement
   ☐ Other _____

Date _3/9/07_

Student _____ DOB _1/16/91_

School _____

Current Disability Category _MD(ED, Autism, OHI)_

Setting _Out of General Education_

Dear _Parents,_

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes made to their children's education program.
Therefore, you are being notified of the following proposed changes:
☒ Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
☐ Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
☐ Other _____

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)

☐ Your child is not eligible for special education service(s).
☒ Your child is eligible or continues to be eligible to receive special education services as a student with _MD(ED, Autism, OHI)_
☐ Your child will begin receiving _____ as a related service(s).
☐ Your child will no longer receive _____ as a related service(s).
☐ Your child's category of disability is being changed from _____ to _____
☐ Your child's alternative placement on continuum (next setting) is being changed.
   from _____ to _____
☐ Your child is no longer eligible and will be exited from the special education program.
☐ Other: _____

**Description and Explanation of agency action proposed or refused.**

The MDT has evaluated and reviewed students reports/record and determined that the studeent is eligible for special education services as a student with an _MD(ED, Autism, OHI)_ , the appropriate setting to ameliorated the student's area of less proficiency can be addressed in an _Out of General Education_

**Description of Other Options Considered and reasons for rejection of each option**

The MDT has determined that _General Ed_ and _Combination Gen Ed/Spec. Ed_ are not appropriate settings to address the student's objectives/goals as dictated by the IEP and IDEA criteria.

Other relevant factors to the decision- _____

MDT Members: ☒ Principal or Designee   ☒ General Education Teacher   ☒ Psychologist
   ☒ Parent   ☒ Special Education Teacher   ☐ Other: _____
   ☐ Student   ☐ Speech and Language   _____
   ☐ Social Worker   ☒ *LEA & Interpreter (*may be one)   _____
Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact _Gloria T. Everett_ at _2/671-0882_ (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior Written Notice to the Parent
07-02-2001                             1

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MDT)

Student S███████████ _____ DOB 1/16/91 Age 16 Grade 10 ID 9021977 _____

You have the right to challenge the recommendations by requesting Mediation or a Due Process Hearing before an impartial hearing officer. To initiate a mediation or hearing, you will need to complete a REQUEST FOR MEDIATION or DUE PROCESS HEARING form and mail it to the address listed below:

Student Hearing Office
D.C. Public Schools 825 North
Capitol Street, N.E. 8ᵗʰ floor .
202-442-5432

You have the right to be represented at the hearing by legal counsel.
A copy of Parents Procedural Safeguards handbook is provided.
A list of free or low cost legal service, for which you may qualify depending on your income, is included.
If you would like an additional copy, please contact the principal.

EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

[X] Wechsler Intelligence Scale for Children-III (WISC III) - commonly employed individually administered test designed to measure the intelligence of individuals aged 6 ₁₂to 16 ₁₂years. Date of Report 1/26/06

[ ] Wechsler Preschool and Primary Scale of Intelligence-Revised (WPPSI-R) - measures specific mental abilities and processes in ages 4 to 6 ₁₂ years. Date of Report _____

[ ] Wechsler Adult Intelligence Scale-III (WIAS III) an individually administered test designed to measure the intelligence of individuals ages 16 and over. Date of Report _____

[ ] Bayley Scales of Infant Development-II - an individually administered instrument that measures motor, mental and social development in infants and children from 1 month to 42 months of age. Date of Report _____

[ ] Wechsler Individual Achievement Test (WIAT)- a commonly used individually administered instrument designed to assess the educational achievement of children and adolescents in areas of basic reading, mathematics reasoning, spelling, reading comprehension, numerical operations, listening comprehension, oral expression, and written expression. Date of Report _____

[ ] Peabody Individual Achievement Test-Revised (PIAT-R) - an individually administered test measuring achievement in areas of general information, reading recognition, reading comprehension, spelling, written expression, and mathematics. Date of Report _____

[ ] Kaufman Test of Educational Achievement (KTEA) -an individually administered instrument measuring achievement skills in reading decoding, mathematics applications, spelling, reading comprehension, and mathematics computation. Date of Report _____

[ ] Woodcock-Johnson Psycho-Educational Battery - a diagnostic and evaluation instrument composed of twenty-seven tests divided into three major parts: tests of cognitive ability, tests of achievement, and tests of interests. Date of Report _____

[ ] Bender Visual Motor Gestalt Test - measures perceptual motor skills to determine visual-motor gestalt functioning and neurological soft-signs in ages 4 to 12 years using the Koppitz Scoring System. Date of Report _____

[ ] Developmental Test of Visual Motor Integration (VMI) -assesses visual perception and motor coordination in ages 3 years and up using a more structured booklet format. Date of Report _____

[ ] Children's Apperception Test - a projective story-telling technique for personality evaluation in ages 5 to 10 years. Date of Report _____

[ ] Thematic Apperception Test - a projective story-telling technique for personality evaluation in older children and adolescents.
Date of Report _____

[ ] House-Tree-Person - a projective drawing technique providing insight into personality structure, physical concerns, and social-emotional adjustment in children and adolescents. Date of Report _____

[X] Boston Naming Test; Automatic Verbal Sequencing; and Selective Renaming Test 1/26/06 [X]
[X] Klove Grooved Pegboard 1/26/06
[X] Rey-Osterrieth Complex Figure 1/31/06
[X] IVA - Integrated Visual and Auditory Continuos Performance 1/31/06 - 2nd Edition 1/31/06
 Wide Range Assessment of Memory and Learning - 2nd Edition 1/31/06
 (WRAML 2) Test of Every Attention in Children (TEA-Ch) 1/31/06
 Oral and Written Language Scales (OWLS)

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MDT)

Student ▒▒▒▒  ▒▒▒▒  DOB 1/16/9f Age 16 Grade 10 ID 9021977

☐ Kinetic Family Drawing - a projective drawing technique measuring one's perception of her family and her role within the family.
   Date of Report _____

☐ Rorschach Psychodiagnostic Test - a projective measure y which one's responses to inkblots reveal personality structure, ego strengths and reality
   testing in ages 3 and older. Date of Report _____

☐ Goodenough-Harris Drawing Test - a projective drawing procedure measuring intellectual perceptual-motor maturity and personality through the
   use of drawings of self and a member of the opposite sex in ages 3 to 15.11 years. Date of Report _____

☐ Conner's Parent and Teacher Rating Scales - a paper-and-pencil instrument measuring problem behaviors of children and adolescents as reported
   by the child's teacher, parents, or alternate care-giver. Date of Report _____

☐ The Vineland Adaptive Behavior Scales - assesses adaptive and social competency skills. Date of Report _____

☐ Test of Language Development Primary - Revised (TOLD-P) - measures primary language proficiency and specific strengths and weaknesses in
   language skills. Date of Report _____

☐ Kaufman Assessment Battery for Children - assesses the ability to solve problems using simultaneous and sequential metal processes in four global
   areas: Sequential Processing, Simultaneous Processing, Mental Processing, and Achievement. Date of Report _____

☐ Preschool Language Scale - measures auditory comprehension and verbal ability skills. Date of Report _____

☐ Oral Peripheral Speech Examination - a procedure to determine whether the examinee can appropriately use the lips, tongue, mouth, etc.
   Date of Report _____

☐ Clinical Evaluation of Language Fundamentals - III - assesses the child's language functioning including processing and production.
   Date of Report _____

☐ Expressive One Word Picture Vocabulary Test - assesses the child's single word expressive vocabulary. Date of Report _____

☐ Receptive One Word Picture Vocabulary Test assesses the child's single word receptive vocabulary. Date of Report _____

☐ Goldman-Fristoe Test of Articulation - assesses the production of consonants in simple and complex contexts. Date of Report _____

☐ Peabody Picture Vocabulary Test-Revised - individually administered, multiple choice test measuring nonverbal, receptive vocabulary.
   Date of Report _____

☐ Fisher-Logemann Test of Articulation Competence - assesses articulation proficiency with single sounds, consonant blends, and vowel production.
   Date of Report _____

☐ Classroom Observation - assesses present functioning of the student within the classroom environment.

Free or Low Cost Legal Services

Neighborhood Legal Services
701 4ᵗʰ Street, N.E.
Washington, D.C. 20001
202-682-2700 (NW)
202-682-2732 (NE)
Fax 202-682-0588

Neighborhood Legal
Services 1213 Good Hope
Road, S.E. Washington, D.C.
20020 202-678-2000
Fax 202-889-3574

University Legal Services
300 I Street, N.E.
Washington, D.C. 20002
202-547-0198
Fax 202-547-2662

The Children's Law Center Inc. 1050
Connecticut Avenue, N.W. Suite 1200
Washington Square
Washington, D.C. 20036-5317
202-467-4900
Fax 202-467-4949

National Coalition for Students
with Disabilities
10560 Main Street, Suite 417
Fairfax, VA 22030
703-267-6588      (fax) 703-267-6992

*[Handwritten annotations:]*

1/31/06 Administered

☒ Children's Depression Inventory (CDI)
☒ Revised Children's Manifest Anxiety Scale (RCMAS)
☒ Child Behavior Checklist;
☒ Clinical Interview

MDT Prior Written Notice to the Parent
07-02-2001

☒ WJ III-Test of Cognitive Ability
☒ Nelson-Denny Reading Test;

☒ Selected subtests from the
   Wechsler Individual Achievement
   Test 1/26/06

☒ Second Edition (WIAT-II) 1/26/06

☒ Woodcock-Johnson Test of Achievement-
   WJ-III 1/26/06
☒ Test of Language Competence 1/26/06
☒ Expanded Edition (TLC-E) 1/26/06

