## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE DISTRICT OF COLUMBIA,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>LARRY ABRAMSON and<br>CAROLINE NEWMAN<br>parents and next friend of S.A.,<br><br>　　　Defendants. | Civil Action No. 06-CV-2105 (PLF) |

## MOTION TO SHOW CAUSE

Defendants respectfully request the Court to require plaintiffs to show cause why they should not be held in contempt for violating federal law and the "stay-put provision" of 20 U.S.C. § 1415 (j), in place under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§1400, *et seq*., during the pendency of this action.  The grounds for this motion are specifically set forth in defendants' accompanying memorandum of points and authority, which is hereby incorporated.

WHEREFORE, defendants respectfully request that their motion be granted.

Respectfully submitted,

/s/ (filed electronically)

Michael J. Eig　　　#912733_____
Haylie M. Iseman　　#471891
Matthew B. Bogin　　#911552
Paula A. Rosenstock　#494580

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE DISTRICT OF COLUMBIA, | |
| Plaintiff, | |
| v. | Civil Action No. 06-CV-2105 (PLF) |
| LARRY ABRAMSON and CAROLINE NEWMAN parents and next friend of S.A., | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO SHOW CAUSE**

**I.    FACTS.**

On September 14, 2006, Hearing Officer Coles Ruff issued his decision in *S.A. v. DCPS*.

Exhibit 1.  The parents prevailed in that hearing officer's decision ("HOD") and the school

system appealed to this Court on December 12, 2006.  The HOD specifically ordered DCPS to

determine S.A.'s eligibility for special education, and if found eligible, to "reimburse the parents

for the student's tuition at the Grove School ("Grove") from the date that an eligibility

determination should have been made pursuant to DC Code Sec. 28-2501 until such time as the

student is provided an appropriate education."[1]  See Exhibit 1 at 10.

On March 9, 2007, DCPS finally completed a Multi-Disciplinary Team ("MDT") meeting

and determined that S.A. is eligible for special education as a student with a number of

---

[1]      The HOD specified that reimbursement should begin from May 4, 2006, the date that
DCPS should have completed all evaluations and made an eligibility determination.  Exhibit 1 at
10.

1

disabilities including, Other Health Impairment, Autism and an Emotional Disturbance. Exhibit 2. Pursuant to the HOD, the parents submitted their invoices for reimbursement on February 15, 2007, March 22, 2007, and April 2, 2007. Exhibit 3. To date, DCPS has failed to pay any of these invoices.

Further, on April 3, 2007, plaintiffs filed a motion *with the Hearing Officer who heard the case last year* to stay the HOD, asking that DCPS be relieved of its duty to pay S.A.'s tuition while the case is on appeal. Exhibit 4. Defendants responded on April 4, 2007, pointing out that the Hearing Officer was without jurisdiction to entertain the belated motion, and that clear federal law, 34 C.F.R. § 300.518(d) prohibited such a stay. Exhibit 5. Finally, on April 4, 2007 counsel for DCPS sent a fax to counsel for the defendants including an email between counsel for DCPS and Gregory Hall, in the Office of the Chief Academic Officer for DCPS, instructing Mr. Hall to "hold off on reimbursement [in the S.A. case] until I tell your office otherwise." Exhibit 6.[2]

## II.  ARGUMENT.

Plaintiffs' open refusal to obey federal law (as well as plaintiffs' counsel's disclosed advice to violate the law) is unconscionable. The IDEA provides that, "during the pendency of any proceeding conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, *the child shall remain in the then-current education placement of the child . . . until all such proceedings have been completed*." 20 U.S.C. § 1415(j) (emphasis added). The Supreme Court and the federal regulations promulgated pursuant to the IDEA are

---

[2]     The undersigned would also advise the Court that he placed calls to three different attorneys for plaintiffs in an effort to forego the necessity of this motion. Unfortunately, none agreed to honor the explicit "stay-put" requirement of 34 C.F.R. § 300.518.

clear that a child's then-current placement is the last agreed upon placement, *including a placement made by a hearing officer at a final administrative hearing*. "If the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement *must be treated as an agreement between the State and the parents for purposes of paragraph (a) of this section*." 34 C.F.R. § 300.518(d) (emphasis added).[3] Further, this regulation simply codifies what the Supreme Court has consistently held: an administrative decision in favor of the parents "would seem to constitute an agreement by the State to the change of placement." *Burlington Sch. Comm. v. Department of Educ.,* 471 U.S. 359, 372 (1985).

Thus, it is beyond argument that, under the regulations and *Burlington,* the HOD changed S.A.'s current educational placement to Grove. Accordingly, under the "stay-put" provision of the law, DCPS is required to fund that placement during its appeal to this Court. Upon a finding of eligibility, which occurred on March 9, 2007, the Hearing Officer ordered DCPS to reimburse the parents for S.A.'s placement at Grove from May 4, 2006 *until such time that he is provided with an appropriate placement*. Exhibit 1 at 10. The Hearing Officer's decision created a new current educational placement at Grove under the stay-put provision of the law. 34 C.F.R. § 300.518(d). When plaintiffs appealed the HOD, the "stay-put" protections of the law were invoked requiring DCPS to fund S.A.'s tuition at Grove through the pendency of the appeal. 20 U.S.C. § 1415(j). By refusing to pay, DCPS is violating federal law.

---

[3]    Paragraph (a) states, "Except as provided in §300.533, during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under §300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement." 34 C.F.R. §300.518(a).

Plaintiffs' actions are contumacious in and of themselves, but the *manner* in which they are acting only exacerbates their violations. Waiting six months to file a post-hearing motion for a stay, before a Hearing Officer without jurisdiction to rule on the motion, appears to be nothing less than game playing with defendants' federal rights. Moreover, directing D.C. officials to violate the plain mandate of 34 C.F.R. § 300.518 speaks to either an unaccountable ignorance of the law, or a disregard for it.

Finally, by even suggesting that this Court action should stay its statutory obligation to maintain S.A. at Grove, when it is the Court action itself that establishes the obligation to maintain the placement at Grove, is either confused and pointless double talk, or pure and simple contempt of the law.

## III.    CONCLUSION.

Unless and until plaintiffs expedite compliance with the IDEA, we would respectfully request this Court to require plaintiffs to show cause why they are not in contempt of Court for violating the IDEA's "stay-put" provision.

Respectfully submitted,

/s/ (filed electronically)

| | |
|---|---|
| Michael J. Eig | #912733 |
| Haylie M. Iseman | #471891 |
| Matthew B. Bogin | #911552 |
| Paula A. Rosenstock | #494580 |

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Defendants

4

(In the Matter of SA  DOB 1/16/91  HOD September 14, 2006)

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigation Division*
### CONFIDENTIAL
## Coles B. Ruff, Jr., Due Process Hearing Officer

| | | |
|---|---|---|
| In the Matter of S A | ) | **IMPARTIAL DUE PROCESS** |
| Date of Birth: 1991 | ) | |
| | ) | **HEARING OFFICER'S DECISION** |
| | ) | |
| Petitioner, | ) | Hearing Dates: August 8, 2006 |
| | ) | August 21, 2006 |
| v. | ) | Held at: 825 North Capitol St. NE |
| | ) | Washington, DC |
| | ) | |
| District of Columbia Public Schools | ) | |
| ("DCPS" or "District") | ) | |
| Attending School: Care Center | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Counsel for Student:                  Michael J. Eig, Esq.
                                      5454 Wisconsin Avenue #760
                                      Chevy Chase, Maryland 20815

Counsel for DCPS:                     Stephanie Ramjohn Moore, Esq.
                                      Office of General Counsel
                                      825 North Capitol St. NE
                                      Washington, DC 20002

## JURISDICATION:

A Due Process Hearing was convened on August 21, 2006, at the headquarters of the District of Columbia Public Schools, 825 North Capitol Street, NE, Washington, DC 20002, in response to a due process complaint submitted by counsel for the student and parent filed May 23, 2006.

The hearing was conducted and this decision was written pursuant to the *Individuals with Disabilities Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17 and the *Individuals with Disabilities Education Improvement Act of 2004* (I.D.E.I.A.), the Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145, effective October 21, 1998.

(In the Matter of SA  DOB: ██/██/91  HOD  September 14, 2006)

The parent's counsel assert there is no genuine issue as to any material fact in the record and the parent is entitled to judgment as a matter of law and thus requested an order of summary decision ordering DCPS to place and fund the student at Grove School.

## DUE PROCESS RIGHTS:

The parent's counsel waived a formal reading of the due process rights.

## SUMMARY OF THE RELEVANT EVIDENCE:

The parent's counsel submitted the motion for summary decision August 4, 2006.  DCPS filed an opposition to the motion August 11, 2006.  Parent's counsel filed a response to DCPS' opposition August 16, 2006.  The Hearing Officer held oral argument on the motion and opposition August 21, 2006.  In rendering this decision on the motion the Hearing Officer considered the motion and the opposition, the representations made on the record by each counsel and the documents submitted in the parties' disclosures (SA 1-15 and DCPS 1-7) which were admitted into the record.

## FINDINGS OF FACT[1]:

The following facts were undisputed by the parties:[2]

1. The student is age fifteen and has not yet been determined to be eligible for special education services.

2. On January 4, 2006, the student's parents registered the student as a non-attending student with DCPS at the DCPS Central Assessment Referral and Evaluation Center (CARE Center) at Shaw Junior High School to begin the student's assessment for special education services.  (SA 2, 16)

3. Until February 27, 2006, the student attended Georgetown Day School (GDS) within the District of Columbia.[3]  (SA 3)

4. The CARE Center staff contacted GDS to schedule a time to observe the student in February 2006; the Care Center staff was advised the student had been withdrawn.

---

[1] The evidence that is the source of the finding of fact is noted within a parenthesis following the finding.

[2] The findings of fact listed here are the extent to which the parties agreed there is no material dispute as to fact.  DCPS did not agree to a finding that student was a child with a disability or that the student has a condition that would qualify him as a child with a disability under IDEIA.

[3] The parent counsel represented the student stopped attending GDS shortly after February 11, 2006, when he was hospitalized.  The Hearing Officer concluded there was no material difference in the two dates presented as to when the student last attended GDS.

3

(In the Matter of SA  DOB: ██/91  HOD: September 14, 2006)

5. By letter dated March 13, 2006, the parent's counsel advised DCPS the student no longer attended GDS and had been unilaterally placed by his parents at the Grove School in Madison County Connecticut.  (DCPS 5)

6. The parent's enrolled the student in a residential placement at the Grove School (Gove) in Madison County, Connecticut, on April 4, 2006.

