IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE DISTRICT OF COLUMBIA** | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 06-2105 (PLF) |
| | : |
| **LARRY ABRAMSON and** | : |
| **CAROLINE NEWMAN,** | : |
| | : |
| Parents and next friend of S.A., | : |
| | : |
| Defendants. | : |
| _____ | : |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

Pursuant to this Court's LCvR 7.1(h), Plaintiff, by counsel, hereby opposes Defendants' "Motion for Summary Judgment" (hereinafter "Motion") filed herein March 30, 2007.

### INTRODUCTION AND BACKGROUND

The student, S.A., was born January 16, 1991, and is a resident of the District of Columbia. *See Administrative Record ("AR") filed herein February 23, 2007, p. 20; Plaintiffs' Answer ("Answer") filed herein December 29, 2006, para. 5.* He attended Janney Elementary School in the District of Columbia from kindergarten through second grade. *AR, p. 78; Answer, para. 6.* Thereafter, S.A.'s parents unilaterally placed him at The Lowell School, a private, non-special-education school, which he attended from third through sixth grades. *AR, p. 78; Answer, para. 7.* In the seventh grade, S.A. began attending Georgetown Day School, where he was again unilaterally placed by his parents.

He continued there until February, 2006, as a ninth grader. *AR, pp. 22, 78.* S.A. did not receive special education services at Georgetown Day School, The Lowell School or Janney Elementary School. *AR, p. 76; Answer, para. 9.*

S.A. is now a sixteen-year-old high school student, who is extremely bright, with many cognitive scores in the 99th percentile. Until the 2005-2006 school year, S.A. had always been a good student. *AR, pp. 22, 82, 103-105.* Prior to the 2005-2006 school year, S.A.'s parents had never contacted the District of Columbia Public Schools ("DCPS") to request special education services. *Answer, para. 11.*

On January 4, 2006, S.A.'s mother visited the C.A.R.E. Center at Shaw Junior High School, requesting that S.A. be evaluated for special education services. *AR, p. 76; Answer, para. 12.* At that time she informed the C.A.R.E. Center that S.A.'s school performance had dropped off sharply, and that he had begun exhibiting organizational, attentional and behavioral problems at home and at school. His grades had dropped from A's and B's to C's and D's. *AR, p. 80; Answer, para. 13.*

On January 18, 2006, the C.A.R.E. Center staff convened a Multidisciplinary Team ("MDT") meeting to discuss S.A.'s eligibility for special education services. No decision was reached at that time. The C.A.R.E. Center requested additional information from S.A.'s parents. *Answer, para. 14.* In furtherance of the special education evaluation process, the C.A.R.E. Center contacted Georgetown Day School in February, 2006, to schedule a classroom observation for S.A. However, Georgetown Day informed the C.A.R.E. Center that S.A. had withdrawn from school, effective February 27, 2006. *AR, p. 60.*

In a letter dated March 13, 2006, counsel for Defendants, Michael Eig, informed

the C.A.R.E. Center that S.A. had been removed from Georgetown Day School, and would be attending The Grove School ("Grove"), a therapeutic residential placement, in Madison, Connecticut.  *AR, p. 158; Answer, para. 16.*   In a follow-up letter dated April 17, 2006, Mr. Eig informed the C.A.R.E. Center that S.A. began attending Grove on April 4, 2006.  *AR, p. 159; Answer, para. 17.*

In letters dated May 4, 2006, and May 23, 2006, The C.A.R.E. Center informed Mr. Eig that, pursuant to IDEIA, since S.A. was currently attending school in Connecticut, DCPS was no longer obligated to complete the evaluation process.  The C.A.R.E. Center provided Mr. Eig with contact information for special education services for the Madison School District in Connecticut.  *AR, pp. 60-61.*

On May 23, 2006, Defendants filed a request for an administrative due process hearing, alleging that DCPS violated its obligations under IDEIA by referring Defendants to the Madison, Connecticut School District.  *AR, pp. 20-24; Answer, para. 19.*  A resolution session was held on June 6, 2006, but the parties were unable to resolve the issues.  *AR, pp. 88-90.*

In June, 2006, Grove evaluated S.A. and developed a Comprehensive Service Plan ("CSP") for him.  A CSP is similar to an Individualized Educational Program ("IEP").  *AR, pp. 163-186; Answer, para. 21.*