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT: Seth Abramson          SCHOOL: Care Center-Grove School          DATE: 3/9/07

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Caroline Newman | Caroline Newman | Mother |
| Larry Abramson | Larry Abramson | Father |
| Gloria T. Everett | Gloria T. Everett | LEA |
| Michael J. Eig | Shelley | Counsel for Student |
| Harry Brockenbry | Harry Brockenbry | General Ed. teacher |
| Denise White Jennings | Denise White Jennings (H) | Clinical Psychologist |
| Vecia O. Banner | Vecia O. Banner | Spec Ed / IEP developer |

---

After reviewing all of the documents, the MDT determined that the student is eligible for special education as a student with MD (ED, Autism, OHI)

Specialized instruction is required in the following academic areas: Social Emotional/Academic

Social Emotional Impacts all academics

The total number of hours for specialized instruction is:

25.5

Related services are required in the following areas:

Psych-social 2 hours per week

---

① Notes before assignments
② Supported services for emotional needs to complete classroom assignments
③ Chunking of task
④ Small class size
⑤ Role playing
⑥ Verbal cueing or prompting
⑦ Buddy system

The parent & advocate are requesting that student remains at the Grove School because it meets his academic/social needs. DCPS is offering a full time placement in a therapeutic day treatment program. Discussion of placement options postponed.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

| DCPS - IEP Page 1 of 4 |
| Additional Comments: ☐ |

## I. IDENTIFICATION INFORMATION

Student Name: Last ~~████████~~   First ~~███~~   MI

Student ID 9021977   Soc. Sec. No.   Age: 16   Grade 10

Gender ☒ M  ☐ F   Date of Birth 1/16/91   Ethnic Group Caucasian

Address  6419 Barnaby St., St., NW
House No.   Street Name   Quadrant   Apartment #

☒ Non-attending   Washington DC
City   State   Zip Code

Attending School Grove School   Home School Wilson SHS

☐ Elem.  ☐ Mid/JHS  ☒ SHS  ☐ CWS /

Parent   Mr. and Mrs Abramson

Address of (if different from student):   ☒ Parent  ☐ Guardian  ☐ Surrogate

House No.   Street Name   Quad   Apt. No.   City   State   Zip Code
Telephone: Home 2/686-9212   Work

### II. CURRENT INFORMATION

Date of IEP Meeting: 3/9/07

Date of Last IEP Meeting: 2/1/07  005

Date of Most Recent Eligibility Decision: 3/9/07

Purpose of IEP Conference:
☒ Initial IEP   ☐ Review of IEP
☐ Requested Eval.   ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | | Oral |
| Parent | English | English | English | | Rdg./ Written |
| Home | English | English | English | | Instrument: |
| | | | | | Date: |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |
|---|---|---|---|---|---|---|---|---|
| Social Emotional / Academic | 25.5 | 25.5 | | | W | Psycho/Social Educator | 2/12/07 | 10 wks |
| Psyl Social Service | 2.0 | 2.0 | | | W | Psychol Social Worker | 2/12/07 | 10 wks |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | 27.5 | 27.5 | Hours Per Week | | | | | |

### V. Disability(ies)

MD (ED, Autism, OHI)

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%   ☐ 21-60%   ☒ 61-100%

Percent of time NOT in a Regular Education Setting

### VI. IEP TEAM (Participants in the development of the IEP)

*Print and sign your name below.*

*Vecia O. Bannor / Spec Ed / IEP developer*
*Harry Brockenberry General Edr.*
*Denise White-Jennings PhD - Clinical Psychologist*
*Rana T. Bennett, LICA*

___ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
Parent/Guardian Signature                                    Date

| Student Name | ~~Emma Simmons~~ | Managing School | Care Center | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number 9021977 | DOB 1/16/91 | Attending School | Grove School | Page 2 of 4 |

**VII. Present Educational Performance Levels in Areas Affected by the Disability**     Additional Comments: ☐

**Academic Areas: (Evaluator)** *Ellen K. Goldman PhD.*

Math Strengths: Calculation skills

Impact of disability on educational performance in general education curriculum:
Math fluency is below expectation based on intellectual potential - impacted by emotional issues

Reading Strengths:

Impact of disability on educational performance in general education curriculum:

*omit B*

**Score(s) When Available**
Math Cal. SS 125
Math Rea. SS 126
Math Fluency SS 99
See goal page:
Date: 1/26/06
Rdg. Com
Rdg. Basic
Written Ex.
See goal page:
Date:

**Communication (Speech & Language) (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
Exp.Lang.
Rec- Lang.
Artic
Voice
Fluency
Exp. Voc.
Rec. Voc.
See goal page:
Date:

**Motor/Health (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) /Results When Available**

See goal page:
Date:

**Social Emotional Behavioral Areas: (Evaluator)** *Dr. Richard Rubin*
Strengths: Intelligent, verbal

Impact of disability on educational performance in general education curriculum:
Dx Asperger's Disorder, Attention Deficit Disorder, Depression impacts on school functioning

**Score(s) When Available**
N/A
See goal page:
Date: 3/07

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:
Date:

**Prevocational Skills: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**

See goal page:
Date:

## District of Columbia Public Schools
### Washington, D.C.

| I.E.P. Attachment A |
| Intervention Behavior Plan |

### INTERVENTION BEHAVIOR PLAN     Date Developed: 3/9/07

Student Name _____     ID# _____     DOB: 1/16/91   Grade 10

Address _____
          Street #      Street Name          Quadrant    Apartment #    City          State    Zip Code

Telephone ( H ) ____(W)_____     Counselor _____

Attending School  Grove School ____   Teacher _____ Room _____ Section _____

TARGETED BEHAVIOR(S):                                          Additional Comments: ☐

Fails to accept responsibility for behaviors, verbal and/or physical aggression, poor self concept, poor peer social skills, attention, organization skills, depressed and/or irritable affect, low motivation, limited insight, low frustration tolerance, wants immediate gratification, projection of blame, oppositional, argumentative, flaunts rules, refuses to complete assignments, refuses to write assignments such as note taking, term papers etc.

POSITITVE INTERVENTION STRATEGIES: Student Objective --

Student will (1) appropriately verbalize needs, feelings, thoughts (2) follow school rules/routines with minimal prompting; (3) appropriately ask for and/or accept  assistance from teacher when needed; (4) complete schoolwork with minimal prompting; (5) appropriately participate in class activities (6) appropriately interact with peers and adults.

Implementation description --

Participation in behavior modification plan targeting specific behaviors and specified goals, rewards, and/or consequences. Development of behavioral contract with student identifying consequences and rewards for expected behavior

POSITIVE INTERVENTION STRATEGIES: Teacher Strategies

Proximity; verbal prompting/cueing; redirection; immediate recognition when desired behavior is demonstrated; immediate redirection for inappropriate behavior; praise, rewards, and incentives; modeling; special privileges, responsibilities, calm demeanor, non confrontational,

MONITORING SYSTEM: Responsible Teacher - ~~General and/or~~ Special Education Teacher /Social Worker / Psychologist
Describe System --

Charting of behavior, observation, treatment notes, anecdotal notes;

Data Collection timeline --

Daily

FOLLOW-UP MEETING: Date - _____

| Student Name ~~Xxxxxxxxxx~~ | Managing School    C.A.R.E. Center | DCPS – IEP |
|---|---|---|
| Student ID Number _____  DOB   1/16/91 | Attending School    Grove School | Page 3 of 4 |

| **VII. SPECIALIZED SERVICES** | Additional Comments: | Goal Number: ☐ |
|---|---|---|

Area addressed by goal: _____ Social - Emotional / *Academic*

**ANNUAL GOAL:** (including mastery criteria.)

> The student will demonstrate growth in social-emotional functioning in the area of coping skills, as evidenced by mastery of the following short-term objectives by 80%.

**Provider(s):** _____ Special Education Teacher/Psychologist/ Social Worker _____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (Include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will identify and demonstrate appropriate behavioral responses to a variety of situations, both positive and negative, with minimal assistance or prompting from teacher/adult in 8 out of 10 situations over a consistent period of time |  | Weekly |
| The student will identify various adaptive coping strategies (i.e., self time-out, counting, participating in calming activity, deep breathing, etc...) to effectively manage negative emotions (i.e., anger, frustration, anxiety, etc...) with minimal assistance from teacher/adult in 8 out of 10 situations over a consistent period of time. |  | Weekly |
| Given a variety of problem situations, the student will identify the problems, select adaptive coping strategies by which to solve it, and implements the appropriate strategy for resolution, 8 out of 10 situations over a consistent period of time. |  | Weekly |
| The student will accept redirection and/or consequences for inappropriate behavior with decreasing need for emotional and/or behavioral support from teacher/adult in 8 out of 10 events over a consistent period of time. |  | Weekly |
| The student will accept responsibility for his behavior. |  | Weekly |
| The student will accept adult constructive criticism and/or discipline without and emotional outburst |  | Weekly |
| The student will eliminate verbal and/or physical aggression towards peers |  | Weekly |
| The student will control physical responses when angered |  | Weekly |

| **EVALUATION PROCEDURE(S)** |
|---|
| ☐ Portfolio   X Log   X Chart   ☐ Test   X Documented Observation   ☐ Report   ☒ Other  *Progress Notes* |

| Student Name ~~_____~~ | Managing School ___C.A.R.E. Center___ | DCPS – IEP |
|---|---|---|
| Student ID Number _____ DOB __1/16/91__ | Attending School ___Grove School___ | Page 3 of 4 |

| VII. SPECIALIZED SERVICES | Additional Comments: | | Goal Number: [ ] |
|---|---|---|---|

Area addressed by goal: ___Social-Emotional / *Academic*___

**ANNUAL GOAL:** (including mastery criteria.)

The student will demonstrate increased self-regulation, impulse-control, and frustration tolererance as evidenced by mastery of the following short-term objectives by 80%.