7. By letter dated May 4, 2006, Patricia Young, The Director of the Care Center advised parent's counsel that since the student was removed from school in the District of Columbia and was currently attending school in Madison County, Connecticut, the LEA in Madison County would be responsible for providing special education services to the student.  Ms. Young provided contact information for Joanne Paniecek, Director of Special Education in Madison County, Connecticut.  (SA 3, DCPS 4)

8. At a meeting May 5, 2006, DCPS again advised the parent that DCPS was not obligated to provide student with services under IDEA.  Ms. Young reiterated this position to parents counsel in a letter dated May 23, 2006, and indicated that if the student returned to the DC with an individualized educational program (IEP) DCPS would provide services to the student.  The parent's counsel then filed the current due process complaint.  (DCPS 5, 6)

9. The student resides in the District of Columbia.

## ISSUE(S):

1. Is there no genuine issue of material fact in this matter such that Summary Decision appropriate?
2. Is DCPS obligated to provide the student FAPE even though he currently attends school in Madison, Connecticut?
3. Should the parents be reimbursed for unilaterally placing the student in the Grove School?

## CONTENTIONS OF THE PARTIES:[4]

### DCPS counsel asserted the following:

1. The reauthorization of IDEA 2004 significantly changed the obligation of States and LEAs to children with disabilities enrolled by their parents in private schools. The Act now requires the LEAs in which the private schools are located, rather than the LEA's in which the parents and child resides, to conduct child find and

---

[4] The contentions are the arguments made by opposing counsel and do not reflect any findings or conclusions made by the Hearing Officer.

(In the Matter of SA  DOB: ██91  HOD: September 14, 2006)

provide equitable services to parentally-placed private school children with disabilities.

2. "Child find" includes an eligibility determination when a parent requests that a child be evaluated for and provided special education services.

3. The June 27, 2005, OSEP letter supports this conclusion and elucidates the change in Section 1412 (a)(10)(A) entitled: "Children Enrolled in Private Schools By Their Parents" [5]

4. Consistent with the OSEP letter the Superintendent's directive states parents of students attending a private or religious school outside the District of Columbia should contact the school system where the student's school is located to seek special education services.[6]

---

[5] The US Department of Education Office of Special Education and Rehabilitative Services (OSEP) issued a memorandum dated June 27, 2005, entitled: "Obligations of States and local educational agencies to parentally-placed private school children with disabilities." The memorandum states in pertinent part: "The Obligation of States and LEAs to children with disabilities enrolled by their parents in private elementary schools and secondary schools will change beginning July 1, 2005, the effective date of these provisions in the IDEA of 2004.  20 USC 1412(a)(10) of IDEA 2004:  (1) regarding the agency responsible for providing equitable special education and related services to parentally-placed private school children with disabilities, and (2) determining the proportionate amount of Federal funds to be expended by the LEA for such children attending private schools located in their district.  IDEA 2004 retains the provision in IDEA that each LEA spend a proportionate amount of the required sub-grants it receives from the SES under 20 USC 1411 and 20 USC 1419 for special education and related services to children with disabilities enrolled by their parents in private elementary schools and secondary schools (20 USC 1412(a)(10(A)(i) (I). However, under IDEA 2004, to calculate the proportionate amount of the Federal Part B funds, the LEA, after timely and meaningful consultation with representatives of private schools, must conduct a thorough and complete child find process to determine the number of parentally-placed children with disabilities attending private schools located in the LEA. In addition, the obligation to spend a proportionate amount to provide services to children with disabilities enrolled by their parents in private schools now refers to children enrolled by their parents in private elementary schools and secondary schools in the LEA.  These are significant changes from current regulations in which the responsibility to conduct child find (344 CFR 300.451) and provide equitable services to parentally-placed private school children rests with the LEA in which the children reside.  Therefore, beginning July 1, 2005, each LEA must conduct child find, determine the proportionate share of Part B funds, and provide equitable services to parentally placed private school children with disabilities who attend private schools located in the LEA without regard to where the children reside.  This change means the LEAs consult with representatives of the private schools located in the district, thereby eliminating the need for LEAs to contact private school representatives outside of their jurisdiction. The change also means that representatives of private schools have only one LEA to consult with to ensure that children with disabilities enrolled in their schools can participate in IDEA equitable services…"

[6] The DCPS Superintendent issued a directive D 303.1 dated August 1, 2005, which sets out the procedures for the referral to determine Special Education eligibility of student's who are wards of the District of Columbia or who are non-attending DCPS students.  In pertinent part the directive states:  Student's attending private or religious school located outside the District of Columbia, not funded by DCPS: …Consistent with the IDEIA 2004, a parent requesting consideration of special education eligibility or a change in services should contact the LEA in the state the school is located (OSEP Letter 05-9 to Chief State School Officers, "Obligations of Sates and local educational agencies to parentally-placed private school children with disabilities." June 27, 2005)

(In the Matter of SA  DOB: ███/91  HOD: September 14, 2006)

5.  The comments of the new IDEA regulations explaining the changes in the law
    with regard to parentally placed private school students also support the
    conclusion the LEA where the student attends school is responsible for the
    eligibility determination and provide special education services under IDEA. [7]

6.  In the alternative, if the Hearing Officer concludes DCPS has an obligation to
    evaluate the student for special education services, the facts indicate DCPS tried
    to evaluate the student and the student was removed from the jurisdiction and
    unavailable prior to the expiration of the 120 days following the parental request.

**The parent's counsel asserted the following:**

1.  IDEA 2004 did not eliminate the need or an LEA to offer FAPE to all children
    who reside in the LEA's educational district, even if the child is privately placed
    by the parents in a school in another jurisdiction.

2.  Both federal and local law provide the LEA shall make FAPE available to each
    child with a disability, ages three to twenty-two, who reside in or is a ward of the
    District of Columbia.

3.  The Act now requires LEAs in which the private schools are located rather than
    the LEA in which the parent and child reside to conduct child find and provide
    equitable services to parentally placed private school children with disabilities.

4.  This section of IDEA does not deal with a child whose parent wishes to enroll
    him in a public school system in order to receive a determination of his eligibility
    for special education and an offer of an appropriate education program and
    placement.

5.  Such a student is entitled to a full panoply of individualized services contemplated
    in Section 1412(a)(1)-(9) and if so placed by DCPS to the continuing protections
    of 1412(a)(10)(B).

6.  DCPS has said it won't evaluate the student while he attends Grove.

7.  If DCPS had provided a placement other than Grove the parent's would have
    considered that placement but DCPS refused to complete the eligibility process.

8.  The parent would have made the student available had DCPS asked for the
    student to be made available.

9.  When a student has been denied FAPE funding of a proper parental placement is
    the appropriate relief.

10. The parent believes an eligibility determination can be made on the evaluations in
    the record and the parent requests the Hearing Officer make that determination.

11. Or DCPS can reinstitute the eligibility process while DCPS funds the student at
    Grove; but DCPS should not be rewarded for a misinterpretation of the law.

12. The parent is requesting DCPS place and fund the student's attendance at the
    Grove retroactively to his enrollment at Grove on April 4, 2006.

---

[7] Federal Register Vol. 71 No. 156 Monday, August 14, 2006, Pages 46589 - 46596

(In the Matter of SA  DOB:━━/91  HOD: September 14, 2006)

**Motion for Summary Decision**

A Motion for Summary Judgment entitles a party to judgment if the pleadings, depositions and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F. 3d 635 (D.C. Cir. 1994).

Summary judgment should be granted only where there are no genuine issues of material fact, and all inferences must be viewed in a light most favorable to the non-moving party. If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available. *Alyeska Pipeline Serv. Co. v. United States Envtl. Protection Agency*, 272 U.S. App. D.C. 355, 856 F.2d 309, 314 (D.C. Cir. 1988).

The parents contend in their motion that they are entitled to judgment as a matter of law because DCPS failed to conduct the evaluation and eligibility determination of the student after the parents' request. DCPS contends that it was not obligated to provide the student with FAPE because the parents unilaterally placed the student in a private school in Connecticut. DCPS, therefore, contends that the LEA in Connecticut is responsible for providing the student with FAPE.

Based on Findings of Fact above that are undisputed there is no genuine issue of a material fact regarding the student's residence and the parents' request that DCPS determine the student's eligibility. Whether DCPS had an obligation under IDEA to determine the student's eligibility and offer him FAPE, if he is determined to be child with a disability is, therefore, is a question of law and it is appropriate to make a partial summary decision in this matter based on the parties' disclosures, their motion briefs and oral arguments.

**CONCLUSIONS OF LAW:**

IDEIA  § 1412 (a)(1) (A) provides:

> "A free appropriate public education must be available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children who have been suspended or expelled from school."

Thus DCPS has a fundamental obligation to provide FAPE to a child with a disability residing in the District of Columbia.[8]

---

[8] This obligation is correspondingly provided for in local regulation: 5 DCMR 3002.1(a).

7

(In the Matter of SA  DOB: ███/91  HOD: September 14, 2006)

IDEIA §1414(a)(1) provides:

> "a State educational agency, other State agency, or local educational agency shall conduct a full and individual initial evaluation...before the initial provision of special education and related services to a child with a disability...
> (B) ...either a parent of a child or a SEA or other State agency or LEA may initiate a request for an initial evaluation to determine if the child is child with a disability. (C) ...The initial evaluation shall consist of procedures (I) to determine whether a child is a child with a disability...within 60 days of receiving parental consent for evaluation or if the State establishes a timeframe within which the evaluation must be conducted, within such timeframe...[9]

DCPS asserts that the reauthorization of IDEA 2004 changed the obligation of States and LEAs to children with disabilities enrolled by their parents in private schools such that DCPS is not obligated to evaluate the student based on the parent's requests even though the parent and the student reside in the District of Columbia. Rather, DCPS asserts the Act now requires the LEAs in which the private school the student attends is located, in this case Madison, Connecticut, rather than DCPS, conduct the eligibility determination. The Hearing Officer is unpersuaded by this argument.

DCPS cited the June 27, 2005, OSEP letter and the comments of the newly issued federal regulations to support its conclusion.[10] The letter states in pertinent part "...an LEA must conduct "child find" activities with respect to children placed in a private school when the private school is in the LEA's educational district, even though the child does not reside in the LEA's educational district. The letter clearly indicates, as the section states that an LEA "child find" obligation now extends to students who attend private schools in its LEA even if the student resides in a different LEA.

The "child find" requirement referenced above, however, is distinct from the requirement of an LEA to provide FAPE to its residents. IDEA 2004 did not eliminate the need or an LEA to offer FAPE to all children who reside in the LEA's educational district, even if the child is privately placed by the parent's in another jurisdiction.

---

[9] §1414(a)(1) states "The relevant time frame clause shall not apply to a LEA if ... the parent of the child repeatedly fails or refuses to produce the child for the evaluation."