The due process hearing was held on August 21, 2006, and the Hearing Officer's Determination ("HOD") issued on September 14, 2006.  Although the hearing officer specifically declined to find that S.A. is a child with a disability, he found that DCPS's failure to complete the eligibility process within 120 days resulted in a denial of a free appropriate public education ("FAPE").  *AR, pp. 7-12.*  The hearing officer ordered

3

DCPS to convene a student evaluation plan meeting, conduct evaluations, convene an MDT meeting, and determine if S.A. is eligible for special education services. *Id.* If DCPS found S.A. eligible, they were to develop an Individual Education Plan ("IEP") for S.A. *Id.* In addition, the hearing officer ordered DCPS to reimburse Defendants for S.A.'s tuition at Grove from the date that an eligibility determination should have been made by DCPS, until such time as the student was provided an appropriate placement. *Id.* Plaintiff is appealing that HOD.

Plaintiff contends that 20 U.S.C. §1412(a)(10)(A) provides that each Local Education Agency ("LEA") must conduct child find and provide equitable services to parentally-placed private school children who attend private school *located in the LEA*, regardless of where the child resides. *See also 34 C.F.R. §300.131(a) and (f).* As of April 4, 2006, the date S.A. began attending Grove, the LEA in Madison, Connecticut became responsible for conducting child find and providing equitable services to S.A.

In their Motion, Defendants contend that Plaintiff denied FAPE to S.A. because DCPS did not conduct the evaluations, and because 20 U.S.C. §1412(a)(10) does not affect an LEA's responsibility to provide FAPE to a student who resides in its jurisdiction. In addition Plaintiff asks the Court to consider "additional evidence."

## ARGUMENT

### I. Defendants' "Additional Evidence" is Irrelevant to this Action and should not Factor into the Court's Decision.

20 U.S.C. §1415(I)(2)(C) provides that a court may hear additional evidence at the request of a party. The Eighth, Ninth and Eleventh Circuits have adopted the standard for admitting additional evidence created in Town of Burlington v. Department of Education for the Commonwealth of Massachusetts, 736 F.2d 773 (1st Cir. 1984).

4

"The determination of what is "additional" evidence must be left to the discretion of the trial court, which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo.*" Id. at 791.

Other circuits have limited the extent of this additional evidence. The Fourth Circuit has cautioned against a "lenient standard for additional evidence. " *See* <u>Springer v. Fairfax County Sch. Bd.</u>, 134 F.3d 659, 667 (4th Cir. 1998). The Third Circuit has stated that a district court should consider additional evidence that is "relevant, non-cumulative, and useful." *See* <u>Susan N. v. Wilson Sch. Dist.</u>, 70 F.3d 751, 760 (3rd Cir. 1995). The Fifth Circuit refused to admit additional evidence because the evidence was irrelevant. <u>Marc V. v. North East Independent School District</u>, 455 F.Supp. 2d. 577 (W.D.Tex., 2006).

In this case, Defendants ask the Court to consider evidence that occurred after the September 14, 2006 Hearing Officer's Determination ("HOD")—the basis for Plaintiff's appeal. *See* Section "C" of Defendants' Motion—pages 5-6, and Exhibits 1-8. These subsequent occurrences are irrelevant to this action and should not be considered by this Court in its decision-making process.

The sole legal issue in this action is whether the LEA in Madison, Connecticut was responsible for conducting evaluations and completing the child find process for S.A., or whether DCPS bore that responsibility, as the Hearing Officer found. The additional evidence Defendants wish the Court to consider has no bearing on the events that occurred from January 4, 2006—when the parents requested that S.A. be evaluated for special education services, to May 4, 2006—when the CARE Center informed the parents that they should seek assistance from the Madison School District in Connecticut.

5

The Hearing Officer based his legal conclusion upon the events that occurred during that four-month period.

Additional evidence should assist the Court in determining whether the Hearing Officer's legal conclusions are correct. Since the Hearing Officer's legal conclusions are based upon events that occurred prior to the issuance of the September 14, 2006 HOD, the additional evidence Defendants have presented to the Court—events that occurred *after* the HOD was issued—is irrelevant and should not factor in this Court's ruling. *See* Konkel v. Elmbrook School Dist., 348 F.Supp.2d. 1018 (E.D. Wisc. 2004) (additional evidence admissible only if movant provides particularized and compelling justification, including an explanation of why it is probative of issues before the court); Miller ex rel S.M. v. Board of Educ. Of Albuquerque Public Schools, 455 F.Supp.2d 1286 (D.N.M. 2006) (parents could not supplement administrative record with additional evidence of events that transpired after conclusion of administrative proceedings).