Provider(s): ___Special Education Teacher/Psychologist/ Social Worker___

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (Include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will begin classroom activities/assignments with no more than two prompts from teacher/adult during the activity/assignment in 8 out of 10 events. | | Weekly |
| The student will utilize organizational skills necessary for successfully completing work assignments within specified period of time with minimal reminders and/or prompting from teacher/adult during the activity/assignment in 8 out of 10 events. | | Weekly |
| Given a novel or challenging task that the student perceives as challenging, the student will approach the task with a positive attitude and persist through the task with minimal behavioral support (i.e., redirection, cueing, prompting) from teacher/adult in 8 out of 10 events over a consistent period of time. | | Weekly |
| The student will self-initiate the completion of assignments and homework with no more than two prompts by therapist/teacher/adult in 8 out of 10 situations over a consistent period of time. | | Weekly |
| The student will demonstrate appropriate behaviors to enhance listening skills (eye contact, posture) in 8 of 10 events. | | Weekly |
| The student will come to class prepared by bringing necessary materials (pencil, notebook, planner, book, etc.) in 8 of 10 events. | | Weekly |

**EVALUATION PROCEDURE(S)**

[ ] Portfolio   X Log   [ ] Chart   [ ] Test   X Documented Observation   [ ] Report   X Other _*Progress Notes*_

| Student Name | ████████ | | Managing School | C.A. ... Center | | DCPS – IEP |
|---|---|---|---|---|---|---|
| Student ID Number | | DOB  1/16/91 | Attending School | Grove School | | Page 3 of 4 |

**VII. SPECIALIZED SERVICES**     Additional Comments:                                Goal Number: ☐

Area addressed by goal:    Social - Emotional / *Academic*

**ANNUAL GOAL:** (including mastery criteria.)

> The student will demonstrate increased self-regulation, impulse-control, and frustration tolerance, as evidenced by mastery of the following short-term objectives by 80%.

**Provider(s):**    Special Education Teacher/Psychologist/ Social Worker

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (Include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will ignore classroom disruptions in 8 of 10 incidents. | | Weekly |
| The student will breakdown assignments (short and long term) into manageable parts with a decreasing need for teacher assistance in 80% of assignments. | | Weekly |
| The student will write down assignments with decreasing need for adults prompts in 8 of 10 assignments. | | Weekly |
| The student will utilize a variety of study skills and techniques to understand subject matter (i.e. memory strategies, problem solving techniques) 80% of the time. | | Weekly |
| The student will utilize test taking strategies such as systematic preview of test to allot time for completion and identification of/use of clue words in test questions 80% of the time. | | Monthly |
| The student will work cooperatively on class assignments with peers in 8 of 10 assignments. | | Monthly |
| The student will develop realistic goals beyond high school with help of advisors, school staff, psychological service providers | | Monthly |
| The student will gain understanding of and be able to describe his learning style(s) and the accommodations or strategies the help him learn and perform most effectively  in 8 of 10 discussions. | | Monthly |
| The student will participate in extra curricular activities, outdoor activities etc. as appropriate to facilitate socialization in 8 of 10 opportunities . | | Weekly |
| The student will complete written tasks (note taking, papers, etc) with decreasing need for teacher intervention, supports, accommodations in 7 of 10 assignments. | | Weekly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  X Log  X Chart  ☐ Test  X Documented Observation  ☐ Report  ☒ Other  *Progress Notes*

| Student Name ~~_____~~ | Managing School ___C.A.R.E. Center___ | DCPS – IEP |
|---|---|---|
| Student ID Number _____ DOB __1/16/91__ | Attending School ___Grove School___ | Page 3 of 4 |

**VII. SPECIALIZED SERVICES**   Additional Comments:                                    Goal Number: [    ]

Area addressed by goal: ___Social-Emotional / *Academic*___

**ANNUAL GOAL:** (including mastery criteria.)

The student will demonstrate improved self-esteem as/evidenced by mastery of the following short-term objectives by 80%.

Provider(s): ___Special Education Teacher/Psychologist/ Social Worker___

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (Include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will identify his own strengths and weaknesses spontaneously and/or in 8 of 10 discussions. | | Weekly |
| The student will verbalize how self-concept affects aspects of his daily life in 8 of 10 discussions. | | Weekly |
| The student will identify problematic behaviors based on perception of self and identify acceptable substitute behaviors in 8 of 10 discussions | | Weekly |
| The student will express appreciation for individual differences, rights, opinions, and/or feelings of others. | | Weekly |
| The student will reduce irrational thinking and cognitive distortions of events in 8 of 10 events. | | Weekly |
| The student will refrain from making inappropriate comments to peers 80% of the time. | | Weekly |
| The student will initiate and respond appropriately to conversations with peers 80% of the time. | | Weekly |
| The student will refrain from getting involved in peer issues/conflicts that do not concern him 80% of the time. | | Weekly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☒ Log   ☐ Chart   ☐ Test   ☒ Documented Observation   ☐ Report   ☒ Other *Progress Notes*

District of Columbia Public Schools        07-02-2001        Division of Special Education   Appendix – A        IEP Page 3 of 4

| Student Name | ██████████ | | Managing School | C.A.R.E. Center | DCPS ~ IEP |
|---|---|---|---|---|---|
| Student ID Number | _____ DOB __1/16/91_ | | Attending School | Grove School | Page 3 of 4 |

| VII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: [  ] |
|---|---|---|

Area addressed by goal: _____ Social-Emotional / *Academic*

**ANNUAL GOAL:** (including mastery criteria.)

The student will demonstrate increased self awareness and mood regulation as evidenced by mastery of the following short-term objectives by 80%.

Provider(s): _____ Special Education Teacher/Psychologist/ Social Worker _____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (Include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will develop trusting therapeutic relationship with service provider as evidenced by willing attendance, participation and self disclosure 80% of the time. | | Weekly |
| The student will discuss his relationship with his family with therapist and advisor. | | Weekly |
| The student will participate in phone conferences and in person family meetings as deemed appropriate. | | Weekly |
| The student will discuss both positive and difficult situations with his family and identify what worked well and what he could do differently. | | Weekly |
| The student will work with therapist and advisor to identify and understand his role in family and family dynamics. | | Weekly |
| The student will identify and utilize the skills needed to improve his ability to communicate his thoughts and feelings in his family | | Weekly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  X Log  ☐ Chart  ☐ Test  X Documented Observation  ☐ Report  ☒ Other *Progress Notes*

District of Columbia Public Schools    07-02-2001    Division of Special Education  Appendix – A    IEP Page 3 of 4

| Student Name | | Managing School   C.A.R.E. Center |
|---|---|---|
| Student ID Number _____ DOB ___1/16/91__ | | Attending School   Grove School |

| **VII. SPECIALIZED SERVICES** | Additional Comments: | | Goal Number: [    ] |
|---|---|---|---|
| | Area addressed by goal: ___Social-Emotional / *Academic*___ | | |

**ANNUAL GOAL:** (including mastery criteria.)

The student will demonstrate increased self awareness and mood regulation as evidenced by mastery of the following short-term objectives by 80%.

**Provider(s):** ___Special Education Teacher/Psychologist/ Social Worker___

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will identify and discuss his feelings spontaneously or upon request in therapy session  80% of the time. | | Weekly |
| The student will gain insight and understanding into his feelings (depression, anger, frustration, anxiety) as they relate to self, family, events, circumstances etc. | | Weekly |
| The student will understand, accept, and begin to cope with his depressive illness. | | Weekly |
| The student will understand impact of depression (low energy, low interest, lack of motivation, helplessness, despair) on his daily functioning. | | Weekly |
| The student will learn methods to cope with the intensity of his affect, impulsivity and delay of gratification. | | Weekly |
| The student will gain insight into the dynamics of his defenses (projection of blame, denial, acting out) and develop alternative coping mechanisms | | Weekly |

**EVALUATION PROCEDURE(S)**

[ ] Portfolio   X Log   [ ] Chart   [ ] Test   X Documented Observation   [ ] Report   ☒ Other _Progress Notes_

District of Columbia Public Schools     07-02-2001     Division of Special Education  Appendix – A     IEP Page 3 of 4

| Student Name | ~~[redacted]~~ | Managing School | Care Center | OCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9021977   DOB 1/16/91 | Attending School | Grove School | Page 4 of 4 |

Additional Comments: ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education? ☐ Yes ☑ No

Explanation for removal out of regular education classroom.

The student requires a full time setting to address his emotional and academic concerns.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SETTING SpEd | Total | FREQUENCY Hr./ Min | FREQUENCY D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

Check and list modifications and/or accommodations for testing: ☐ None needed

Timing/Scheduling: _____
Setting: _____
Presentation: _____
Response: _____
Equipment: _____

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I    Tested with non-disabled peers under standard conditions without accommodations.