[10] Federal Register Vol. 71 No. 156 Monday, August 14, 2006, Page 46593: The comments state in pertinent part: "Comment: Some commenters requested the regulations clarify which LEA (the LEA of residence or the LEA whether the private... schools are located) is responsible for offering FAPE to children identified through child find under 300.131, so that parents can made an informed decision regarding their children's education. Discussion: If a determination is made by the LEA where the private school is located that a child needs special and related service, the LEA where the child resides is responsible for making FAPE available to the child. If the parent makes clear his or her intention to keep the child enrolled in the private school located in another LEA, the LEA where the child resides need not make FAPE available to the child. ... 300.201 already clarifies that the district of resident is responsible for making FAPE available to the child. Accordingly, the district in which the private school is located is not responsible for making FAPE available to a child residing in another district."

7

(In the Matter of SA  DOB: ███/91  HOD: September 14, 2006)

The comments in the newly issued federal regulations suggest a conclusion contrary to what DCPS has asserted. The comment states: "the LEA where the child resides is responsible for making FAPE available to the child.... §300.201 already clarifies that the district of resident is responsible for making FAPE available to the child."[11]

DC Code § 38-2501 provides: DCPS shall assess or evaluate a student, who may have a disability and who may require special education services, within 120 days from the date that the student was referred for an evaluation or assessment.[12]

Routinely in due process hearings determining whether FAPE has been provided the issue of whether there has been a violation of the 120 day requirement under DC Code § 38-2501 is distinguished from an alleged violation of the "child find" requirement.[13]

The "child find" provisions of the Act require an LEA to identify, locate, and evaluate students who are in need of special education services. In the case of a parental request for evaluation, the student has already been identified by the parental request, thus obviating the LEA need to identify that student as a possible student with a disability. However, the LEA is then obligated to move forward with the requirement of IDEIA §1414(a)(1) and determine whether the student is in fact a child with a disability. If there was no parental request, then the obligation to identify the student would be a part of the "child find" responsibility of the LEA where the student attends school.

The LEA is still required to offer FAPE to any resident when there is a parent request for the student to be evaluated for services. The LEA must offer FAPE by evaluating the student, convening an eligibility meeting, determining eligibility, developing an IEP if the student is eligible and determining and offering an appropriate placement.

As IDEIA § 1412 (a)(1) (A) clearly states a free appropriate public education must be available to all children with disabilities residing in the State between the ages of 3 and 21 states the LEA. DCPS must offer FAPE to all children who reside in the District. There is no dispute the student and his parents reside in the District of Columbia. Therefore, the Hearing Officer concludes DCPS was obligated to determine the student's eligibility within the required time frame following the parent's request for evaluation.

---

[11] Federal Register Vol. 71 No. 156  Monday, August 14, 2006, Page 46593

[12] DC Code § 38-2501 also states: ( b) If a student is classified as having a disability, as defined in section 101(a)(1) of the Individuals with Disabilities Education Act...DCPS shall place that student in an appropriate program of special education services, and (c) Special education placements shall be made in the following order of priority provided that the placement is appropriate for the student: (1) DCPS schools or District of Columbia public charter schools; (2) Private or residential District of Columbia facilities; and (3) Facilities outside of the District of Columbia.

[13] Pursuant to 34 CFR 300.111 "child find" is defined: States must have in effect policies and procedures to ensure that (i) All children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State, and children with disabilities attending private schools, regardless of the severity of tier disability, and who are in need of special education and related services are identified, located and evaluated and (ii) A practical method is developed and implemented to determine which children are currently receiving needed special education and related services.

(In the Matter of SA  DOB: ██/91  HOD: September 14, 2006)

DCPS failed to complete the eligibility process within 120 days of the parental request and the Hearing Officer concludes that DCPS' failure to do so was a denial of FAPE.

DCPS asserts in the alternative to its argument that the DCPS is not obligated to provide the student FAPE, that DCPS was unable to proceed with the requirements of DC Code § 38-2501 because the parent's made the student unavailable for evaluation. There is nothing in the evidence presented, other than the student being in an out of state school, to indicate the parent made the student unavailable. There is no evidence DCPS requested the student be made available for evaluation. Therefore, the Hearing Officer is unpersuaded by DCPS' alternative argument.

The parent has requested the DCPS reimburse the parent the cost of attending Grove based upon a denial of FAPE. IDEIA § 1412(a)(10)(C)(i) provides:

> "the LEA is not required to pay for the cost of educating including special education and related services of a child with a disability at a private school or facility if the agency made FAPE available to the child and the parents elected to place the child in such private school or facility."

However, in this instance DCPS refused to continue with the eligibility determination once it became aware the student attended an out of state school. Thus DCPS did not ever offer a placement.

IDEIA § 1412 (a)(10)(C)(ii) provides for reimbursement for private school placement:

> "If the parents of a child with disability, who previously received special education and related services under the authority of public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court of a hearing officer may require the agency to reimburse the parents for the cost of that reenrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior that enrollment"

DCPS refused to continue with the eligibility determination once it became aware the student attended an out of state school. Thus, DCPS did not offer a placement in timely manner. Therefore, the parent's are entitled to reimbursement if the student is in fact a determined to be a "child with a disability." That determination, however, has not yet been made.

In addition to requesting summary decision on the issue of whether DCPS is obligated to determine the student's eligibility based on the parent's request the parent has requested the Hearing Officer conclude based on the record the student meets the criteria for an eligibility determination and that Grove is an appropriate placement for the student.

The Hearing Officer concludes there _is_ a genuine issue of material fact as to whether the student is in fact a child with a disability. The Hearing Officer declines to make a determination as to the student's eligibility. Although the parent has provided in the

(In the Matter of SA  DOB: ██/91  HOD: September 14, 2006)

record evaluations that indicate the student has a condition which may warrant an eligibility determination, the Hearing Officer does not find the evaluations and the data contained therein sufficiently compelling such that the Hearing Officer would supplant his decision to that of a team of qualified professionals familiar with the student.

Therefore, the Hearing Officer orders below that DCPS promptly complete the eligibility determination for the student and reimburse the parent should the student be determined eligible.

## ORDER:

1. DCPS shall, within fifteen (15) school days of the issuance of this Order, convene a student evaluation plan (SEP) meeting to determine if any additional evaluations of the student are required to determine the student eligibility for special education services.

2. DCPS shall, within forty-five calendar days of the issuance of this Order, conduct evaluations agreed upon an the SEP meeting and/or conduct reviews of the student's existing evaluations and convene a building level multi-disciplinary team (MDT) meeting to review the student's evaluations and determine the student's eligibility for special education services.

3. If the student is determined eligible DCPS shall develop an individualized educational program (IEP) and discuss and determine placement and shall reimburse the parent for the student's tuition at the Grove School from the date that an eligibility determination should have been made pursuant to DC Code Sec. 28-2501 until such time as the student is provided an appropriate placement. [14]

4. DCPS shall issue a prior notice of placement within five (5) school days of the MDT/IEP meeting if the recommended placement is public and thirty (30) calendar days if the recommended placement is private.

5. If the student is determined to be ineligible DCPS shall issue a notice of ineligibility.

6. Scheduling of the evaluations and the MDT meeting is to be arranged through parent's counsel.

7. The parent shall cooperate and make all efforts to make the student available for DCPS to complete any evaluations that are required to comply with the Order.

---

[14] The parent's request for the student to be evaluated was received by DCPS on January 4, 2006. Pursuant to DC Code 28-2501 the student should have been evaluated and an eligibility determination made by May 4, 2006.

11                                    10

(In the Matter of SA  DOB: ███/91  HOD. September 14, 2006)

8. DCPS will be given a day for a day extension of any of the prescribed time frames in this Order for any delay caused by the student, the parent and/or their representative(s).

9. Based on this Order the hearing scheduled in the matter for September 19, 2006, is unnecessary and will not go forward.

**APPEAL PROCESS:**

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

**Coles B. Ruff, Esq.**
**Hearing Officer**
**Date: September 14, 2006**

Issued: _____

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT REFERRAL DATE: _____

*Received 3/9/07 @ end of CAPL mtg.*

MDT

STUDENT: ~~_____~~    SCHOOL: Grove School    DATE: 3/9/07

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Caroline Newman | Caroline Newman | Mother |
| Larry Abramson | Jay Abrams | Father |
| Gloria L. Everett | Gloria L. Everett | LEA |
| Denise Winterjennings | Denise (Deb) | Clinical Psychologist |
| MICHAEL J. EIG | Michael (Deb) | Counsel for Student |
| HARRY BRODDENBERRY | Harry Broddenberry | Gen. Educator |
| Gloria O. Banner | Gloria O. Banner | Spec. Ed / IEP developer |
| Bill Coil | via telephone | Advisor |
| Sherry Mosher | Grove School | Case Manager |

The purpose of the meeting was stated and all members signed MDT form. Grove School participated via telephone.

Student was found eligible for special education as an Autism student, and Other Health Impairment and Emotional Disturbance, student therefore is considered multi-handicapped. The team determined that no further assessments are needed. An IEP was written.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT
MDT REFERRAL DATE: _____

STUDENT: ~~S____ A____~~     SCHOOL: _Care Center – Grove School_     DATE: 3/9/07

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Sean Kurnawe | via telephone | Spec.Ed.Teacher |
| Andy Pollak | Via telephone | Therapist |

## Other Health Impairment (OHI)
### Eligibility Determination Form
(Attach MDT Meeting Notes)

| Student's Full Name: | | Student ID: 402|977 |
|---|---|---|
| Date of Birth: 1/16/91 | | Date of MDT: 3/9/07 |
| Attending School: Grove School | | Neighborhood School: Wilson SHS |

In order to determine if a student to have the disability of Other Health Impairment and is eligible for specialized instruction and/or related services, the MDT must compare evaluation data and document that:

| | | | |
|---|---|---|---|
| ⊙Y  oN<br>o Insufficient<br>(There is NOT enough documentation available to make a determination) | 1a. | A health impairment caused by chronic or acute health problems such as heart condition, tuberculosis, sickle cell anemia, hemophilia, epilepsy, rheumatic fever, nephritis, asthma, lead poisoning, leukemia, diabetes, acquired immune deficiency syndrome, attention deficit disorder, or attention deficit hyperactive disorder.<br>The diagnosis of Other Health Impairment is (specify):  ADD | |
| oY  oN<br>o Insufficient | 1b. | The impairment effects the following (check all that apply): | |
| | | Strength, or | |
| | | Vitality, or | |
| | | ☒ Alertness (including heightened alertness to environmental stimuli that results in limited alertness with respect to the educational decision. | |
| ⊙Y  oN<br>o Insufficient | 2. | Evaluation information confirms there is an adverse effect on educational performance. very distracted in class, struggles to respond to prompts to get him on track | |
| ⊙Y  oN<br>o Insufficient | 3. | Diagnosed by a physician as having an other health impairment. Dx with ADD | |

Supporting Evidence [Type(s) of documentation used to make the determination, i.e., psycho-educational evaluation, speech language evaluation, classroom work, teacher observation, etc.]:

| | | |
|---|---|---|
| ⊙Y  oN | Evaluation information confirms that lack of instruction in reading and/or math was not a determinant factor in the eligibility decision. |
| ⊙Y  oN | Evaluation information confirms that limited English proficiency was not a determinant factor in the eligibility decision. |

The MDT used the above interpretation of the evaluation data to determine:

☒ The student has Other Health Impairment and is eligible for specially designed instruction and/or related services (Criteria 1, 2, and 3 MUST all be checked to be eligible), or

☐ The student does not have Other Health Impairment, or

☐ Evaluation data is insufficient to determine eligibility. Additional assessments and/or data will be obtained in the area(s) as indicated on the STUDENT EVALUATION PLAN (SEP). The MDT will reconvene by _____ to review and determine eligibility.