In addition, Exhibits 9, 10 and 11 are three HODs Defendants ask the Court to consider in making its ruling. Plaintiff contends that this request in inappropriate. A hearing officer's determination in a case not before this Court is irrelevant, and is not binding on the Court.

Accordingly, the Court should disregard Section C of Defendants' Motion, pages 5-6, and Exhibits 1-11.

## II. **Plaintiff's Refusal to Conduct Evaluations Did Not Give Rise to a Denial of FAPE.**

Defendants misstate Plaintiff's position by saying DCPS believes it is no longer obligated to provide FAPE because the student attends a private school located outside of the district. *See Motion, p. 8.* That is not Plaintiff's position at all. Plaintiff

6

acknowledges that IDEIA requires the LEA of residence to provide FAPE. However, before a student is deemed eligible to receive FAPE, the student must first be evaluated and found to have a disability that impairs his educational functioning. Plaintiff already discussed its position on this issue in it motion for summary judgment, pages 11-12. Nevertheless, the position bears repeating.

 Plaintiff's position is that DCPS was not obligated to conduct evaluations and complete the child find process once the parents unilaterally removed S.A. from the jurisdiction and enrolled him in a private school in Connecticut. Had S.A. remained at Georgetown Day, DCPS' obligation to complete the child find process would have continued, because Georgetown Day is located in the District—making DCPS both the LEA of residence and the LEA in which the student is enrolled.

 Plaintiff notes that S.A. was enrolled in Georgetown Day on January 4, 2006, when his parents requested that the C.A.R.E. Center evaluate him for special education services. Mindful of its child find responsibilities, DCPS immediately requested additional documents from the parents, scheduled an MDT meeting and contacted Georgetown Day to schedule a classroom observation. It was only after learning that the parents had enrolled S.A. in a private school in Connecticut as of April 4, 2006, that DCPS ceased the child find process. At that point, the Connecticut school district bore the responsibility for completing the child find process and conducting the evaluations.

 Plaintiff agrees with Defendants that IDEIA 2004 did not eliminate the need for the LEA of residence to provide FAPE. However, IDEIA 2004 did clarify which LEA is responsible for conducting child find—an event that **precedes** a determination of whether a child is eligible for FAPE. Moreover, it does not matter that the parents identified S.A.

7

as a child with a disability in January, 2006. The removal of S.A. from the District before the expiration of the 120 days allotted to complete the child find process, triggered 20 U.S.C. §1412(a)(10)(i)(II), which states that the LEA in which a child is enrolled is responsible for conducting the child find process.

Accordingly, DCPS' refusal to conduct evaluations and complete the child find process did not amount to a denial of FAPE, and the September 14, 2006 HOD must be overturned.

### III. 20 U.S.C. §1412(a)(10) Requires the LEA where the Student is Enrolled to Conduct Child Find.

Defendants argue that 20 U.S.C. §1412(a)(10) is inapplicable to S.A. because it is a provision that concerns equitable services, and does not affect an LEA's responsibility to provide FAPE to a student who resides in its jurisdiction. *See Motion, pp. 10-15.* To bolster this argument, Defendants cite the United States Department of Education, Question and Answer sessions of August 14, 2006, and January, 2007. Again, Defendants have muddled the issue by confusing FAPE with conducting evaluations and completing the child find process.

Defendants cite Question F-1 to support its position that the LEA responsible for providing FAPE is the LEA in which the child resides. *Motion, p. 11.* However, Question F-1 is inapplicable to this case. Question F-1 concerns a child *that has already been determined eligible for special education services.* Here, at the time the HOD issued, S.A. had not been determined eligible for special education services. Question F-1 does not address which LEA is responsible for conducting evaluations. Thus, Question F-1 is irrelevant.

In addition, Defendants, citing Question E-2, proclaim that the "Department has

confirmed that the LEA of residence is responsible for both evaluating a student and providing a FAPE even when the student is attending a private school outside of the LEA of residence." *Motion, p. 12.* That statement is misleading because it provides only a partial answer to Question E-2. The remaining answer states:

> If a determination is made **through the child find process by the LEA where the private school is located** that a child needs special education and related services and a parent makes clear his or her intent to keep the child enrolled in the private elementary or secondary school located in another LEA, the LEA where the child resides need not make FAPE available to the child. (Emphasis added.)