☑ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V  Portfolio:

☐ Level II    (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV   (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☐ Reading
☑ Mathematics
☐ Written Expression
☐ Other:
☐ None

☐ Physical/Sensory
☑ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

Modifications:
☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education Setting |  |  |
| Combination Spec.Ed. and Gen. Ed. |  |  |
| Out of General Education Setting | Accept   1/4/3 | Contained School 00B Lack of Exposure to Gen Ed. curriculum |

Modification(s)/Accommodation(s) to address the harmful effects:

Specific scheduling to accommodate for related service sessions and development of behavior intervention plan

Location for Services

# District of Columbia Public Schools

## *State Enforcement and Investigation Division*
### *confidential*

H. St. Clair, Esq., Due Process Hearing Officer
825 North Capitol Street, NE   8th Floor
Washington, D.C. 20002
Facsimile: (202) 442-5556

2007 MAR 29 AM 9: 01
DC PUBLIC SCHOOL SYSTEM

| | |
|---|---|
| **In the Matter of** ) | **IMPARTIAL** |
| ) | **DUE PROCESS HEARING** |
| A███████ M█████████  student ) | |
| Date of Birth: ███████ ) | **DISPOSITION of MOTION** |
| ) | **for SUMMARY DECISION** |
| ) | |
| Petitioner, ) | |
| ) | Request Date:   January 18, 2007 |
| versus ) | Argument:   March 16, 2007 |
| ) | |
| **The District of Columbia Public Schools,** ) | Held at:  825 North Capitol Street, NE |
| Attending: John Dewey School, ) | Eighth Floor, Hearing Room 1 |
| ) | Washington, D.C. 20002 |
| Respondent. ) | |

**Parents:**

**Counsel for the Parents/Student:**   Michael J. Eig, Esq.
**Michael J. Eig, Associates, P.C.**
5454 Wisconsin Avenue
Chevy Chase, Maryland 20815

**District of Columbia Public Schools:**   Daniel L. McCall, Esq., Attorney-Advisor
**Office of the General Counsel, DCPS**
825 North Capitol Street, NE  9th Floor
Washington, D.C. 20002

An <u>INDEX of NAMES</u> is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant witnesses. The index will be detached before release of this <u>DECISION & ORDER</u> as a public record.

i

# INDEX of NAMES for A█████M█████

**Hearing Date:**   March 16, 2007

Appearing on behalf of the parents/student:

1. ████████, father

Appearing on behalf of DCPS:  None

No testimony received.

ii

## STATEMENT of the CASE

On January 18, 2007, Counsel for the Parents filed the herein Complaint on behalf of the parents and student complaining the District of Columbia Public Schools (DCPS) denied a Free Appropriate Public Education (FAPE) to the student. Specifically, Counsel for the Parents complained of failure on the part of DCPS to make FAPE available to the student.

On March 13, 2007, Counsel for the Parents filed the herein Parents' Motion for Summary Decision with supporting documents. Also on March 13, 2007, DCPS filed the herein Motion to DISMISS and Response to Parents' Motion for Summary Decision, and Counsel for the Parents filed the herein Revised Parents' Revised Motion for Summary Decision. On March 16, 2007, Counsel for the Parents filed the herein Reply to the DCPS motion and response.

The Student Hearing Office, DCPS, scheduled a hearing in this matter for 9:00 A.M., Friday, March 20, 2007 at DCPS Headquarters, 825 North Capitol Street, NE - 8th Floor, Hearing Room 1, Washington, D.C. 20002. The hearing convened as scheduled.

By facsimile dated March 13, 2007, the parents disclosed 3 witnesses and 9 documents.

By facsimile dated March 13, 2006, DCPS disclosed 27 witnesses and 1 document.

The documents were placed into the record and are referenced/footnoted herein where relevant.

The hearing officer determined to hear argument on the motions and, depending upon the disposition of the motions, would issue an Interim Order of a Decision & Order.

## JURISDICTION

The hearing convened under Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004, Title 34 of the Code of Federal Regulations, Part 300, and Title V of the District of Columbia Municipal Regulations.

**ISSUE:**   Did *IDEIA 2004* obligate DCPS to make FAPE available to a student who at the time had been enrolled by his parents, residents of the District of Columbia, in and who was then attending a private school in the State of Massachusetts?

## DISPOSITION

Disposition by summary decision is appropriate when there is no material fact at issue after construing inferences in the favor of the non-moving party.

The undersigned found no material fact at issue at this stage of this proceeding and then found the following facts undisputed: The 17 year-old student had a history of misbehavior to the point his parents found it necessary to enroll him in schools/facilities programmed to cope

with teenage male misbehavior, first and for the first part of 2005-06 School Year, at a residential school in Gill, Massachusetts and, in January 2006, enrollment in a ten-week wilderness program in Utah; the last placement for the student beginning April 7, 2006 was a second residential school in Great Barrington, Massachusetts. On January 4, 2007, the father went to the Central Assessment Referral and Evaluation Center (CARE) at Shaw Junior High School, DCPS, and attempted to enroll the student as a non-attending student with the intention of, then and there, requesting an evaluation of the student for special education services. The official at CARE refused to enroll the student as a non-attending student, and after being informed by the parent of the request for evaluation for special education services, directed the parent to make the request to the local education agency (LEA) for the school district in which the school in Great Barrington, Massachusetts was located. The herein Complaint was filed January 18, 2007, and at the February 7, 2007 Resolution Session, DCPS enrolled the student as non-attending but again directed the parent to request evaluation of the student for special education services at the LEA in which the student attended school in Great Barrington, Massachusetts. No current evaluations of the student were in the record.

### The Parents' Revised Motion for Summary Decision

At Argument II.A.1., the motion referred to 5 DCMR 3002.1(a) and 20 U.S.C. 1400 *et. seq.* and urged that DCPS be required to make FAPE available to the student because he resided in the District of Columbia. Argument II.A.2., apparently correctly, anticipated DCPS arguments 1 and 2 setout below. Relying on *Massey vs. District of Columbia* 400 F.Supp.2nd 66, 72-73 (D.C. D. 2005), Argument II.B. moved for a default decision against DCPS for not filing a timely response conforming to the requirements of 20 U.S.C. 1415(c)(2) (B) (i)(I). Arguments II.C & D. urged that the private school in Great Barrington be found "proper" for the student and that DCPS be ordered to reimburse the parents for the cost of education from January 4, 2007. Reliance was placed on *Board of Education of Hendrick, Hudson Central School District, West Chester County, et el. vs. Rowley*, 458 U.S. 176 (1982), *Burlington School Community vs Department of Education* 471 U.S. 359 (1985) and *Florence County School District 4 vs Carter* 510 U.S. 7 (1993).

### The DCPS Motion to DISMISS and Response to Parent's Motion for Summary Decision

The DCPS motion and response were joined in one motion setting out three arguments: the first and second argued that the LEA in which the parentally placed private school student attended school in Barrington, Massachusetts was the LEA obligated to make FAPE available to the student, not DCPS; reliance was placed on an OSEP memorandum.[1] The third argument urged that the parents be denied reimbursement for the cost of education because they had not given DCPS Notice of Intent to Place Unilaterally.

2 of 5 pages

---

[1] Exhibit A: Memorandum, OSEP 05-09, June 27, 2005 (Office of Special Education and Rehabilitative services, U.S. Department of Education)

## Disposition

Only parents' Arguments II. A.1.& 2. are disposed of herein.

This disposition begins with 20 U.S.C. 1412(a)(1)(A) where a State participating in *IDIEA 2004* is required " . . .to ensure . . . [that] . . . a free appropriate public education is available to all children with disabilities residing in the State . . .." While the student, an unemancipated child, was a parentally placed private school child attending school in Barrington, Massachusetts, he was residing in the District of Columbia even though attending school in Massachusetts because his parents who had custody and control of him were residents of the District of Columbia. DCPS must make FAPE available to every student eligible to attend DCPS on a tuition free basis. See 5 DCMR 2000.2(a).

At 20 U.S.C. 1414(a)(1)(B), a parent is explicitly authorized to request evaluation of his or her child for special education services, The request can be made to the LEA in which the student resides or to the LEA in which the student is attending a private school.

At CARE on January 4, 2007, the father requested DCPS to evaluate the student for special education services as provided at 20 U.S.C. 1414(a)(1)(B) and obligated DCPS to make FAPE available to the student under 20 U.S.C. 1412(a)(1)(A), if the evaluation and a subsequent MDT decided the student was in need of special education services. **The refusal of DCPS on January 4, 2007 to enroll the student at CARE as a non-attending student and to evaluate him for special education services was a Denial of FAPE as of that date.** The denial began on January 4, 2007, not 120 days thereafter, because DCPS then made it clear the student would not be evaluated for special education services. The 120-day timeline would be material only if DCPS intended to evaluate student and they made clear that they did not.

"Child Find" or 20 U.S.C. 1412 (a)(3) was not an issue in this matter because the parent requested evaluation of the student for special education services at DCPS, not the LEA in Barrington, Massachusetts. "Child Find" requires every participating State to identify, locate and evaluate all children with disabilities residing in or attending a private school in the State, including homeless children and wards, that are in need of special education services. The section does not require any State to make FAPE available. In deed, while a parent of a student attending a private school in an LEA in which the student is not residing may request evaluation of the student for special education services in that LEA, in every case where FAPE is made available, it is made available under 20 U.S.C. 1412(a) (1)(A).

In consideration of the foregoing, the hearing officer made the following

## ORDER

1. The DCPS Motion to DISMISS is DENIED.

2. The Parents' Revised Motion for Summary Decision, as to parents' Arguments II. A.1.& 2. therein, is GRANTED.

3.  The parent's motion for a Default Decision at Argument II.B. is DENIED[2].

4.  The parents' motion for a finding as to the school in Barrington, Massachusetts being "proper" for the student and for an order to DCPS to reimbursement the parents for the cost of education at II.C. & D. are mooted at this stage of the proceeding[3].