⁴ All medical documentation must be reviewed by a DCPS medical doctor.

**Specific Learning Disability**
**Eligibility Determination Form**
(Attach MDT Meeting Notes)

| Student's Full Name: | Student ID: 96 21977 |
|---|---|
| Date of Birth: 1/16/91 | Date of MDT: 2/19/07 |
| Attending School: prime School | Neighborhood School: Wilson SHS. |

In order to determine if a student to have a disability of Specific Learning Disability and is eligible for specialized instruction and/or related services, the MDT must compare evaluation data and document that:

| | | |
|---|---|---|
| o Y  ● N<br>o Insufficient<br>(There is NOT enough documentation available to make a determination) | 1a. | The student has a severe aptitude/achievement discrepancy as identified by a validated regression method and does not achieve commensurate with his or her age and ability levels in one or more of the following areas:<br>o  Oral Expression<br>o  Listening Comprehension<br>o  Written Expression<br>o  Basic Reading Skills<br>o  Reading Comprehension<br>o  Mathematics Calculation<br>o  Mathematics Reasoning<br>o  Developmental Skills (e.g., motor skills, language development, memory skills), and |
| o Y  ● N<br>o Insufficient | 1b. | The severe discrepancy between ability and achievement is not primarily the result of a visual, hearing, or motor impairment; mental retardation; emotional disturbance; or environmental, cultural, or economic disadvantage. |
| o Y  ● N<br>o Insufficient | 2. | Evaluation information confirms there is an adverse effect on educational performance. |
| o Y  o N<br>o Insufficient | 3a. | The following relevant behavior was noted during the observation of the child: |
| o Y  ● N<br>o Insufficient | 3b. | Relationship between the observed behavior in 3a. to the child's academic functioning is: |
| Supporting evidence [Type(s) of documentation used to make the determination, i.e., psycho-educational evaluation, speech language evaluation, classroom work, teacher observation, etc.]: | | |
| ● Y  o N | | Evaluation information confirms that lack of instruction in reading and/or math was not a determinant factor in the eligibility decision. |
| ● Y  o N | | Evaluation information confirms that limited English proficiency was not a determinant factor in the eligibility decision. |

The MDT used the above interpretation o d the evaluation data to determine:

☐   The student has Specific Learning Disability and is eligible for specially designed instruction and/or related services (Criteria 1, 2, and 3 must be checked to be eligible), or

☒   The student does not have Specific Learning Disability, or

☐   Evaluation data is insufficient to determine eligibility. Additional assessments and/or data will be obtained in the area(s) as indicated on the STUDENT EVALUATION PLAN (SEP). The MDT will reconvene  by  _____  _____  to review and determine eligibility.

All medical documentation must be reviewed by a DCPS medical doctor.

September 20, 2002

Specific Learning Disabilities Written Report – Continued

Student's Full Name: ~~███~~ ~~█████~~

Date of Birth: 1/16/91

Attending School: Prime Island

Student ID: 9 0 2 1 9 7 7

Date of MDT: 3/9/07

Neighborhood School: Malcolm X APH

Multidisciplinary Team Members: The MDT has reviewed evaluations/reports and determined that the student is  (is not)  eligible for services as a student with a disability classification of Learning Disability (LD)

| Titles | Signatures | Agree | Disagree |
|---|---|---|---|
| LEA Representative | George T. Everett | ✓ | |
| Parent/Guardian | Charlisa Newman | | |
| Regular Education Teacher | Harry Brockenberry | ✓ | |
| Special Education Teacher | Vecia O. Banner | ✓ | |
| Psychologist/Evaluator | Denise Waterford | ✓ | |
| Speech/Language Therapist | | | |
| Social Worker or Counselor | | | |
| Student | | | |
| Other | Tony Albrowning Father | ✓ | |
| Other | | | |
| Other | | | |

Each MDT member shall certify in writing whether the report reflects his/her conclusion. If it does not reflect his/her conclusion, the team member must submit a separate statement presenting his or her conclusion. By completing the appropriate boxes the MDT will document decisions.

## Autism
### Eligibility Determination Form
(Attach MDT Meeting Notes)

| | |
|---|---|
| Student's Full Name: ~~_____~~ | Student ID: 9 0 2 1 9 7 7 |
| Date of Birth: 1/16/91 | Date of MDT: 2/19/07 |
| Attending School: _Prme School_ | Neighborhood School: _Wilson S HS_ |

In order to determine if a student to have the disability of Autism and is eligible for specialized instruction and/or related services the MDT must compare evaluation data and document that:

| | | |
|---|---|---|
| ⊙ Y   ○ N <br><br> ○ Insufficient <br> (There is NOT enough documentation available to make a determination) | 1a. | The student has a developmental disability, generally evident prior to age 3, significantly effecting verbal and nonverbal communication (must be present for eligibility), <br> ☐ delay in, or lack of spoken language development (with no compensation through alternative modes of communication) <br> ☒ in verbal persons, marked impairment in conversational skills <br> ☐ stereotyped and repetitive use of language <br> ☐ lack of spontaneous age-appropriate make-believe or social imitative play, and |
| ⊙ Y   ○ N <br> ○ Insufficient | 1b. | The student has a developmental disability effecting social interaction (must be present for eligibility), <br> ☐ marked impairment in the use of multiple nonverbal behaviors <br> ☒ failure to develop age appropriate peer relationships <br> ☐ lack of spontaneous seeking to share interests and achievement with others <br> ☒ lack of social or emotional reciprocity, and |
| ⊙ Y   ○ N <br> ○ Insufficient | 1c. | The student has a developmental disability effecting behavior (must be present for eligibility), <br> ☒ preoccupation with at least one stereotyped and restricted pattern of interest to an abnormal degree <br> ☒ inflexible adherence to nonfunctional routines or rituals <br> ☐ stereotyped and repetitive motor mannerisms <br> ☐ preoccupation with parts of objects. |
| ⊙ Y   ○ N <br> ○ Insufficient | | 2. Evaluation information confirms there is an adverse effect on educational performance (must be present for eligibility). _Inflexibility — refuses to do work almost impossible to relevant. Fixates on non-functional relationships to the detriment of his school work._ |

Supporting Evidence (Type(s) of documentation used to make the determination, i.e., psycho-educational evaluation, speech language evaluation, classroom work, teacher observation, etc.):

| | |
|---|---|
| ⊙ Y   ○ N | Evaluation information confirms that lack of instruction in reading and/or math was not a determinant factor in the eligibility decision. |
| ⊙ Y   ○ N | Evaluation confirms that limited English proficiency was not a determinant factor in the eligibility decision. |
| ⊙ Y   ○ N | The student's deficits are not primarily the result of an emotional disturbance, speech or language impairment or mental retardation. |

The MDT used the above interpretation of the evaluation data to determine:

☒ The student has Autism and is eligible for specially designed instruction and/or related services (Criteria 1 and 2 MUST all be checked to be eligible), or _Asperger's Disorder_

☐ The student does not have Autism, or

☐ Evaluation data is insufficient to determine eligibility. Additional assessments and/or data will be obtained in the area(s) as indicated on the **STUDENT EVALUATION PLAN (SEP)**. The MDT will reconvene by _____ to review and determine eligibility.

*All medical documentation must be reviewed by the DCPS medical doctor.

September 20, 2002

## DOCUMENTED LEVEL OF SERVICE (PERM)
### Complete and attach to MDT/IEP meeting notes

| | | | | | |
|---|---|---|---|---|---|
| School | Grove School | Principal | Robert Houston | Special Education Coordinator | |
| Date | 2/1/07 | Case Manager | Gloria Everett | Technical Support Supervisor | |
| Student | S____ A____ | DOB 1/16/91 Age 16 Grade 10 | ID# 9021977 | SSN# | |
| Parent | Mr. & Mrs. Abramson | Telephone (H) 2/686-9212 | (W) | |
| Address: | 6419 Barnaby St., NW | | Washington DC 20015 | |
| | Street # Street | Quad Apt. No. | City | State Zip Code |

REFERRAL SOURCE: (Check)  [X] 120 Day  [ ] Reeval.  [ ] HOD  [ ] SA  [ ] MA

[X] Nonpublic  [ ] Residential  [ ] Citywide  [ ] Courts  [ ] Local School  [ ] Other:

Previous least restrictive environment (LRE Setting): Out of General Education

## JUSTIFICATION FOR SETTING CONSIDERATION
### (Submit TAT/MDT Documentation)
### SUPPORTIVE DATA/DOCUMENTATION

| 2. ACCOMMODATIONS/ MODIFICATIONS | 3. DATA REQUIREMENTS | | |
|---|---|---|---|
| Notes before assignments<br>Chunking of task small amounts<br>Laptop - technology need because of slow processing<br>Small class size<br>Role playing<br>Verbal cueing/or prompting<br>Buddy system | Current IEP | Yes [X] | No [ ] |
| | Signatures of required participants (MDT notes) | Yes [X] | |
| | Intervention Behavior Plan | Yes [X] | |
| | Copies of current class work and homework assignments: | Yes [ ] | |
| | Medical Reports: | Yes [X] | No [ ] |
| | Clinical Reports: | Yes [X] | No [ ] |
| | Psychiatric Reports | Yes [ ] | No [ ] |
| | Medications: | Yes [ ] | No [ ] |
| | Attendance Record  discussed | Yes [X] | |
| | Copies of most recent evaluation(s) | Yes [X] | |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| MDT determined eligibility - 3/8/07 | IEP implemented |