*See U.S. Department of Education Questions and Answers on Serving Children with Disabilities Placed by Their Parents at Private Schools, January, 2007,* available at http://idea.ed.gov/explore/view/p/%2Croot%2Cdynamic%2CQaCorner%2C1%2C. The answer to Question E-2 makes clear that the U.S. Department of Education intends that the LEA where the child is enrolled in school is responsible for conducting the child find process.

Defendants cited Ms. K. v. Maine Sch. Admin. Dist. No. 40, 2006 WL 3081555 (D.Me. 2006), to support their position that the LEA of residence is the LEA responsible for providing services. In Ms. K., the facts show that the student, who had already been determined eligible for special education services, already had an IEP, and was already receiving services from the LEA where he was enrolled and where his parent resided, was transferred from the LEA in which he was enrolled and resided to another LEA *located in the same state.* The parent asked the LEA of residence to review the student's IEP, but the LEA of residence declined because they believed that responsibility had transferred to the LEA where the student was enrolled, pursuant to 20 U.S.C. §1412(a)(10)(A).

The Magistrate Judge in <u>Ms. K.</u> ruled in favor if the parent stating that 20 U.S.C. §1412 is addressed to "state eligibility" and does not specify which LEA in a state must "carry out the obligations owed to the children with disabilities residing in the state." <u>Id.</u>, at 14.  The Magistrate Judge concluded further that IDEIA does not "free an LEA of responsibility for an IEP simply by virtue of a parental placement at an out-of-district, **but in-state**, private boarding school." <u>Id.</u>  (Emphasis added.)

<u>Ms. K.</u> may be distinguished from the case herein.  In <u>Ms. K.</u>, the student had already been evaluated, determined eligible for FAPE, had an IEP and was receiving services from the State of Maine.  In addition, the student transferred from one LEA in Maine, to another LEA in Maine.  Here, S.A. had never been determined eligible for FAPE, and was transferred to an LEA *in another state*.

Plaintiff contends that 20 U.S.C. §1412(a)(10) requires the LEA in which the student is enrolled conduct child find.  Defendants have not provided case law or viable legal arguments to the contrary.  Accordingly, the September 14, 2006 HOD must be overturned.

### IV. <u>Since there has been no Denial of FAPE, Defendants are not Entitled to Tuition Reimbursement.</u>

20 U.S.C. §1412(a)(10(C)(ii) provides:

> If the parents of a child **with a disability**, **who previously received special education and related services under the authority of a public agency**, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment. (Emphasis added.)

None of the elements necessary to provide tuition reimbursement exist in this case.  Here,

at the time the HOD issued, S.A. had not been diagnosed with a disability. More important, S.A. had never previously received special education and related services from DCPS. Finally, as argued *supra*, the hearing officer erred in finding a denial of FAPE because DCPS did not complete the child find process.

Since there was no denial of FAPE, Defendants are not entitled to tuition reimbursement. Accordingly, Defendants' request for tuition reimbursement at Grove for the 2005-2006 and 2006-2007 school years must be denied.

## CONCLUSION

IDEIA transferred the responsibility to conduct the child find process from the LEA in which the parents reside to the LEA in which the student is enrolled. Therefore, once Defendants unilaterally placed S.A. in a private school in Madison, Connecticut, the Madison County School District became responsible for conducting the child find process. Since it was no longer the responsibility of DCPS to continue with the evaluation process, there was no denial of FAPE. Accordingly, the HOD must be overturned, and Plaintiff's Motion for Summary Judgment must be granted.