5.  Within 30 days hereof, DCPS will have completed an initial evaluation of the student for special education services, including but not limited to clinical psychological and psycho-educational evaluations. DCPS failing the said evaluation schedule, the parent is authorized to arrange independent evaluations for which DCPS will pay according to Superintendent's Directive 530.6. Within 15 school days of completion/receipt of the last evaluation report, DCPS will convene an MDT/Eligibility/IEP/Placement meeting during which evaluations will be reviewed and the student's eligibility for special education services discussed and determined. If the student is determined ineligible, a Notice of Ineligible will be issued at the said meeting. If the student is determine eligible, an IEP will be completed and a Notice of Placement issued within 5 schooldays of the said meeting if a DCPS placement is recommended; if a non-public placement is recommended, a Notice of Placement will be issued within 30 days of the said meeting.

6.  If the student is determined eligible for special education services at the said MDT/Eligibility/IEP/Placement meeting, the form, amount and delivery of compensatory education, if any, will be discussed and determined. For disputes under this paragraph, either party may request a hearing.

4 of 5 pages

[2]  No basis for default decision could be found in IDEIA 2004.
[3]  No current evaluations of the student were in the record. Second, whether the parents' placement was "proper" should be determined after a determination that the student is eligibility for special education services and the resulting IEP.

7. For the said MDT/Eligibility/IEP/Placement meeting, scheduling is to be through and notices are to be sent to Counsel for the Parent except that, for everyday of unavailability of parent/educational advocate/Counsel for the Parent, the deadline herein will be extended one day. In the event of independent evaluation(s) sent to DCPS, Counsel for the Parent will verify by telephone the receipt of the evaluation report copy(ies) by the DCPS person addressee. For disputes under this paragraph, documentation of the parties will be relied upon to determine the good faith of each party.

This is **THE FINAL ADMINISTRATIVE DECISION. Appeal can be made to a court of competent jurisdiction within ninety (90) days of the issue date of this decision.**

Date: _____

H. St. Clair, Esq., Hearing Officer

Issued: _____

Student Hearing Office, DCPS

5 of 5 pages

# HEARING OFFICER'S DECISION COVER PAGE

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### *Office of Compliance*

David R. Smith, Due Process Hearing Officer
825 North Capitol Street, 8th Floor, N.E.
Washington, DC 20002
(202) 442-5432 (phone); (202) 442-5556(fax)

|  |  |  |
|---|---|---|
| In the Matter of | ) | **IMPARTIAL DUE PROCESS** |
|  | ) |  |
| C███ S███ ("Student"), | ) | **HEARING OFFICER'S DECISION** |
| Date of Birth: ███████ | ) |  |
| Petitioner, | ) | **Parents' Motion For Summary Decision** |
|  | ) |  |
| v. | ) | Attending School: |
|  | ) | Ivymount School |
| District of Columbia Public Schools | ) |  |
| 825 North Capitol Street, NW | ) |  |
| Washington, DC 20002 | ) |  |
| ("DCPS" or "District") | ) |  |
|  | ) |  |
| Respondent. | ) |  |
| _____ | ) |  |

Counsel for the parents:

Michael J. Eig, Esq.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815


Counsel for DCPS:

Tiffany Puckett, Esq.
Office of the General Counsel
825 North Capitol Street, NE
9th Floor
Washington, D.C. 20002

1

# INDEX OF NAMES

C▮▮▮▮▮ S▮▮▮▮ V. DCPS

| | |
|---|---|
| Assistant Superintendent, Special Education (or Director) | |
| Special Education Teacher | |
| School Psychologist | |
| Regular Education Teacher | |
| Principal | |
| Speech/Language Therapist | |
| Occupational Therapist | |
| Physical Therapist | |
| Private Psychologist | |
| CHILD AND CHILD'S DCPS ID # or SSN (insert ID # or Case Number on each page of the HOD vice child's name) | |
| Child's Parent(s) (specific relationship) | |
| Child/Parent's Representative | Michael J. Big, Esq. |
| DCPS Representative | Tiffany Puckett, Esq. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400**
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**IMPARTIAL DUE PROCESS HEARING**

**INTRODUCTION:**

1.      A Due Process Hearing Complaint Notice ("Complaint") was filed on January 13, 2006 contending, among other things, that DCPS had failed to develop an IEP and determine a placement for the student for the 2005-2006 school year.[1] On March 7, 2006, DCPS filed a Motion to Dismiss the Complaint contending that the student did not register with DCPS and that the student had been unilaterally placed by the parents in the Ivymount School in Rockville, Maryland ("Ivymount"). It was DCPS' position that it was not obligated to develop an IEP or determine a placement for the student because she was not registered as a non-attending student. DCPS further asserted that since the student was enrolled in a private school in Maryland, the parents were obligated to register the student with the Local Educational Agency ("LEA") in Montgomery County, Maryland with regard to FAPE.

2.      The Motion to Dismiss of DCPS was denied. Thereafter, the parents requested that the matter be handled by Summary Decision, with the parents filing their 'Parents' Motion for Pre-Hearing Summary Decision on March 22, 2006 ("Parents' Motion"). DCPS submitted its "Response to Parents' Pre-Hearing Summary Decision ("DCPS Response") on March 29, 2006 and the parents filing a "Reply to DCPS Response to Parents' Motion for Pre-Hearing Summary Decision" ("Parents' Response") on April 4, 2006.

3.      The issues presented in this matter are as follows:

a.      Whether no genuine issue of a material fact exists thereby making Summary Decision appropriate?

b.      Whether the parents provided DCPS with proper documentation to verify residency in the District of Columbia, a pre-requisite to registering the student?

c.      Whether DCPS was obligated to offer the student FAPE for the 2005-2006 school year?

d.      Whether Ivymount is an appropriate placement for the student for the 2005-2006 school year?

e.      Whether the parents should be reimbursed for their unilateral placement of the student at Ivymount for the 2005-2006 school year?

---

[1]      CS-1

## JURISDICTION:

This decision was written pursuant to the *Individuals with Disabilities Education Act* (I.D.E.I.A.), 20 U.S.C. §1400, et. seq. and the *Rules of the Board of Education of the District of Columbia.*

## FINDINGS OF FACT:

1.      Prior to the start of the 2005-2006 school year, the student and her parents lived in Florida. The student had been determined eligible for special education with a diagnosis of Autism.[2] While attending school in Florida, an IEP was developed for the student dated May 21, 2004, which IEP listed the student's primary disability as Autistic with a secondary disability as Language Impaired.[3]

2.      Sometime around August 2005, the parents and the student moved from Florida to Washington, D.C.[4] On August 12, 2005, the parents went to the C.A.R.E. Center at Shaw Junior High School ("Care Center") to register the student as a non-attending student.[5]

3.      At some point prior to August 12, 2005,[6] the student applied for and was accepted into Ivymount located in Montgomery County, Maryland.[7]

4.      When the parents went to the care Center on August 12 2005, they told the Care Center representatives that the student had been accepted at Ivymount. In response to this, the parents were directed by Ms. Cindy Brown, to register the student in Rockville, Maryland in view of he acceptance at Ivymount.[8] Ms. Brown is a clinical social worker and case manager for DCPS at the Care Center.[9] After the parents expressed an interest in a DCPS school placement, the Care Center representatives sent them to the Woodrow Wilson High School ("Wilson") which was the local high school in view of the parents address in the District of Columbia.

5.      On August 17, 2005, the mother went to Wilson to register the student.[10] The mother brought with her the student' Florida IEP. After informing the Care Center staff that the student had an IEP, the mother was told that she had to see Ms. Sonya Lee, the special education coordinator; however, Ms. Lee was not available at the time. Accordingly, the mother was directed to leave the IEP and related documents with Mr. Terry, also in the special education department at Wilson.[11]

---

[2]      Declaration of Mrs. S▮
[3]      CS-15
[4]      The exact date is not part of the record.
[5]      Declaration of Mrs. S▮
[6]      The exact date is not part of the record
[7]      The Declarations of Mrs. S▮ and Ms. Bonnie Beers, Director of Ivymount, do not provide a specific date for the application or the date the student was accepted. However, in view of the language in paragraph 3 of Mrs. S▮ Declaration and paragraph 4 of Ms. Beers' Declaration, it is clear that the student applied for admission prior to attempting registration at the Care Center.
[8]      Declaration of Mrs. Staros
[9]      Declaration of Cindy Brown
[10]     Declaration of Mrs. S▮
[11]     Id.

7.    The mother was also directed to meet with Ms. Hattie Willis-Moore at Wilson in order to register the student. Ms. Willis-Moore is the administrative assistant for Wilson and was responsible for incoming registration.[12] The mother provided Ms. Willis-Moore with a completed and signed "Residency Verification/Pre-Registration Form;[13] however, the form was not signed by DCPS. The form did not show an Student ID Number, but the space on the form where the ID was to be inserted was circled and a note was placed on the form stating "to be generated."

8.    The mother also signed a "Annual Student Enrollment Form."[14] At the bottom of the form there is a space for DCPS to sign the heading "For Office Use Only;" however, DCPS did not sign the form.

9.    Attached to the Annual Student Enrollment Form, were a "Home Language Survey," bearing the signature of the parent, a form titled "Release of Student Directory Information School Year 2005-2006," signed by the parent; this form did not require a signature by DCPS.   Also attached was a "DC Residency Verification Form."   Section "(B)" of this form begins as follows: "Or, in the absence of items listed above, two (2) of the items listed below will suffice as proof of residency in DC. The address and name on each of the below items must be the same." There are four (4) blank lines in this section, two (2) of which have a check mark as follows:

> "An unexpired lease of rental agreement with receipts for payment or canceled check for Payment of rent for a period within two (2) months immediately preceding consideration Of residency, for a current DC address at which the student actually resides;

> One utility bill (only gas, electric, and water bills are acceptable) with the name of the Person enrolling the student, current DC home address, and with receipt of payment or cancelled check for payment of the bill. The receipt of payment or canceled check must be from a period within the two (2) months immediately preceding consideration of residency."