## 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school<br>(Determined through the IEP team) | SERVICE PROVIDER<br>(Based on documented need) | LEVEL OF SERVICE<br>(Based on documented need) |
|---|---|---|---|
| 1 | [ ] in general education classroom setting | [ ] general educators with consultation from special education staff | [ ] between 0% and 20% of service time |
| 2 | [ ] combination general education and resource classroom | [ ] combination of general educators, special educators and related service providers | [ ] between 21 % and 60% of service time |
| 3 | [X] *out of general education classroom | [X] special educators and related service providers | [X] between 61 % and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings)

Check the level of need as indicated:
DIRECTIONS:

| | |
|---|---|
| If two or three boxes are checked in the Row 1, check LOW.<br>If two or three boxes are checked in the Row 2, check MODERATE.<br>If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row,<br>check either MODERATE or HIGH,<br>depending on the need of the student. |

## 7. LEVEL OF NEED

| [ ] LOW | [ ] MODERATE | [X] HIGH |
|---|---|---|

Attention: Technical Support Supervisor / PERM Compliance Team

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

PRIOR NOTICE

Check Purpose:
- [X] Initial Evaluation
- [ ] Initial Placement
- [ ] Reevaluation
  - [ ] Change in Category Exit
  - [ ] Related Service Add
  - [ ] Related Service
  - [ ] Change in Placement
  - [ ] Other _____

Date **3/9/07**

Student ~~Scott A. _____~~                    DOB 1/16/91

School _____

Current Disability Category **MD (ED, Autism, OHI)**

Setting **Out of General Education**

Dear **Parents,**

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
- [X] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Other _____

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)

- [ ] Your child is not eligible for special education service(s).
- [X] Your child is eligible or continues to be eligible to receive special education services as a student with **MD (ED, Autism, OHI)**
- [ ] Your child will begin receiving _____ as a related service(s).
- [ ] Your child will no longer receive _____ as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed.
      from _____ to _____
- [ ] Your child is no longer eligible and will be exited from the special education program.
- [ ] Other: _____

**Description and Explanation of agency action proposed or refused.**

The MDT has evaluated and reviewed students reports/record and determined that the student is eligible for special education services as a student with an **MD (ED, Autism, OHI)**, the appropriate setting to ameliorated the student's area of less proficiency can be addressed in an **Out of General Education**

**Description of Other Options Considered and reasons for rejection of each option**

The MDT has determined that **General Ed** and **Combination Gen Ed/Spec. Ed** are/not appropriate settings to address the student's objectives/goals as dictated by the IEP and IDEA criteria.

Other relevant factors to the decision- _____

MDT Members:
- [X] Principal or Designee
- [X] Parent
- [ ] Student
- [ ] Social Worker
- [X] General Education Teacher
- [X] Special Education Teacher
- [ ] Speech and Language
- [X] *LEA & Interpreter (*may be one)
- [X] Psychologist
- [ ] Other: _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact Gloria T. Everett _____ at 2/671-0882 _____ (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

MDT Prior Written Notice to the Parent
07-02-2001                                                                                    1

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MDT)

Student S_____ DOB 1/16/91 Age 16 Grade 10 ID 9021977

You have the right to challenge the recommendations by requesting Mediation or a Due Process Hearing before an impartial hearing officer. To initiate a mediation or hearing, you will need to complete a REQUEST FOR MEDIATION or DUE PROCESS HEARING form and mail it to the address listed below:

Student Hearing Office
D.C. Public Schools 825 North
Capitol Street, N.E. 8ᵗʰ floor.
202-442-5432

You have the right to be represented at the hearing by legal counsel.
A copy of Parents Procedural Safeguards handbook is provided.
A list of free or low cost legal service, for which you may qualify depending on your income, is included.
If you would like an additional copy, please contact the principal.

EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

[X] Wechsler Intelligence Scale for Children-III (WISC III) - commonly employed individually administered test designed to measure the intelligence of individuals aged 6 1/2 to 16 1/2 years. Date of Report 1/26/06

[ ] Wechsler Preschool and Primary Scale of Intelligence-Revised (WPPSI-R) - measures specific mental abilities and processes in ages 4 1/2 to 6 1/2 years. Date of Report _____

[ ] Wechsler Adult Intelligence Scale-III (WIAS III) an individually administered test designed to measure the intelligence of individuals ages 16 and over. Date of Report _____

[ ] Bayley Scales of Infant Development-II - an individually administered instrument that measures motor, mental and social development in infants and children from 1 month to 42 months of age. Date of Report _____

[ ] Wechsler Individual Achievement Test (WIAT) - a commonly used individually administered instrument designed to assess the educational achievement of children and adolescents in areas of basic reading, mathematics reasoning, spelling, reading comprehension, numerical operations, listening comprehension, oral expression, and written expression. Date of Report _____

[ ] Peabody Individual Achievement Test-Revised (PIAT-R) - an individually administered test measuring achievement in areas of general information, reading recognition, reading comprehension, spelling, written expression, and mathematics. Date of Report _____

[ ] Kaufman Test of Educational Achievement (KTEA) -an individually administered instrument measuring achievement skills in reading decoding, mathematics applications, spelling, reading comprehension, and mathematics computation. Date of Report _____

[ ] Woodcock-Johnson Psycho-Educational Battery - a diagnostic and evaluation instrument composed of twenty-seven tests divided into three major parts: tests of cognitive ability, tests of achievement, and tests of interests. Date of Report _____

[ ] Bender Visual Motor Gestalt Test - measures perceptual motor skills to determine visual-motor gestalt functioning and neurological soft-signs in ages 4 to 12 years using the Koppitz Scoring System. Date of Report _____

[ ] Developmental Test of Visual Motor Integration (VMI) -assesses visual perception and motor coordination in ages 3 years and up using a more structured booklet format. Date of Report _____

[ ] Children's Apperception Test - a projective story-telling technique for personality evaluation in ages 5 to 10 years. Date of Report _____

[ ] Thematic Apperception Test - a projective story-telling technique for personality evaluation in older children and adolescents. Date of Report _____

[ ] House-Tree-Person - a projective drawing technique providing insight into personality structure, physical concerns, and social-emotional adjustment in children and adolescents. Date of Report _____

[X] Boston Naming Test; Automatic Verbal Sequencing; and Selective Reminding Test 1/26/06
[X] Klove Grooved Pegboard 1/26/06
[X] Rey-Osterrieth Complex Figure 1/31/06
[X] IVA - Integrated Visual and Auditory Continuos Performance 1/31/06
Wide Range Assessment of Memory and Learning - 2nd Edition 1/31/06
(WRAML 2) Test of Every Attention in Children (TEA-Ch) 1/31/06
Oral and Written language Scales (OWLS)

MDT Prior Written Notice to the Parent
07-02-2001

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MDT)

Student ▮▮▮▮▮ ▮▮▮▮▮ DOB 1/16/9f Age 16 Grade 10 ID 9021977

☐ Kinetic Family Drawing - a projective drawing technique measuring one's perception of her family and her role within the family.
  Date of Report _____

☐ Rorschach Psychodiagnostic Test - a projective measure y which one's responses to inkblots reveal personality structure, ego strengths and reality
  testing in ages 3 and older. Date of Report _____

☐ Goodenough-Harris Drawing Test - a projective drawing procedure measuring intellectual perceptual-motor maturity and personality through the
  use of drawings of self and a member of the opposite sex in ages 3 to 15.11 years. Date of Report _____

☐ Conner's Parent and Teacher Rating Scales - a paper-and-pencil instrument measuring problem behaviors of children and adolescents as reported
  by the child's teacher, parents, or alternate care-giver. Date of Report _____

☐ The Vineland Adaptive Behavior Scales - assesses adaptive and social competency skills. Date of Report _____

☐ Test of Language Development Primary - Revised (TOLD-P) - measures primary language proficiency and specific strengths and weaknesses in
  language skills. Date of Report _____

☐ Kaufman Assessment Battery for Children - assesses the ability to solve problems using simultaneous and sequential metal processes in four global
  areas: Sequential Processing, Simultaneous Processing, Mental Processing, and Achievement. Date of Report _____

☐ Preschool Language Scale - measures auditory comprehension and verbal ability skills. Date of Report _____

☐ Oral Peripheral Speech Examination - a procedure to determine whether the examinee can appropriately use the lips, tongue, mouth, etc.
  Date of Report _____

☐ Clinical Evaluation of Language Fundamentals - III - assesses the child's language functioning including processing and production.
  Date of Report _____

☐ Expressive One Word Picture Vocabulary Test - assesses the child's single word expressive vocabulary. Date of Report _____

☐ Receptive One Word Picture Vocabulary Test assesses the child's single word receptive vocabulary. Date of Report _____

☐ Goldman-Fristoe Test of Articulation - assesses the production of consonants in simple and complex contexts. Date of Report _____

☐ Peabody Picture Vocabulary Test-Revised - individually administered, multiple choice test measuring nonverbal, receptive vocabulary.
  Date of Report _____

☐ Fisher-Logemann Test of Articulation Competence - assesses articulation proficiency with single sounds, consonant blends, and vowel production.
  Date of Report _____

☐ Classroom Observation - assesses present functioning of the student within the classroom environment.

Free or Low Cost Legal Services

Neighborhood Legal Services
701 4" Street, N.E.
Washington, D.C. 20001
202-682-2700 (NW)
202-682-2732 (NE)
Fax 202-682-0583

Neighborhood Legal
Services 1213 Good Hope
Road, S.E. Washington, D.C.
20020 202-678-2000
Fax 202-889-3574

University Legal Services
300 I Street, N.E.
Washington, D.C. 20002
202-547-0198
Fax 202-547-2662

The Children's Law Center Inc. 1050
Connecticut Avenue, N.W. Suite 1200
Washington Square
Washington, D.C. 20036-5517
202-467-4900
Fax 202-467-4949

National Coalition for Students
with Disabilities
10950 Main Street, Suite 417
Fairfax, VA 22030
703-267-6588       (fax) 703-267-6692

1/31/06 Administered
☒ Children's Depression Inventory (CDI)
☒ Revised Children's Manifest Anxiety Scale RCMAS
☒ child Or Behavior Check list;
☒ Clinical Interview

MDT Prior Written Notice to the Parent
07-02-2001

☒ WJ III-Test of Cognitive Ability
☒ Nelson-Denny Reading Test;

☒ Selected subtests from the
Wechsler Individual Achievement
Test 1/26/06
☒ Second Edition (WIAT-II) 1/26/06
☒ Woodcock-Johnson Test of Achievement-
WJ-III 1/26/06
☒ Test of Language Competence 1/26/06
☒ Expanded Edition (TLC-E) 1/26/06


DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT: Seth Abramson                SCHOOL: Care Center-Grove School        DATE: 3/9/07