    Respectfully submitted,

    LINDA SINGER
    Attorney General for the
      District of Columbia

    GEORGE C. VALENTINE
    Deputy Attorney General
    Civil Litigation Division

    */s/ Edward P. Taptich*_____
    EDWARD P. TAPTICH (012914)
    Section Chief
    Equity Section Two

                */s/ Veronica A. Porter*_____
                VERONICA A. PORTER (412273)
                Assistant Attorney General
                Civil Litigation Division
                Equity Section Two
                441 Fourth Street, N.W., Sixth Floor South
                Washington, D.C.  20001
                (202) 724-6651 (phone)
                (202) 727-3625 (facsimile)
                veronica2.porter@dc.gov

**April 20, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE DISTRICT OF COLUMBIA** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 06-2105 (PLF) |
| : | |
| **LARRY ABRAMSON and** : | |
| **CAROLINE NEWMAN,** : | |
| : | |
| Parents and next friend of S.A., : | |
| : | |
| Defendants. : | |
| _____ : | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IDENTIFIED
BY DEFENDANTS AS TO WHICH THERE IS A GENUINE ISSUE**

(Paragraph numbers correspond to the paragraph numbers in Defendants' "Statement of Material Facts as to which there is no Genuine Issue".)

1. Not disputed.

2. Not disputed.

3. Plaintiff does not dispute sentences one and two.  As to sentence three, the administrative record does not contain information to support this allegation. Nevertheless, since this allegation is not germane to the issue in this case—whether the LEA of residence or the LEA where the student attends school is responsible for completing the child find process—Plaintiff does not deem this allegation a genuine issue that will prohibit the Court from issuing a ruling on the parties' dispositive motions.

4. Plaintiff does not dispute sentences one and two.  As to sentence three, the administrative record does not contain information to support this allegation, and

13

Defendants have not explained what "evaluative and educational documents" were provided. Nevertheless, since this allegation is not germane to the issue in this case—whether the LEA of residence or the LEA where the student attends school is responsible for completing the child find process—Plaintiff does not deem this allegation a genuine issue that will prohibit the Court from issuing a ruling on the parties' dispositive motions.

    5. Not disputed.

    6. Not disputed.

    7. Plaintiff does not dispute that S.A. was removed from Georgetown Day in February, 2006, and that Defendants advised DCPS that the parents believed the change was necessary. Whether S.A. "had" to be permanently removed from Georgetown Day is a subjective decision made by the parents. Therefore, Plaintiff can neither agree with nor dispute this allegation.

    8. Not disputed.

    9. Not disputed.

    10. Plaintiff does not dispute the basis of the parents request for a due process hearing.

    11. Not disputed.

    12. Not disputed.

    13. Not disputed.

    14. Plaintiff objects to the inclusion of this paragraph in Defendants' Statement of Material Facts. These events occurred after the Hearing Officer's Decision was issued, and are not relevant to the issue in this case—whether the LEA of residence or the LEA where the student attends school is responsible for completing the child find

process.

      15.  Plaintiff objects to the inclusion of this paragraph in Defendants' Statement of Material Facts.  These events occurred after the Hearing Officer's Decision was issued, and are not relevant to the issue in this case—whether the LEA of residence or the LEA where the student attends school is responsible for completing the child find process.

      16.  Plaintiff objects to the inclusion of this paragraph in Defendants' Statement of Material Facts.  These events occurred after the Hearing Officer's Decision was issued, and are not relevant to the issue in this case—whether the LEA of residence or the LEA where the student attends school is responsible for completing the child find process.

      17.  Plaintiff objects to the inclusion of this paragraph in Defendants' Statement of Material Facts.  These events occurred after the Hearing Officer's Decision was issued, and are not relevant to the issue in this case—whether the LEA of residence or the LEA where the student attends school is responsible for completing the child find process.

      18.  Plaintiff objects to the inclusion of this paragraph in Defendants' Statement of Material Facts.  These events occurred after the Hearing Officer's Decision was issued, and are not relevant to the issue in this case—whether the LEA of residence or the LEA where the student attends school is responsible for completing the child find process.

       Respectfully submitted,

LINDA SINGER
Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

*/s/ Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**April 20, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **THE DISTRICT OF COLUMBIA** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 06-2105 (PLF) |
| | : | |
| **LARRY ABRAMSON and CAROLINE NEWMAN,** | : | |
| | : | |
| Parents and next friend of S.A., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER

Upon consideration of the parties' motions for summary judgment, oppositions thereto and replies it is, this \_\_\_\_\_ day of _____, 2007,

**ORDERED**, That the September 14, 2006, Hearing Officer's Determination is vacated; it is

**FURTHER ORDERED**, That summary judgment for the Plaintiff is granted and denied for the Defendants;

**FURTHER ORDERED**, an award of attorneys fees and costs to the Plaintiff.

_____
UNITED STATES DISTRICT JUDGE