10.    Under the heading of the "DC Residency Verification Form" is the parenthetical statement "(To be completed by Local School Staff Only)."  The form was signed by the mother, but not by a representative of DCPS. The form also contains the address of the student in the District of Columbia, which is the same as that on the Complaint.

11.    While at Wilson, the mother provided DCPS with a statement from PEPCO dated "8/17/05." The statement shows the name of the parents and their address in the District of Columbia, which is the same as that on the DC Residency Verification Form.[15] The PEPCO statement shows that the account was opened on "8/01/05," with no indication of disconnection.

12.    In addition to the statement from PEPCO, the parents provided DCPS with an Apartment Lease reflecting the same address as the above referenced documents and the Complaint and specifying the apartment number. The Lease begins by stating that it was effective June 30, 2005; however, the

---

[12]    Declaration of Ms. Willis-Moore
[13]    CS-7
[14]    CS-10
[15]    CS-9

Lease has a notation stating that instead of "July 1, 2005" rent would be due and payable on August 1, 2005.[16] The mother also provided DCPS with a copy of a rental deposit check dated July 5, 2005 pertaining to the apartment reflected in the Lease.[17]

13.     Although Ms. Sonya Lee, the DCPS Special Education Coordinator at Wilson was not available on August 12, 2005, Ms. Lee received information about the student and spoke with the parents about the student attending Ivymount for the 2005-006 school year. However, Ms. Lee did not recall speaking with the parent about the appropriateness of Wilson.[18]

14.     On August 23, 2006, counsel for the parents wrote a letter to Ms. Sonya Lee at Wilson stating that the parents were interested in moving forward with the IEP process.[19] There was no response to this letter. On August 26, 2006, counsel for the parents wrote Ms. Sonya Lee again stating that the parents had determined that Ivymount was the most appropriate placement for the student and had secured her placement there for the stat of the 2005-2006 school year and requested funding from DCPS for the placement.[20] There was no response to this letter.

15.     The student is currently attending Ivymount described by Ms. Bonnie Beers as a "nonpublic day school that specializes in educating students with disabilities, including those meeting the criteria for the federal IDEA eligibility code of Autism."[21]

16.     Ivymount convened an IEP meeting for the student and developed an IEP for her on October 28, 2005. The IEP reflects the student's disability classification as Autism and that she would be in a full-time program with the related service of speech/language therapy.[22] Ms. Beers stated in her Declaration that she was a member of the team at Ivymount that considered the student's application for admission at Ivymount and that the team agreed that the student required a full-time special education program. Ms. Beers states further that a less intensive program would not be appropriate for the student.[23]

## DECISION AND CONCLUSIONS OF LAW:

1.     This matter is before this Hearing Officer as the result of the parents filing a Motion for Summary Decision contending that DCPS failed to offer the student a Free and Appropriate Public Education ("FAPE") in accordance with 34 C.F.R. §300.300. The Motion was submitted in lieu of proceeding with a Due Process Hearing in accordance with the IDEA that obligates DCPS to ensure that all children with disabilities receive FAPE. This obligation includes identifying, locating and evaluating children in all areas of suspected disabilities 34 C.F.R. §300.125, developing an IEP, 34 C.F.R. §300.340, convening a meeting to develop, review and revise the IEP of a student with a disability, 34 C.F.R. §300.340 and determining an appropriate placement 34 C.F.R. §300.552, et. seq.

---

[16]     CS-12
[17]     Id.
[18]     Declaration of Sonya Lee
[19]     CS-5
[20]     CS-3
[21]     Declaration of Bonnie Beers
[22]     CS-16
[23]     Declaration of Bonnie Beers

2.      A Motion for Summary Judgment, entitles a party to judgment if the pleadings, depositions and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Tao v. Freeh*, 27 F. 3d 635 (D.C. Cir. 1994). Under the summary judgment standard, the moving party bears the "initial responsibility of informing the court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits which they believe demonstrate the absence of a genuine issue of a material fact. *Coletex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party then in response to the motion of the moving party must designate specific facts showing that there is a genuine issue for trial. Id. at 324.

3.      Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself is not sufficient to bar summary judgment. (See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 2d 202 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S. Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

4.      If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50, 106 S. Ct. 255. Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply ""show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed 2d 538 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Id. At 587, 106 S.Ct. 1348 (citing Fed.R. Civ. P. 5 (e)).

5.      The parents contend in their Motion that they are entitled to judgment as a matter of law because DCPS failed to offer the student an IEP and placement for the 2005-2006 school year. DCPS contends that it was not obligated to provide the student with FAPE because the student was not registered with DCPS and that the parents unilaterally placed the student in a private school in Maryland. DCPS therefore contends that the LEA in Montgomery County, Maryland is responsible for providing the student with FAPE. Based on the record as summarized here, there are no genuine issues of a material fact regarding this student; therefore, it is appropriate to decide this matter based on the disclosures of the parties as supplemented by their respective briefs.

6.      In addition to deciding that this matter can be handled by Summary Decision, there are additional questions that should be answered in order to determine if there has been a denial of FAPE that would entitle the parents to reimbursement for placing the student in Ivymount: whether the parents provided DCPS with proper documentation to verify residency in the District of Columbia, a prerequisite to registering the student and whether DCPS was obligated to offer the student FAPE after being notified by the parents that she was going to be placed by them at Ivymount? An affirmative

answer to these questions would then lead to two additional questions: whether or not Ivymount is an appropriate placement for the student and if so, whether DCPS is obligated to fund the placement. In any event, based on the findings of fact as discussed above, there are no factual disputes as to what happened at the Care Center and at Wilson concerning the parents' attempts to register the student with DCPS.

7.     With regard to verification of residency, the parents moved into the District of Columbia from Florida on or about August 1, 2005. They presented a Lease reflecting their residency that was effective August 1, 2005. and a copy of a cancelled check for the rent deposit on their address in the District of Columbia. The parents also presented a statement from PEPCO stating that they had service as of August 1, 2005. Therefore, the parents could not have presented paid receipts for utilities, etc., since they had just moved into the District of Columbia.

8.     In addition to the above, the parents signed enrollment forms presented to them by the Care Center. A review of these forms shows that all the information that the parents could fill out was completed. However, the sections that require DCPS to complete are blank. Based on the Declarations of Ms. Brown, Ms. Willis-Moore and Ms. Young, it is clear that the enrollment/registration forms were not completed once the parents informed the Care Center of their interest in Ivymount as a placement for their daughter. It is also noted that the same address for the parents and the student appears on all the documents mentioned herein that are used to determine residency. There being no question that the parents reside in the District of Columbia, there is no basis for the process of registration not moving forward to completion. It is clear that the registration process did not go forward because DCPS concluded that it did not have to register the student since she was going to school in Maryland in a private school.

9.     Prior to the enactment of IDEA 2004, an LEA had an obligation for consultation etc. for all parentally placed private school children with disabilities who reside in the LEA'S district, regardless of the private school location.[24] This obligation meant that an LEA had to maintain compliance with the IDEA with regard to privately placed students in multiple jurisdictions, because the private schools that the students would attend were in multiple jurisdictions. With the enactment of IDEA 2004 however, rather than an LEA being required to consult with multiple jurisdictions where private school children were placed, the LEA's responsibility would be restricted to private school children that are "enrolled by their parents in private elementary or secondary schools in the school district served by the local educational agency. 20 U.S.C. §1412 (a)(10)(A)(i).

10.    Guidance by the U.S. Department of Education on June 27, 2005 explains the change:

"Therefore, beginning July 1, 2005, each LEA must conduct child find, determine the proportionate share of Part B funds, and provide equitable services to parentally placed private school children with disabilities who attend private schools located in the LEA *without regard to where the children reside*. This change means that LEAs consult with representatives of the private schools located in the district, thereby eliminating the need for an LEA to contact private school representatives outside their jurisdiction. The change also means that representative of private schools have only one LEA to consult

---

[24]     34 CFR 300.450

with to ensure that children with disabilities enrolled in their schools can participate in IDEA equitable services." (Emphasis in original)

Memorandum to Chief State School Officers, 43 IDELR 224 (2005)

11.    This change means that an LEA must conduct "child find" activities with respect to children placed in a private school when the private school is in the LEA'S educational district, even though the child does not reside in the LEA's educational district. This "child find" obligation imposed on an LEA by IDEA 2004 is designed to ensure the **equitable participation** of parentally placed private school children with disabilities and to obtain an accurate count of such children. 20 U.S.C. §1412 (a)(10)(A)(ii)(II)

12.    The "child find" requirement referenced above however is different from that requiring an LEA to provide FAPE. **IDEA 2004 did not eliminate the need for an LEA to offer FAPE to all children who reside in the LEA's educational district, even if the child is privately placed by the parents in another jurisdiction.**

> **"(C) PAYMENT FOR EDUCATION OF CHILDREN ENROLLED IN PRIVATE SCHOOL WITHOUT CONSENT OF OR REFERAL BY THE PUBLIC AGENCY.-**
>
> **(i) IN GENERAL.-** Subject to subparagraph (A), this part does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parent elected to place the child in such private school or facility.
>
> **(ii) REIMBURSEMENT FOR PRIVATE SCHOOL PLACEMENT.** – If the parents of a child with a disability, who previously received special education ad related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court of a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment."

20 U.S.C. §1412 (a)(10)(C)(i) & (ii).

13.    The key here is to offer **FAPE; i.e. convening a meeting, develop an IEP, determine an appropriate placement, etc.** An LEA, here DCPS, must offer FAPE to all children who reside in the district. A parent may refuse to participate with the LEA or not accept what the LEA offers and then place a child in a private school in another jurisdiction. However, in such a case, they take the chance that they will not be reimbursed for the placement, because reimbursement can be denied.