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Caroline Newman | Caroline Newman | Mother |
| Lavrey Abramson | Lay Abram | Father |
| Gloria T. Everett | Gloria T. Everett | LEA |
| Michael J. Eig | Eig | Counsel for Student |
| Harry Brockenberry | Harry Brockenberry | General Ed. teacher |
| Denise White Jennings | Denise White Jennings (4) | Clinical Psychologist |
| Vecia O. Banner | Vecia O. Banner | Spec Ed / IEP developer |

After reviewing all of the documents, the MDT determined that the student is eligible for special education as a student with MD (ED, Autism, OHI)

Specialized instruction is required in the following academic areas: Social Emotional/Academic
Social Emotional Impacts all academics

The total number of hours for specialized instruction is:
25.5

Related services are required in the following areas:
Psychol-social 2 hour hours per week

(1) Notes before assignments
(2) Supportive services for emotional needs to complete classroom assignments
(3) Chunking of task
(4) Small class size
(5) Role playing
(6) Verbal cueing or prompting
(1) Buddy system

The parent & advocate are requesting that student remains at the Kirm school because it meets his academic/social needs. D.C.P.S. is proposing a full time placement in a Therapeutic Day treatment program. Discussion of placement options postponed.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP  Page 1 of 4
Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last ~~████~~                First ~~██~~          MI

Student ID 9021977    Soc. Sec. No.                Age: 16    Grade 10

Gender ☒ M ☐ F    Date of Birth 1/16/91    Ethnic Group    Caucasian

Address    6419 Barnaby St., St., NW
House No.    Street Name                      Quadrant    Apartment #
Washington DC
City                                State    Zip Code

☒ Non-attending

Attending School  Grove School     Home School  Wilson SHS

☐ Elem. ☐ Mid/JHS ☒ SHS ☐ CWS /

Parent    Mr. and Mrs Abramson

Address of (if different from student):    ☒ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name          Quad    Apt. No.    City              State    Zip Code
Telephone: Home 2/686-9212          Work

## II. CURRENT INFORMATION

Date of IEP Meeting: 3 9 07

Date of Last IEP Meeting: 2 1 05 07

Date of Most Recent Eligibility Decision: 3 9 07

Purpose of IEP Conference:
☒ Initial IEP          ☐ Review of IEP
☐ Requested Eval.      ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: II

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | |
| Parent | English | English | English | |
| Home | English | English | English | |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment

Oral
Rdg./ Written
Instrument:
Date:

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |
|---|---|---|---|---|---|---|---|---|
| Social Emotional / Academic | | 25.5 | 25.5 | | W | Psycho/Social Educator | 2 12 07 | 10 mos |
| Psyl Social Services | | 2.0 | 2.0 | | W | Psycho/social Worker | 2 12 07 | 10 mos |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | | 27.5 | 24.5 | Hours Per Week | | | | |

## V. Disability(ies)

MD(ED, Autism, OHI)

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%    ☐ 21-60%    ☒ 61-100%
Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

*Vera O. Bannor / Spec Ed / IEP developer*

*Harry Brockenberry / Renewal Dir.*

*Denise White-Jennings PhD-Clinical Psychologist*

*Diana T. Bowett, LISA*

I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
_____          _____
Parent/Guardian Signature                      Date

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 1 of 4

| Student Name | | Managing School | Care Center | DCPS - IEP |
| Student ID Number 9021977 | DOB 1/16/91 | Attending School | Grove School | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability        Additional Comments: ☐

**Academic Areas: (Evaluator)** _Ellen K. Goldman PhD._

**Math Strengths:** Calculation skills

**Impact of disability on educational performance in general education curriculum:**
Math fluency is below expectation based on intellectual potential - impacted by emotional issues

**Reading Strengths:**

**Impact of disability on educational performance in general education curriculum:**

*omit [handwritten margin note]*

**Score(s) When Available**
Math Cal. SS / 128
Math Rea. SS / 124
Math Fluency SS / 89
See goal page:
Date: 1/16/06
Rdg. Com ___
Rdg. Basic ___
Written Ex. ___
See goal page: ___
Date: ___

**Communication (Speech & Language) (Evaluator)** ___
**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**
Exp.Lang. ___
Rec- Lang. ___
Artic ___
Voice ___
Fluency ___
Exp. Voc. ___
Rec. Voc. ___
See goal page: ___
Date: ___

**Motor/Health (Evaluator)** ___
**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Score(s) /Results When Available**
___
___
See goal page: ___
Date: ___

**Social Emotional Behavioral Areas: (Evaluator)** _Dr. Richard Rubin_
**Strengths:** Intelligent, verbal

**Impact of disability on educational performance in general education curriculum:**
Dr. Asperger's Disorder, Attention Deficit Disorder, Depression impacts on school functioning

**Score(s) When Available**
_N/A_
See goal page: ___
Date: 3/07

**Cognitive/Adaptive Behavior: (Evaluator)** ___
**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**
___
___
See goal page: ___
Date: ___

**Prevocational Skills: (Evaluator)** ___
**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**
___
___
See goal page: ___
Date: ___

District of Columbia Public Schools        07-02-2001        Division of Special Education        Appendix - A        IEP Page 2 of 4

## District of Columbia Public Schools
### Washington, D.C.

I.E.P. Attachment A
Intervention Behavior Plan

INTERVENTION BEHAVIOR PLAN     Date Developed: 3/9/07

Student Name ████████████     ID# _____     DOB: 1/16/91  Grade 10

Address _____
Street #        Street Name                    Quadrant    Apartment #       City              State       Zip Code

Telephone ( H) ___(W)_____     Counselor _____

Attending School Grove School     Teacher _____ Room _____ Section _____

TARGETED BEHAVIOR(S):                                    Additional Comments: ☐

Fails to accept responsibility for behaviors, verbal and/or physical aggression, poor self concept, poor peer social skills, attention, organization skills, depressed and/or irritable affect, low motivation, limited insight, low frustration tolerance, wants immediate gratification, projection of blame, oppositional, argumentative, flaunts rules, refuses to complete assignments, refuses to write assignments such as note taking, term papers etc.

POSITITVE INTERVENTION STRATEGIES: Student Objective –

Student will (1) appropriately verbalize needs, feelings, thoughts (2) follow school rules/routines with minimal prompting; (3) appropriately ask for and/or accept assistance from teacher when needed; (4) complete schoolwork with minimal prompting; (5) appropriately participate in class activities (6) appropriately interact with peers and adults.

Implementation description –

Participation in behavior modification plan targeting specific behaviors and specified goals, rewards, and/or consequences. Development of behavioral contract with student identifying consequences and rewards for expected behavior

POSITIVE INTERVENTION STRATEGIES: Teacher Strategies

Proximity; verbal prompting/cueing; redirection; immediate recognition when desired behavior is demonstrated; immediate redirection for inappropriate behavior; praise, rewards, and incentives; modeling; special privileges, responsibilities, calm demeanor, non confrontational,

MONITORING SYSTEM: Responsible Teacher – ~~General and/or~~ Special Education Teacher / Social Worker / Psychologist
Describe System –

Charting of behavior, observation, treatment notes, anecdotal notes;

Data Collection timeline –

Daily

FOLLOW-UP MEETING: Date – _____

| Student Name ~~████████~~ | | Managing School    C.A.R.E. Center | DCPS – IEP |
|---|---|---|---|
| Student ID Number _____    DOB   1/16/91 | | Attending School    Grove School | Page 3 of 4 |

| **VII. SPECIALIZED SERVICES** | Additional Comments: | Goal Number: ☐ |
|---|---|---|

Area addressed by goal: ____ Social - Emotional / *Academic*

**ANNUAL GOAL:** (including mastery criteria.)

The student will demonstrate growth in social-emotional functioning in the area of coping skills, as evidenced by mastery of the following short-term objectives by 80%.

**Provider(s):** ____ Special Education Teacher/Psychologist/ Social Worker ____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will identify and demonstrate appropriate behavioral responses to a variety of situations, both positive and negative, with minimal assistance or prompting from teacher/adult in 8 out of 10 situations over a consistent period of time | | Weekly |
| The student will identify various adaptive coping strategies (i.e., self time-out, counting, participating in calming activity, deep breathing, etc...) to effectively manage negative emotions (i.e., anger, frustration, anxiety, etc...) with minimal assistance from teacher/adult in 8 out of 10 situations over a consistent period of time. | | Weekly |
| Given a variety of problem situations, the student will identify the problems, select adaptive coping strategies by which to solve it, and implements the appropriate strategy for resolution, 8 out of 10 situations over a consistent period of time. | | Weekly |
| The student will accept redirection and/or consequences for inappropriate behavior with decreasing need for emotional and/or behavioral support from teacher/adult in 8 out of 10 events over a consistent period of time. | | Weekly |
| The student will accept responsibility for his behavior. | | Weekly |
| The student will accept adult constructive criticism and/or discipline without and emotional outburst | | Weekly |
| The student will eliminate verbal and/or physical aggression towards peers | | Weekly |
| The student will control physical responses when angered | | Weekly |

| **EVALUATION PROCEDURE(S)** |
|---|
| ☐ Portfolio   X Log   X Chart   ☐ Test   X Documented Observation   ☐ Report   ☒ Other   *Progress Notes* |

District of Columbia Public Schools    07-02-2001    Division of Special Education  Appendix – A    IEP Page 3 of 4

| Student Name _____ | | | DCPS – IEP |
|---|---|---|---|
| Student ID Number _____ DOB __1/16/91__ | Managing School ___C.A.R.E. Center___ | | Page 3 of 4 |
| | Attending School ___Grove School___ | | |

| VII. SPECIALIZED SERVICES | Additional Comments: | | Goal Number: [  ] |
|---|---|---|---|

Area addressed by goal: ___Social-Emotional / Academic___

**ANNUAL GOAL:** (Including mastery criteria.)

The student will demonstrate increased self-regulation, impulse-control, and frustration tolererance as evidenced by mastery of the following short-term objectives by 80%.