14.    In her Declaration, Ms. Brown of DCPS states: "DCPS is no longer the LEA for students that are parentally placed in private schools that are outside of the District of Columbia.' Not being the

LEA for such children however, does not eliminate the obligation of an LEA (DCPS) to offer such children FAPE, although attending a private school in for example Maryland, but who reside in the District of Columbia. By at least offering FAPE, i.e. scheduling a meeting to develop an IEP and determine placement etc., the LEA complies with IDEA 2004 to make FAPE available to students who reside in the District of Columbia.

15.    There is no question here that the parents and the student reside in the District of Columbia; yet, the registration process was not completed based on a mistaken belief that DCPS did not have to offer the student FAPE.  With regard to the registration process, it is evident that the parents signed the necessary forms which only required signatures from the appropriate DCPS representative, which was not forthcoming.  Therefore, it was not the parents who failed to register the student, but DCPS who failed to complete the process.

16.    With regard to FAPE, in *Board of Education of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. (1982), the Supreme Court provided guidance consisting of a two-part analysis: first, a determination must be made regarding a failure to comply with the procedural requirements of the IDEA; and secondly, whether the individualized educational program developed through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefit.

17.    Based on the Declarations of Mrs. Staros and Ms. Beers, the student is receiving educational benefit at Ivymount that can justify reimbursement to the parents for the placement in view of *Burlington Sch. Comm. V. Dep't of Educ.*, 471 U.S. 359 (1985), *aff'g Town of Burlington v. Dep't of Educ. For the Commonwealth of Mass.*, 736 F.2d 773 (1st Cir. 1984) and *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993), *aff'g* 950 F.2d 156 (4th Cir. 1991).

18.    DCPS argues that it was not required to offer FAPE relying on the lack of registration for the 2005-2006  school year and that the student attends a private school in another jurisdiction. However, this reliance on the part of DCPS is not supportable for the reasons stated above.

19.    The registration requirement of DCPS as contained in 5 DCMR 5000.1 provides:

> All students in District of Columbia Schools must have proof of residency In the District of Columbia or pay tuition.  A determination of residency status shall be made annually for each student.  The method used to determine residency status shall be consistent across all public schools in the District of Columbia and **shall be crafted to facilitate rather than hinder school enrollment of eligible students.**

(emphasis added)

20.    The Rules of the D.C. Board of Education, Section 3030.3 requires that DCPS shall bear the burden of proof, based solely upon the evidence and testimony presented at the hearing, that the action or proposed placement is adequate to meet the educational needs of the student.  Here, for the reasons stated above, DCPS has not met its burden:

a.    The parents did not delay or hinder the registration process, but DCPS failed to move forward with the registration process upon learning of the student's acceptance and the parents' intention to enroll her there. The appropriate response on the part of DCPS would have been to move forward and registered the student as non-attending.

b.    With regard to the FAPE, there apparently was some confusion about DCPS' responsibility; again, IDEA did not change the obligation of the LEA in which a student resides to offer FAPE to that student. Reimbursement for a private placement could then be reduced or denied if a parent does not comply with specific requirements, such as the "notification" requirement prior to placing a student in a private school. The appropriate response on the part of DCPS here would have been to move forward the parents' August 23, 2005 request to proceed with the IEP process.

21.    Based on the record, Ivymount can meet the student's needs and has an IEP with appropriate goals and objectives, providing the student with educational benefit.

**ORDER:**

The Parents' Motion is GRANTED, DCPS shall place and fund the student at Ivymount for the 2005-2006 school year.

**APPEAL PROCESS:**

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

David R. Smith, Esq.
Impartial Hearing Officer

Date: 5-9-06

Issued: 5/10/06

11

NDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### IMPARTIAL DUE PROCESS HEARING

| | |
|---|---|
| In the Matter of ) | **CERTIFICATION OF RECORD** |
| ) | |
| C██████ S█████ ) | |
| · Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| District of Columbia Public Schools ) | |
| 825 North Capitol Street, NW ) | |
| Washington, DC 20002 ) | |
| ("DCPS" or "District"), ) | |
| ) | |
| Respondent. ) | |
| ) | |
| _____ ) | |

I, David R. Smith, Impartial Due Process Hearing Officer in this matter, DO

HEREBY CERTIFY that the attached Record of Proceeding itemizes the entire record in

the above-entitled matter as of this date, consisting of all items admitted into evidence,

including

I FURTHER CERTIFY that the documents and things forwarded herewith are

either the original or true copy of the original documents submitted in this matter.

EXECUTED this _9th_ day of _May_, 2006.

_____
DUE PROCESS HEARING OFFICER

MATTER OF C███████ S█████ V. DCPS

## RECORD OF PROCEEDING

| DATE | DESCRIPTION |
|---|---|
| 1-13-06 | Request for Due Process Hearing |
| NA | Notice of Pre-Hearing Conference (as applicable) |
| NA | Notice of Due Process Hearing |
| 3-7-06 | DCPS Motion to Dismiss |
| NA | Audio tapes of hearing |
| 3-7 & 6-06 | Parent Disclosure Exhibits: CS-1 thru CS- 15 |
| 3-22-06 | Parent's Motion For Summary Decision |
| 3-29-06 | DCPS Response to Parents' Motion for Summary Decision |
| 4-4-06 | Parents' Reply |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# HEARING OFFICER'S DECISION COVER PAGE

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

David R. Smith, Due Process Hearing Officer
825 North Capitol Street, 8th Floor, N.E.
Washington, DC 20002
(202) 442-5432 (phone); (202) 442-5556(fax)

| | |
|---|---|
| In the Matter of )<br><br>R███ S███ ("Student"), )<br>Date of Birth: ██████ )<br>Petitioner, )<br> )<br> v. )<br> )<br>District of Columbia Public Schools )<br>825 North Capitol Street, NW )<br>Washington, DC 20002 )<br>("DCPS" or "District") )<br> )<br> Respondent. )<br>_____ ) | **IMPARTIAL DUE PROCESS**<br><br>**HEARING OFFICER'S DECISION**<br><br>**Parents' Motion For Summary Decision**<br><br><br><br><br><br>Attending School:<br>Harbour School of Maryland |

Counsel for the parents:

    Michael J. Eig, Esq.
    5454 Wisconsin Avenue
    Suite 760
    Chevy Chase, Maryland 20815

Counsel for DCPS:

    Aaron E. Price, Esq.
    Office of the General Counsel
    825 North Capitol Street, NE
    9th Floor
    Washington, D.C. 20002

2007 MAR 27 PM 3: 35
DC PUBLIC SCHOOL SYSTEM

1

# INDEX OF NAMES

R████ S████ V. DCPS

| | |
|---|---|
| Assistant Superintendent, Special Education (or Director) | |
| Special Education Teacher | |
| School Psychologist | |
| Regular Education Teacher | |
| Principal | |
| Speech/Language Therapist | |
| Occupational Therapist | |
| Physical Therapist | |
| Private Psychologist | |
| CHILD AND CHILD'S DCPS ID # or SSN (insert ID # or Case Number on each page of the HOD vice child's name) | |
| Child's Parent(s) (specific relationship) | |
| Child/Parent's Representative | Michael J. Big, Esq. |
| DCPS Representative | Aaron E. Price, Esq. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400**
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**IMPARTIAL DUE PROCESS HEARING**

**INTRODUCTION:**

1.       The parents filed a Due Process Complaint Notice contending that DCPS had denied the student a Free and Appropriate Public Education ("FAPE") for failing to allow the student to be registered with DCPS.

2.       Subsequent to the filing of the Complaint, the parties engaged in a pre-hearing conference call wherein the parties agreed to proceed on written motions in lieu of a Due Process Hearing.  On August 11, 2006, a Hearing Officer's Scheduling Order was issued memorializing the agreement reached between the parties and set the following briefing schedule:

- August 18, 2006, deadline for the Parent to submit a Motion for Summary Decision;

- September 1, 2006, deadline for DCPS to file a Opposition to the Motion for Summary Decision and combined Cross-Motion for Summary Decision (or Motion to Dismiss);

- September 15, 2006, deadline for the Parent's Reply to Opposition to Motion for Summary Decision and combined Opposition to Cross-Motion for Summary Decision (or to Dismiss);

- September 29, 2006, deadline for DCPS' Reply to Opposition to Cross-Motion for Summary Decision (or to Dismiss).

3.       Contending that there were no factual issues in dispute, the parents filed a Motion for Pre-Hearing Summary Decision on August 18, 2006, pursuant to the Scheduling Order.

4.       DCPS did not file an Opposition to the Motion for Summary Decision as ordered. Furthermore, on September 11, 2006, the parents filed a Motion for Directed Decision.

5.       On September 18, 2006, the parents filed supplemental documents in support of its Motion for a Directed Decision.

6.       On January 29, 2007, the parents filed a Second Motion for Directed Decision and served a copy on DCPS.  As of the date of the issuance of this HOD, DCPS has not responded to any of the Motions of the parent. Accordingly, in view of the passage of time, no requests by DCPS for any extensions of time to respond or file any opposition to the Motion of the parent, it is concluded that the facts as alleged by the parent in the Motion for Summary Decision are undisputed.

**ISSUES:**

1.     Whether no genuine issue of a material fact exists thereby making Summary Decision appropriate?

2.     Whether DCPS proposed an appropriate IEP and placement for the student for the 2006-2007 school year?

3.     Whether the Harbour School can provide the student with educational benefit?

**JURISDICTION:**

The Hearing was held and this decision was written pursuant to the *Individuals with Disabilities Education Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17, the *Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145*, effective October 21, 1998.