**Provider(s):** ___Special Education Teacher/Psychologist/ Social Worker___

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (Include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will begin classroom activities/assignments with no more than two prompts from teacher/adult during the activity/assignment in 8 out of 10 events. | | Weekly |
| The student will utilize organizational skills necessary for successfully completing work assignments within specified period of time with minimal reminders and/or prompting from teacher/adult during the activity/assignment in 8 out of 10 events. | | Weekly |
| Given a novel or challenging task that the student perceives as challenging, the student will approach the task with a positive attitude and persist through the task with minimal behavioral support (i.e., redirection, cueing, prompting) from teacher/adult in 8 out of 10 events over a consistent period of time. | | Weekly |
| The student will self-initiate the completion of assignments and homework with no more than two prompts by therapist/teacher/adult in 8 out of 10 situations over a consistent period of time. | | Weekly |
| The student will demonstrate appropriate behaviors to enhance listening skills (eye contact, posture) in 8 of 10 events. | | Weekly |
| The student will come to class prepared by bringing necessary materials (pencil, notebook, planner, book, etc.) in 8 of 10 events. | | Weekly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   X Log   ☐ Chart   ☐ Test   X Documented Observation   ☐ Report   ☒ Other _Progress Notes_

District of Columbia Public Schools     07-02-2001     Division of Special Education   Appendix – A     IEP Page 3 of 4

| Student Name | | Managing School | C.A. Center | | DCPS – IEP |
|---|---|---|---|---|---|
| Student ID Number | DOB 1/16/91 | Attending School | Grove School | | Page 3 of 4 |

| VII. SPECIALIZED SERVICES | Additional Comments: | | Goal Number: ☐ |
|---|---|---|---|

Area addressed by goal:     Social – Emotional / *Academic*

**ANNUAL GOAL:** (including mastery criteria.)

The student will demonstrate increased self-regulation, impulse-control, and frustration tolerance, as evidenced by mastery of the following short-term objectives by 80%.

Provider(s):     Special Education Teacher/Psychologist/ Social Worker

Consider audience, behavior, condition, degree and evaluation.

| SHORT–TERM OBJECTIVES (include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will ignore classroom disruptions in 8 of 10 incidents. | | Weekly |
| The student will breakdown assignments (short and long term) into manageable parts with a decreasing need for teacher assistance in 80% of assignments. | | Weekly |
| The student will write down assignments with decreasing need for adults prompts in 8 of 10 assignments. | | Weekly |
| The student will utilize a variety of study skills and techniques to understand subject matter (i.e. memory strategies, problem solving techniques) 80% of the time. | | Weekly |
| The student will utilize test taking strategies such as systematic preview of test to allot time for completion and identification of/use of clue words in test questions 80% of the time. | | Monthly |
| The student will work cooperatively on class assignments with peers in 8 of 10 assignments. | | Monthly |
| The student will develop realistic goals beyond high school with help of advisors, school staff, psychological service providers | | Monthly |
| The student will gain understanding of and be able to describe his learning style(s) and the accommodations or strategies the help him learn and perform most effectively in 8 of 10 discussions. | | Monthly |
| The student will participate in extra curricular activities, outdoor activities etc. as appropriate to facilitate socialization in 8 of 10 opportunities. | | Weekly |
| The student will complete written tasks (note taking, papers, etc) with decreasing need for teacher intervention, supports, accommodations in 7 of 10 assignments. | | Weekly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   X Log   X Chart   ☐ Test   X Documented Observation   ☐ Report   ☒ Other   *Progress Notes*

| Student Name ~~Colin Hayw~~ | | Managing School    C.A.R.E. Center | DCPS – IEP |
|---|---|---|---|
| Student ID Number _____ DOB ___ 1/16/91 | | Attending School    Grove School | Page 3 of 4 |

| VII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: [    ] |
|---|---|---|

Area addressed by goal: _____ Social-Emotional / *Academic*

**ANNUAL GOAL:** (Including mastery criteria.)

> The student will demonstrate improved self-esteem as/evidenced by mastery of the following short-term objectives by 80%.

Provider(s): _____ Special Education Teacher/Psychologist/ Social Worker _____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will identify his own strengths and weaknesses spontaneously and/or in 8 of 10 discussions. | | Weekly |
| The student will verbalize how self-concept affects aspects of his daily life in 8 of 10 discussions. | | Weekly |
| The student will identify problematic behaviors based on perception of self and identify acceptable substitute behaviors in 8 of 10 discussions | | Weekly |
| The student will express appreciation for individual differences, rights, opinions, and/or feelings of others. | | Weekly |
| The student will reduce irrational thinking and cognitive distortions of events in 8 of 10 events. | | Weekly |
| The student will refrain from making inappropriate comments to peers 80% of the time. | | Weekly |
| The student will initiate and respond appropriately to conversations with peers 80% of the time. | | Weekly |
| The student will refrain from getting involved in peer issues/conflicts that do not concern him 80% of the time. | | Weekly |

**EVALUATION PROCEDURE(S)**

[ ] Portfolio   X Log   [ ] Chart   [ ] Test   X Documented Observation   [ ] Report   ☒ Other _Progress Notes_

District of Columbia Public Schools       07-02-2001       Division of Special Education   Appendix – A       IEP Page 3 of 4

| Student Name ~~_____~~ | | Managing School __C.A.R.E. Center__ | DCPS – IEP |
|---|---|---|---|
| Student ID Number ~~_____~~  DOB __1/16/91__ | | Attending School __Grove School__ | Page 3 of 4 |

| VII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: [    ] |
|---|---|---|

Area addressed by goal: ___Social-Emotional / *Academic*___

**ANNUAL GOAL: (including mastery criteria.)**

The student will demonstrate increased self awareness and mood regulation as evidenced by mastery of the following short-term objectives by 80%.

Provider(s): ___Special Education Teacher/Psychologist/ Social Worker___

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will develop trusting therapeutic relationship with service provider as evidenced by willing attendance, participation and self disclosure 80% of the time. | | Weekly |
| The student will discuss his relationship with his family with therapist and advisor. | | Weekly |
| The student will participate in phone conferences and in person family meetings as deemed appropriate. | | Weekly |
| The student will discuss both positive and difficult situations with his family and identify what worked well and what he could do differently. | | Weekly |
| The student will work with therapist and advisor to identify and understand his role in family and family dynamics. | | Weekly |
| The student will identify and utilize the skills needed to improve his ability to communicate his thoughts and feelings in his family | | Weekly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  X Log  ☐ Chart  ☐ Test  X Documented Observation  ☐ Report  ☒ Other *Progress Notes*

District of Columbia Public Schools     07-02-2001     Division of Special Education  Appendix – A     IEP Page 3 of 4

Student Name _____
Student ID Number _____ DOB _1/16/91_

Managing School ___C.A.R.E. Center___
Attending School _Grove School_

| VII. SPECIALIZED SERVICES | Additional Comments: |
|---|---|

Area addressed by goal: _____Social-Emotional_ / _Academic_

Goal Number: [  ]

**ANNUAL GOAL: (Including mastery criteria.)**

The student will demonstrate increased self awareness and mood regulation as evidenced by mastery of the following short-term objectives by 80%.

Provider(s): ___Special Education Teacher/Psychologist/ Social Worker___

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria and benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will identify and discuss his feelings spontaneously or upon request in therapy session 80% of the time. | | Weekly |
| The student will gain insight and understanding into his feelings (depression, anger, frustration, anxiety) as they relate to self, family, events, circumstances etc. | | Weekly |
| The student will understand, accept, and begin to cope with his depressive illness. | | Weekly |
| The student will understand impact of depression (low energy, low interest, lack of motivation, helplessness, despair) on his daily functioning. | | Weekly |
| The student will learn methods to cope with the intensity of his affect, impulsivity and delay of gratification. | | Weekly |
| The student will gain insight into the dynamics of his defenses (projection of blame, denial, acting out) and develop alternative coping mechanisms | | Weekly |

**EVALUATION PROCEDURE(S)**

☐Portfolio  X Log  ☐Chart  ☐Test  X Documented Observation  ☐Report  ☒Other _Progress Notes_

District of Columbia Public Schools    07-02-2001    Division of Special Education  Appendix – A    IEP Page 3 of 4

| Student Name | ~~[redacted]~~ | | | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9021977 | DOB 1/16/91 | Managing School Care Center | Page 4 of 4 |
| | | | Attending School Grove School | |

Additional Comments: ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?  ☐ Yes  ☑ No

Explanation for removal out of regular education classroom.

The student requires a full time setting to address his emotional and academic concerns.

## X. Supplementary Aids and Services
Classroom Needs
(Do not name products or companies.)

| Classroom Needs | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./ Min | D/W/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None needed

Timing/Scheduling: _____
Setting: _____
Presentation: _____
Response: _____
Equipment: _____

## XI. STATE AND DISTRICT ASSESSMENTS:
☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.
☑ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations
☐ Level V Portfolio: _____

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.
☐ Level IV (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☐ Reading
☑ Mathematics
☐ Written Expression
☐ Other:
☐ None

☐ Physical/Sensory
☑ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

**Modifications:**
☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education Setting | | |
| Combination Spec.Ed. and Gen. Ed. | | |
| Out of General Education Setting | Accept  *N/A* | Contained School *OOB* Lack of Exposure to Gen Ed. curriculum |

Modification(s)/Accommodation(s) to address the harmful effects:

Specific scheduling to accommodate for related service sessions and development of behavior intervention plan

Location for Services _____

District of Columbia Public Schools     07-02-2001     Division of Special Education     Appendix - A     IEP Page 4 of 4

Date Submitted: __2-15-07__
Invoice #: <u>SA21507</u>
Amount Requested <u>$61,810.00</u>

FAXED
APR – 4 2007

# INVOICES FOR IDEA SERVICES RENDERED

**SENT TO:**

**District of Columbia Public Schools**
**Office of the Chief Financial Officer**
**Special Education Invoices**
P.O. Box 75047
Washington, D.C. 20013

**SUBMITTED BY:**

<u>Larry Abramson & Caroline Newman</u>

<u>c/o Michael J. Eig & Associates, P.C.</u>

<u>5454 Wisconsin Avenue, Suite 760</u>

<u>Chevy Chase, Maryland  20815</u>

Student's Name:  <u>S██ A██████</u>

Student's Date of Birth: <u>1-16-91</u>

Student's DCPS ID#:  <u>9021977</u>

Student's Medicaid #:  <u>N/A</u>_____(if applicable)

Tuition Rate and Time Covered By Rate
*e.g.* semester, month:  <u>$81,744.00 for the 2006-2007 school year (The Grove School)</u>
                     (*only* applies to schools and residential facilities)

Number of Days Billed on the Invoice: <u>May 2006 to January 2007</u>

Itemization of Related Services:  <u>Tuition</u>_____(type of service provided)

Rate per Unit of Service:  <u>$6,400.00</u> per <u>month</u>  (*e.g.* hour, day, week, month)
                    <u>$6,812.00</u> per <u>month</u>  (*e.g.* hour, day, week, month)

Frequency of Service:  _____<u>monthly</u>_____

These Services were provided on the following dates (or range of dates): <u>May 2006 to</u>
<u>January 2007</u>.

I am enclosing the following documents:
1.) Summary of Costs from the Grove School, April 4, 2006;
2.) Monthly tuition invoices from The Grove School (marked paid); and
3.) Hearing Officer's Determination, 9-14-06.

Date Submitted:  __3-22-07__
Invoice #: __SA032207-2__
Amount Requested  __$1,106.53__

APR - 4 2007

# INVOICES FOR IDEA SERVICES RENDERED

**SENT TO:**

**District of Columbia Public Schools**
**Office of the Chief Financial Officer**
**Special Education Invoices**
**P.O. Box 75047**
**Washington, D.C. 20013**

**Ms. Leslie Dews**
**D.C. Public School Transportation**
**1709 3rd Street, NE, Second Floor**
**Washington, DC 20002**

**SUBMITTED BY:**

__Larry Abramson & Caroline Newman__

__c/o Michael J. Eig & Associates, P.C.__

__5454 Wisconsin Avenue, Suite 760__

__Chevy Chase, Maryland   20815__

**Student's Name:**  S██ A█████████

**Student's Date of Birth:** __1-16-91__

**Student's DCPS ID#:**  __9021977__

**Student's Medicaid #:**  __N/A__ (if applicable)

**Tuition Rate and Time Covered By Rate**
*e.g.* semester, month:  __N/A__ (*only* applies to schools and residential facilities)

**Number of Days Billed on the Invoice:** __May 2006 to December 2006__

**Itemization of Related Services:**  __Transportation__ (type of service provided)

**Rate per Unit of Service:**  __$1,106.53__ per____ (*e.g.* hour, day, week, month)

**Frequency of Service:**  ____as needed__

**These Services were provided on the following dates (or range of dates):** __May 2006 to December 2006.__

**I am enclosing the following documents:**
1.) Grove School Travel Breakdown (chart);
2.) Copies of confirmation of travel receipts; and
3.) Hearing Officer's Determination, 9-14-06.

Date Submitted: __3-22-07__
Invoice #: <u>SA032207-1</u>
Amount Requested <u>$6,812.00</u>

FAXED
APR - 4 2007

# INVOICES FOR IDEA SERVICES RENDERED

**SENT TO:**

**District of Columbia Public Schools**
**Office of the Chief Financial Officer**
**Special Education Invoices**
P.O. Box 75047
Washington, D.C. 20013

**SUBMITTED BY:**

<u>Larry Abramson & Caroline Newman</u>

<u>c/o Michael J. Eig & Associates, P.C.</u>

<u>5454 Wisconsin Avenue, Suite 760</u>

<u>Chevy Chase, Maryland   20815</u>

**Student's Name:**    S█ A██████

**Student's Date of Birth:** <u>1-16-91</u>

**Student's DCPS ID#:**    <u>9021977</u>

**Student's Medicaid #:**    <u>N/A</u>    (if applicable)

**Tuition Rate and Time Covered By Rate**
*e.g.* **semester, month:**    <u>$81,744.00 for the 2006-2007 school year (The Grove School)</u>
(*only* applies to schools and residential facilities)

**Number of Days Billed on the Invoice:** <u>February 2007</u>

**Itemization of Related Services:**    <u>Tuition</u>    (type of service provided)

**Rate per Unit of Service:** <u>$6,812.00</u> per <u>month</u>    (*e.g.* hour, day, week, month)

**Frequency of Service:** _____<u>monthly</u>_____

**These Services were provided on the following dates (or range of dates):** <u>February 2007.</u>

**I am enclosing the following documents:**
1.) Monthly tuition invoices from The Grove School (marked paid); and
2.) Hearing Officer's Determination, 9-14-06.

Date Submitted:  __4-2-07__              APR - 4 2007
Invoice #: __SA040207__
Amount Requested  __$6,812.00__

# INVOICES FOR IDEA SERVICES RENDERED

**SENT TO:**

**District of Columbia Public Schools**
**Office of the Chief Financial Officer**
**Special Education Invoices**
**P.O. Box 75047**
**Washington, D.C. 20013**

**SUBMITTED BY:**

**Larry Abramson & Caroline Newman**

**c/o Michael J. Eig & Associates, P.C.**

**5454 Wisconsin Avenue, Suite 760**

**Chevy Chase, Maryland   20815**

**Student's Name:**    S█ A█████n

**Student's Date of Birth:** 1-16-91

**Student's DCPS ID#:**    9021977

**Student's Medicaid #:**    N/A            (if applicable)

**Tuition Rate and Time Covered By Rate**
*e.g.* **semester, month:**    **$81,744.00 for the 2006-2007 school year (The Grove School)**
                               (*only* applies to schools and residential facilities)

**Number of Days Billed on the Invoice:**   **March 2007**

**Itemization of Related Services:**        **Tuition**     (type of service provided)

**Rate per Unit of Service:**    **$6,812.00** per **month**    (*e.g.* hour, day, week, month)

**Frequency of Service:**            **monthly**

**These Services were provided on the following dates (or range of dates):** **March 2007.**

**I am enclosing the following documents:**
1.) Monthly tuition invoices from The Grove School (marked paid); and
2.) Hearing Officer's Determination, 9-14-06.

State Education Agency for the District of Columbia
State Enforcement and Investigation Division (SEID)
Special Education Programs

S███ A█████, DOB:  09/26/1994

     Petitioner,

v.

District of Columbia Public Schools

     Respondent.

## DCPS' MOTION TO STAY HEARING OFFICER'S DECISION

     DCPS, by and through the undersigned representative, hereby files this Motion to Stay the implementation of the reimbursement relief in Hearing Officer's Decision ("HOD") of September 15, 2006 ("Motion").  Specifically, the basis for this Motion is that the HOD, is currently before the District Court and if this HOD is overturned DCPS would not be obligated to provide reimbursement as outlined in the HOD.

     Based on the aforegoing, DCPS requests the Petitioner's reimbursement relief be stayed pending the decision of the Court in this matter.

                    Respectfully Submitted,

                    *Stephanie Ramjohn Moore*
                    Stephanie Ramjohn Moore
                    Attorney Advisor
                    Office of the General Counsel
                    District of Columbia Public Schools
                    Telephone # 202-442-5173
                    Fax # 202-442-5097/8

Re: S██ A███████, DOB: 11/16/1991
p. 2

## CERTIFICATE OF SERVICE

    I, Stephanie Ramjohn Moore, Esq., hereby certify that a copy of DCPS' Motion to Stay

was served on April 3, 2007 on Michael J. Eig, Michael J. Eig & Associates via facsimile at 301-

657-3843.


                                                   *Stephanie Ramjohn Moore*
                                          Stephanie Ramjohn Moore, Esquire
                                          Attorney Advisor

2

IN THE MATTER OF

S___ A___

\*
\*
\*
\*
\*
\*
\*

BEFORE AN IMPARTIAL HEARING
OFFICER OF THE
DISTRICT OF COLUMBIA OFFICE OF
STUDENT HEARINGS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PARENTS' REPLY TO DCPS' MOTION
## TO STAY HEARING OFFICER'S DECISION

In contravention of federal law, Supreme Court holding, and basic jurisdictional requirements, the District of Columbia Public Schools ("DCPS") has filed a frivolous motion to stay the hearing officer's decision ("HOD") in the September 14, 2006, HOD in this matter. Parents prevailed in that HOD and the school system appealed the case to the United States District Court for the District of Columbia on December 12, 2006. Because the case is currently on appeal, because federal law provides for stay-put protection requiring DCPS funding, and because the school system is many months late in any event, the school system's motion to stay should be denied.

I.    THERE IS NO JURISDICTION.

The school system appealed this case to federal court on December 12, 2006. At that time and by its own action, DCPS invoked the jurisdiction of the federal court, thereby removing it from the hearing officer and the administrative process. Accordingly, the school system's motion to stay can not even reach a hearing officer due to the lack of jurisdiction. Moreover, even if jurisdiction were not an issue, the school system's motion is filed approximately a half year after the decision it seeks to stay, well beyond any reasonable time for seeking such a stay. It is a frivolous motion.

1

## II.    DCPS IGNORES THE FEDERAL LAW WHICH GOVERNS THE RIGHT TO STAY-PUT PROTECTION.

The Individuals with Disabilities Education Improvement Act ("IDEA") provides that, "during the pendency of any proceeding conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, *the child shall remain in the then-current education placement of the child . . . until all such proceedings have been completed.*" 20 U.S.C. § 1415(j).  The Supreme Court and the federal regulations promulgated pursuant to the IDEA are clear that a child's then-current placement is the last agreed upon placement, which includes a placement made by a hearing officer at an administrative hearing.  "If the hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement *must be treated as an agreement between the State and the parents for purposes of paragraph (a) of this section.*" 34 C.F.R. § 300.518(d).  Further, the Supreme Court has consistently held that, an administrative decision in favor of the parents "would seem to constitute an agreement by the State to the change of placement." *Burlington Sch. Comm. v. Department of Educ.,* 471 U.S. 359, 372 (1985).

What the DCPS motion seeks is a unilaterally-imposed change in "current educational placement," something that flies in the face of the IDEA's explicit "stay-put" protection.  DCPS is absolutely correct that, should the system prevail in court, it will be relieved of its ongoing obligation to fund S█████ placement at Grove School.  However, the purpose of "stay-put" protection is to ensure that the student can remain in an appropriate prior placement until a

2

judicial decision issues. Staying "stay-put" would eliminate that protection in the IDEA, without legal or logical justification.

We would also note that DCPS has not paid on any of the statements submitted pursuant to the HOD, and that counsel for DCPS stated that she was unaware of having received any bills. Since those documented requests were provided to DCPS on February 15, 2007; March 22, 2007; and April 2, 2007 (see Exhibits 1, 2, 3, and 4), this is all very troubling. We shall seek relief for nonpayment in federal court should no indication of payment be received.

**III.    CONCLUSION.**

For the reasons stated above, the parents request that the DCPS Motion to Stay be denied.

Respectfully Submitted,

Michael J. Eig
MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for S███ A██████ and his parents

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via facsimile and mailed, first-class postage prepaid, to Stephanie Ramjohn-Moore, Esq., counsel for DCPS, on April 4, 2007.

Michael J. Eig

3

**Hall, Gregory (OSE)**

| | |
|---|---|
| **From:** | RamJohn, Stephanie (OGC) |
| **Sent:** | Tuesday, April 03, 2007 10:02 AM |
| **To:** | Hall, Gregory (OSE) |
| **Subject:** | RE: |
| **Importance:** | High |

Hi Greg,
We have submitted a Motion requesting a stay of the relief until Court of Appeals decision is rendered so hold off on reimbursement until I tell your office otherwise.

Thanks,
Stephanie

**From:** Hall, Gregory (OSE)
**Sent:** Tuesday, April 03, 2007 9:58 AM
**To:** RamJohn, Stephanie (OGC)
**Subject:**

Stephanie,

What is the status of the S___ A___ case and reimbursing the parents for cost at the Grove School?

Thanks,

Greg

4/3/2007