**FINDINGS OF FACT:**

1.     The student is twelve years old and currently resides in the District of Columbia, but has been attending school at the Harbour School ("Harbour") in Baltimore Maryland since the 2004-2005 school year. The student previously lived in Montgomery County, Maryland and was diagnosed by the Montgomery County Public School as eligible for special education and related services as learning disabled, speech-language impaired, severe anxiety and other emotional issues.[1]

2.     Prior to the start of the 2006-2007 school year, the student ceased being a resident of Maryland and went to live with his father in the District of Columbia. On June 7, 2006, the father went to the DCPS Central Assessment Referral and Evaluation Center ("C.A.R.E. Center") to register the student as a non-attending student and to request that DCPS begin the process of determining the student's eligibility for special education. The father brought with him documents to evidence his residency in the District of Columbia as well as evaluations and other educational documents pertaining to the student.[2]

3.     Notwithstanding the delivery of required residency documents, the staff at the CARE Center would not permit the father to register the student because he was attending a private school in Maryland. The father was told that he would have to register the student in the county in which the Harbour school is located; i.e. Baltimore County Public Schools. As of the filing of the Motion, the father has been unable to register the student with DCPS.[3]

4.     The father presented a documentation, including the student's IEP from the Harbour School, that discuss his program and the services he has been receiving.[4] Based on this documentation, the student is receiving educational benefit from his placement at the Harbour School.

---

[1]     Declaration of J███ S███
[2]     Id.
[3]     Id.
[4]     Supplemental Disclosures dated January 29, 2007 and January 30, 2007

**DECISION AND CONCLUSIONS OF LAW:**

1.      This matter is before this Hearing Officer as the result of the parent filing a Motion for Summary Decision contending that DCPS failed to offer the student a Free and Appropriate Public Education ("FAPE") in accordance with 34 C.F.R. §300.300.  The Motion was submitted in lieu of proceeding with a Due Process Hearing in accordance with the IDEA that obligates DCPS to ensure that all children with disabilities receive FAPE.  This obligation includes identifying, locating and evaluating children in all areas of suspected disabilities 34 C.F.R. §300.125, developing an IEP, 34 C.F.R. §300.340, convening a meeting to develop, review and revise the IEP of a student with a disability, 34 C.F.R. §300.340 and determining an appropriate placement 34 C.F.R. §300.552, et. seq.

2.      Here, the parent filed a Motion for Pre-Hearing Summary Decision on August 18, 2006, followed by a second Motion filed on January 29, 2007.  The parent contends that Summary Decision is appropriate in that there are no genuine issues of a material fact in dispute.  Notwithstanding the issuance of a Scheduling Order on August 11 2006, DCPS has not filed a response to the Motion as submitted on August 18, 2006 or the Second Motion filed on January 29, 2007. Accordingly, in view of the passage of time, no requests by DCPS for any extensions of time to respond or file any opposition to the Motion of the parent, it is concluded that the facts as alleged by the parent in the Motion for Summary Decision are undisputed.

3.      Pursuant to Fed. R. Civ. P. 55(a), "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Accordingly, in view of the fact that DCPS has failed to respond to the allegations in the Motions filed by the parent, an entry of default is appropriate in this proceeding.

4.      With regard to the merits of this case when the parent attempted to register the student at the CARE Center on June 7, 2006, DCPS would not do so and thus informed the parent that it was not responsible for providing the student with FAPE, such being the responsibility of the LEA where the private school, here Harbour School, is located, which is in Maryland. However, the CARE Center representatives failed to follow applicable District of Columbia local law requiring that an LEA, here DCPS, "shall make a free appropriate public education available to each child with a disability, ages three to twenty-two, who reside in, or is a ward of the District." 5 D.C.M.R. §3002.1(a).

5.      Additionally, DCPS is required to make FAPE available to children within its jurisdiction in accordance with the IDEA's child-find provision.

> All children with disabilities residing in the State, including...
> Children with disabilities attending private schools, regardless of
> the severity of their disabilities, and who are in need of special
> education and related services, are identified, located, and
> evaluated and a practical method is developed and implemented to
> determine which children with disabilities are currently receiving
> needed education and related services.

20 U.S.C. §1412(a)()(A).

6.     As a resident of the District of Columbia, the student is entitled to be offered FAPE from DCPS, notwithstanding the student attending a private school in Maryland.  20 U.S.C.§ 1412(a)(10)(B), *et seq.*

7.     The United States Department of Education, Office of Special Education has issued a publications consisting of Questions and Answers[5] that address this issue:

> Question:    If a parentally placed private school child is identified through the child find process as a child Eligible for special education and related services, which LEA is responsible for offering FAPE to a parentally placed private school child with a disability?

> Answer:    If a determination is made that a child has a disability and needs special education and related services, **the LEA where the child resides is responsible for making FAPE available to the child.**

(Emphasis Added)

8.     With regard to FAPE, in *Board of Education of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. (1982), the Supreme Court provided guidance consisting of a two-part analysis: first, a determination must be made regarding a failure to comply with the procedural requirements of the IDEA; and secondly, whether the individualized educational program developed through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefit.

9.     Based on the facts here, DCPS did not offer a special education program to the student; therefore, DCPS did not comply with the procedural aspects of *Rowley*.

10.    Since DCPS has not developed any individualized educational program or determine an appropriate placement for the student for the 2006-2007 school year, it did not offer a program reasonably calculated to enable the student to receive educational benefit, the second part of the two-part analysis in *Rowley*.

11.    In determining whether a summary judgment should be granted, a determination must be made as to whether "no genuine issue as to a material fact exists and whether the moving party is entitled to judgment as a matter of law. [6] Also, the facts must be reviewed in a light most favorable to the non-moving party.[7]  Based on the record, the facts as asserted by the parent are not disputed;

---

[5]    Questions and Answers On Serving Children With Disabilities Placed by Their Parents at Private Schools, Question F-1 (March 2006); http://www.ed.gov/policy/speced/guid/idea/faq-parent-placed.doc,

[6]    Federal Rules of Civil Procedure 56 (c)

[7]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

accordingly, there is no genuine issue as to a material fact that would prevent the parent's Motion from being granted.

12.     With regard to reviewing this matter in a light most favorable to DCPS, DCPS has not provided any evidence that could dispute any of the contentions of the parent. In fact, based on the Questions and Answers publication of the Department of Education, it is clear that DCPS had an obligation to offer FAPE to the student and not simply refuse the parent from registering the student.

13.     As of the filing of the Complaint, The Rules of the D.C. Board of Education, Section 3030.3 required that the parent was to bear the burden of proof that an action of DCPS or proposed placement is was inadequate to meet the educational needs of the student. Here, based on the undisputed evidence, the parent has presented evidence that the student is receiving educational benefit from the Harbour School. However, DCPS has not presented any evidence that it offered any placement or special education program for the student based on its conclusion that it did not have to do so. However, as stated above, DCPS has an obligation to *make FAPE available* even if the student is attending a private school in the jurisdiction of another LEA. Once an LEA has offered a FAPE, and if the parent decides not to pursue it, then it could be concluded that the LEA is not responsible for an out of jurisdiction private placement. However, to do nothing, as here, is not an attempt to meet the FAPE obligation and in fact, denies the student FAPE.

14.     With regard to the parent's Motion, when viewing this matter in the light most favorable to the non-moving party, DCPS, has failed to present any evidence that would rebut the factual or legal arguments of the parent or that the placement desired by the parent is inappropriate; accordingly, Summary Decision in this case is appropriate.

**ORDER:**

The Motion is **GRANTED** with regard to reimbursement for the student's placement at the Harbour School, retroactive to the beginning of the 2006-2007 school year.

**APPEAL PROCESS:**

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.


David R. Smith, Esq.
Impartial Hearing Officer

Date: 7-27-07

Issued: 3/27/07

7

**INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400**
**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**IMPARTIAL DUE PROCESS HEARING**

| | |
|---|---|
| In the Matter of            ) | **CERTIFICATION OF RECORD** |
| ) | |
| R████ S████            ) | |
| Petitioner,            ) | |
| ) | |
| v.            ) | |
| ) | |
| District of Columbia Public Schools ) | |
| 825 North Capitol Street, NW            ) | |
| Washington, DC 20002            ) | |
| ("DCPS" or "District"),            ) | |
| ) | |
| Respondent.            ) | |
| ) | |

I, David R. Smith, Impartial Due Process Hearing Officer in this matter, DO

HEREBY CERTIFY that the attached Record of Proceeding itemizes the entire record in

the above-entitled matter as of this date, consisting of all items admitted into evidence,

including

I FURTHER CERTIFY that the documents and things forwarded herewith are

either the original or true copy of the original documents submitted in this matter.

EXECUTED this 27th day of March, 20 07 .

DUE PROCESS HEARING OFFICER

8

**MATTER OF R███████ S███████ V. DCPS**

**RECORD OF PROCEEDING**

| DATE | DESCRIPTION |
|---|---|
| 5-31-06 | Request for Due Process |
| NA | Notice of Pre-Hearing Conference (as applicable) |
| 6-30-06 | Notice of Due Process Hearing |
| | |
| NA | Audio tapes of hearing |
| 7-19-06 | Guardian's Motion for Pre-Hearing Summary Decision |
| 7-20-06 | Guardian's 5-Day Disclosures letter listing witnesses and containing 6 Exhibits |
| 7-21-06 | DCPS 5–Day Disclosure letter listing witnesses, no documents |
| 8-4-06 | Letter from Guardian's Counsel |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |