**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE DISTRICT OF COLUMBIA, | |
| Plaintiff, | |
| v. | Civil Action No. 06-CV-2105 (PLF) |
| LARRY ABRAMSON and CAROLINE NEWMAN parents and next friend of S.A., | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

S.A. is a child with a disability, who is entitled to a free appropriate public education ("FAPE") and due process of law under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§1400, *et seq*. The Hearing Officer in this case correctly found that because S.A. is a resident of the District of Columbia, plaintiffs were required to evaluate his special education need, and provide him with FAPE. Plaintiffs argue that under the re-authorized IDEA, they were relieved of this duty. They are wrong. Because the school system failed to fulfill its responsibility of providing S.A. with a FAPE, they have been, and should be held accountable.

I.    **PLAINTIFFS DO NOT RECOGNIZE THE DIFFERENCE BETWEEN FAPE AND EQUITABLE SERVICES.**

In their motion, plaintiffs rely entirely on the United States Department of Education ("the Department") commentary that accompanies the federal regulations implementing the IDEA. In the commentary, the Department attempts to summarize the major changes made to the

final regulations.[1]  Plaintiffs state that, "It is clear from the comments and discussion that IDEIA revised in 2004 intended the LEA in which the student is enrolled to bear the child find responsibility."  *See* Plaintiffs' Motion at 10.  However, plaintiffs continue to fail to recognize that this requirement is for *equitable services only*.  In fact, as we have already pointed out, the comments state, in part, ". . . parents could ask two different LEAs to evaluate their child for different purposes at the same time."  Admin. Rec. at 252.  As everybody else except the District of Columbia Public Schools recognizes,[2] those two purposes would be (1) to provide an extra "equitable service" to a privately-placed child in a private school, or (2) to seek provision of a FAPE to a child by having the Local Educational Agency ("LEA") of residence make a special education eligibility determination and develop an appropriate program and placement for the

---

[1]     On August 14, 2004, the official regulations were published in the Federal Register. These regulations are promulgated pursuant to the IDEA and became effective on October 13, 2006.

[2]     Nobody, including hearing officers, federal courts, and the United States Department of Education, agrees with plaintiffs' position.  In fact, two hearing officers in the District of Columbia recently ruled in cases with very similar facts.  In *L.C. v. District of Columbia Pub. Sch.,* (April 10, 2007), Hearing Officer Terry Michael Banks heard evidence and testimony about L.C., a student who is a resident of the District of Columbia, but attends school in Maryland (a copy of the decision is attached).  DCPS refused to register L.C. and consider her special education needs; instead the school system directed the parents to the LEA in Maryland where the student's private school is located.  In his decision, Mr. Banks relied on the IDEA and the January, 2007 Department of Education Questions and Answers, noting that "a parent who resides in one jurisdiction and places his or her child in another jurisdiction may seek services from both jurisdictions. . . ." *Id.* at 6.  The Hearing Officer held that, "[DCPS] staff should not have referred to Maryland for purposes of childfind.  *As a resident of the District, Petitioner was entitled to pursue her FAPE rights through DCPS.*" *Id.* at 7 (emphasis added).
          In addition, Hearing Officer Charles Jones recently issued his decision in *J.G. v. District of Columbia Pub. School.*, (April 12, 2007) (a copy of the decision is attached).  J.G. is a resident of the District of Columbia and also attends school in Maryland.  The Hearing Officer held that, "DCPS failure to allow registration prevented this student's access (Child Find determination) into the DCPS special education program is a denial of FAPE, as the student had the right to receive special education and related services." *Id.* at 5.

student.  In the first case, and under the re-authorized IDEA, the LEA in which the private school is located would now be responsible for providing services.  In the second case – the case here – the LEA of residence remains responsible.

The Department recognizes that certain areas of the IDEA are unclear, and as a result, it has issued Questions and Answers to clarify specific topics.  In March, 2006, the Department issued a set of Questions and Answers that specifically states that a child's LEA of residence is responsible for providing a FAPE.  *See* Admin. Rec. at 142-155.  In January, 2007, the Department again issued Questions and Answers to further address the issues.[3]  *See* U.S. Department of Education, Questions and Answers On Serving Children with Disabilities Placed by Their Parents in Private Schools, Question and Answer E-1 (January, 2007), *available at* http://idea.ed.gov/explore/view/p/%2 Croot%2Cdynamic%2CQaCorner %2C1%2C (a copy is attached for the Court's convenience).  The Questions and Answers leave no room for interpretation.  When parents of a student who is attending a private school outside of the jurisdiction is seeking equitable services *only* for a child, they must go to the LEA where the private school is located.  However, if the parent is seeking a full determination a FAPE, including an Individualized Education Program ("IEP") and other special education services, they must go to the LEA of residence.  *Id*.  at 6-7.

---

[3]     The Introduction to the Questions and Answers state, "Since publication of the final regulations, the Office of Special Education and Rehabilitative Services (OSERS) in the U.S. Department of Education has received requests for clarification of some of these regulations. This is one in a series of question and answer documents prepared by OSERS to address some of the most important issues raised by requests for clarification on a variety of high-interest topics." *See* January 2007 Questions and Answers.

Here, S.A.'s parents are *clearly* seeking a full determination of S.A.'s special education needs, including an eligibility determination, an IEP, and a special education placement. The parents' intent is unquestionable, as they were in the middle of the IEP process when DCPS stated their position that they were no longer willing to evaluate S.A. and move forward with the special education process. Because this is a case in which the parents were seeking a FAPE from DCPS, the child's LEA of residence, DCPS, had the ultimate responsibility of evaluating the student and providing him with special education and related services. By failing to do so, it denied him a FAPE.

II.    PLAINTIFFS' FAIL TO ACKNOWLEDGE THAT THE LEA OF RESIDENCE HAS A CHILD FIND RESPONSIBILITY.

Plaintiffs' argue that under the re-authorized IDEA, the LEA of residence is relieved of its child find duty when a child attends school in another jurisdiction. While the IDEA does place a new child find responsibility on the LEA where a student's private school is located for purposes of equitable services, *it does not relieve the LEA of residence of its child find responsibility*. In fact, the IDEA ensures that, "All children with disabilities residing in the State . . . who are in need of special education and related services, are identified, located, and evaluated. . . ." 20 U.S.C. § 1412(a)(3)(A). This requirement is true in cases when the parent is seeking FAPE and is particularly true in cases, such as this, when the parent *makes the initial request* for the LEA of residence to conduct evaluations and determine eligibility. As a resident, S.A. has a right to pursue FAPE through DCPS, his LEA of residence.

4

III.    **PLAINTIFFS' ARGUMENT IS ILLOGICAL.**

Plaintiffs' argument simply makes no sense.  If the LEA of residence were relieved of its duty to conduct child find and provide FAPE, it would empower distant LEA's to dictate to the LEA of residence what it should provide for a certain child.  In other words, if S.A.'s parents had complied with DCPS, they would have gone to the LEA in Connecticut where Grove School is located and requested that it conduct evaluations and make a determination of eligibility.  Then, according to the plaintiffs' argument, DCPS would be required to honor the evaluations and eligibility of another LEA.  This is illogical.  In its analysis, the Court in *Mrs. K.* agreed, stating, "Nor is it plain that the statutory revisions effectuated through the IDEIA were meant to override preexisting state policies and procedures relating to the 'jurisdiction' of LEAs over individual children."  *Ms. K.* 2006 WL 3081555 at 14.

IV.    **CONCLUSION.**

For these reasons, as well as those discussed in the record and our previous filings, we respectfully ask this Court to affirm the decision of the Due Process Hearing.

Respectfully submitted,

/s/ (filed electronically)
Michael J. Eig         #912733
Haylie M. Iseman            #471891
Matthew B. Bogin          #911552
Paula A. Rosenstock  #494580

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Defendants

# District of Columbia Public Schools
## State Enforcement and Investigation Division
### Terry Michael Banks, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

2007 APR 10 PM 2: 04
DC PUBLIC SCHOOL SYSTEM

## Confidential

| | |
|---|---|
| L█████ C███████, STUDENT ) | |
| ) | |
| Date of Birth: ███████ ) | |
| ) | |
| Petitioner, ) | Hearing Dates: March 16, 2007 |
| ) | |
| v. ) | |
| ) | Complaint Filed: November 17, 2006 |
| THE DISTRICT OF COLUMBIA ) | |
| PUBLIC SCHOOLS ) | |
| ) | Held at: 825 North Capitol Street, N.E. |
| Respondent. ) | 8th Floor |
| ) | Washington, D.C. 20002 |
| Student Attending: ) | |
| McLean School of Maryland ) | |

## HEARING OFFICER'S DECISION

**Parents:**                     ████████████████████

**Counsel for Petitioner:**      Michael J. Eig, Esquire
                                 5454 Wisconsin Avenue; Suite 760
                                 Chevy Chase, Maryland 20815-6938
                                 (301) 657-1740; Fax: (301) 657-3843

**Counsel for DCPS:**            Daniel McCall, Esquire
                                 Office of the General Counsel, DCPS
                                 825 North Capitol Street, N.E.; 9th Floor
                                 Washington, D.C. 20002

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| Child | L███ C███████ |
|---|---|
| Child's Parent(s) (specific relationship) | ████████████████ |
| Child/Parent's Representative | Michael J. Eig, Esquire |
| School System's Representative | Daniel McCall, Esquire |

**Jurisdiction**

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

**Introduction**

Petitioner is a fifteen year-old student attending McLean School of Maryland ("McLean"). On November 17, 2006, Petitioner filed a Due Process Complaint Notice ("*Complaint*") alleging that the District of Columbia Public Schools ("DCPS") had refused to allow Petitioner to register for services from DCPS and failed to provide an appropriate placement. On December 4, 2006, Petitioner filed *Parent's Motion for Summary Decision* ("*Motion*"). Petitioner argued that, despite Petitioner's enrollment in a private school in Maryland, as a resident of the District, Petitioner was entitled to receive special education services from DCPS. On December 5, 2006, DCPS filed *District of Columbia Public School's Response to Parent's Administrative Due Process Complaint Notice* ("*Response*"). DCPS argued that the LEA where the private school is located is responsible for providing services. DCPS also argued that Petitioner failed to give DCPS sufficient notice of intent to enroll in a private school, and provided insufficient information about McLean to DCPS for it to consider as a placement option. On December 5th, DCPS also filed *District of Columbia Public School's Motion to Dismiss Parent's Administrative Due Process Complaint* ("*DCPS' Motion*"). DCPS restated the arguments presented in its *Response* and attached a memorandum from the U.S. Department of Education: "Obligations of States and local education agencies to parentally-placed private school children with disabilities." On December 11, 2006, Petitioner filed *Parent's Response to DCPS' Motion for Summary Decision* ("*Reply*"). The *Reply* argued that DCPS has misinterpreted the applicable regulations governing the provision of services to disabled children in private schools.

On March 8, 2007, Hearing Officer David Smith issued an order noting that "By letter dated March 6, 2007, counsel for Petitioner filed a request that the hearing now scheduled for March 16, 2007 go forward based on the 'pending motions.' By letter dated March 7, 2007, counsel for Respondent stated that DCPS was opposed to the request because of a pending Motion to Dismiss filed by Respondent." Hearing Officer Smith's order provided that "... all Motions are pending and therefore the hearing will be convened at 9:00 a.m. and the parties should be prepared to initially argue all Motions on March 16, 2007." The due process hearing was convened on March 16, 2007. The hearing officer stated his intention to hear oral arguments on the cross-motions and not to proceed with a hearing until having ruled on the motions.

**Undisputed facts:**

1. Petitioner is a fifteen year old resident of the District attending McLean School of Maryland, a private school.[1]

2. Petitioner's mother placed Petitioner at McLean in September 2000.[2]

3. On November 7, 2006, Petitioner's mother went to the DCPS C.A.R.E. Center at Shaw Junior High School to register Petitioner as a non-attending student for the 2006-2007 school year. The C.A.R.E. Center staff instructed Petitioner's mother to register Petitioner in Montgomery County, Maryland, the local education agency ("LEA") where McLean is located.[3]

**Conclusions of Law**

An LEA is obligated to provide a free appropriate public education ("FAPE") "to all children residing in the State."[4] The childfind provision of IDEIA also imposes FAPE obligations on the LEA in the state of residence for the following children:

> All children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.[5]

However, the statute also imposes FAPE responsibilities on the LEA for private school students located within its geographical boundaries:

> To the extent consistent with the number and location of children with disabilities in the State who are enrolled by their parents in private elementary schools and secondary schools in the school district served by a local educational agency, provision is made for the participation of those children in the program assisted or carried out under this part [20 USCS §§ 1411 *et seq.*] by providing for such children special education and related services...[6]

---

[1] *Complaint* at 1.
[2] Declaration of L██ C██████ ("Declaration") at 2.
[3] *Id.*
[4] 20 U.S.C. §1412(a)(1)(A).
[5] 20 U.S.C. §1412(a)(3)(A).
[6] 20 U.S.C. §1412(a)(10)(A).

4

Child find requirement.

The requirements of paragraph (3) (relating to child find) shall apply with respect to children with disabilities in the State who are enrolled in private, including religious, elementary schools and secondary schools.[7]

Equitable participation.

The child find process shall be designed to ensure the equitable participation of parentally placed private school children with disabilities and an accurate count of such children.[8]

The pertinent regulations are consistent with the requirement for the LEA where the private school is located to identify and evaluate a child placed there by his or her parents:

Each LEA must locate, identify, and evaluate all children with disabilities who are enrolled by their parents in private, including religious, elementary schools and secondary schools located in the school district served by the LEA...[9]

The child find process must be designed to ensure-- (1) The equitable participation of parentally-placed private school children...[10]

The U.S. Department of Education ("DOE") has interpreted the statute and regulations under IDEIA as imposing new childfind obligations on the LEA where the private school is located, as contrasted to the requirements of the predecessor statute:

These are significant changes from the current regulations in which the responsibility to conduct child find (34 CFR 300.451) and provide equitable services to parentally-placed private school children rests with *the LEA in which the children reside* [emphasis added] (34 CFR 300.453).

Therefore, beginning July 1, 2005, each LEA must conduct child find, determine the proportionate share of Part B funds, and provide equitable services to parentally-placed private school children with disabilities who attend private schools located in the LEA *without regard to where the children reside.* This change means that LEAs consult with representatives of the private schools located in the district, thereby eliminating the need

---

[7] 20 U.S.C. §1412(a)(10)(A)(ii)(I).
[8] 20 U.S.C. §1412(a)(10)(A)(ii)(II).
[9] 34 C.F.R. §300.131(a).
[10] 34 C.F.R. §300.131(b)(1).

for LEAs to contact private school representatives outside of their jurisdiction.[11]

DOE recognizes that a parent who resides in one jurisdiction and places his or her child in another jurisdiction may seek services from both jurisdictions, but it discourages this practice.

Question E-1: Is it possible for a parent to request evaluations from the district where the private school is located as well as the district where the child resides?

Answer: Although there is nothing in IDEA that prohibits parents from requesting that their child be evaluated by the LEA responsible for FAPE for purposes of having a program of FAPE made available to the child at the same time that the parents request that the LEA where the private school is located evaluate their child for purposes of considering the child for equitable services, the Department does not encourage this practice...

Question E-2: Does the LEA where the private school is located have an obligation to make an offer of FAPE?

Answer: The LEA where a child attends private school is responsible for ensuring equitable participation. If a parentally-place private school child also resides in that LEA, then the LEA would generally be responsible for making FAPE available to the child, unless the parent makes clear his or her intent to keep the child enrolled in the private elementary or secondary school located in the LEA. If a parentally-place private school child resides in a different LEA, the district in which the private elementary or secondary school is located is not responsible for making FAPE available to that child.

If a determination is made through the child find process by the LEA where the private school is located that a child needs special education and related services and a parent makes clear his or her intent to keep the child enrolled in the private elementary or secondary school located in another LEA, the LEA where the child resides need not make FAPE available to the child.[12]

Applying these authorities to the facts of this case, Petitioner herein is a resident of the District. Nothing in the record indicates that Petitioner has ever been identified as a child with a disability. Thus, Petitioner's could pursue childfind from DCPS pursuant to

---

[11] Memorandum, U.S. Department of Education, "Obligations of States and local educational agencies to parentally-placed private school children with disabilities," OSEP 05-09, June 5, 2005 [emphasis provided in text].
[12] OSEP, "Questions and Answers on Serving Children with Disabilities Place by Their Parents in Private Schools," January 2007.

20 U.S.C. Section 1412(a)(1)(A) or from Maryland pursuant to 20 U.S.C. Section 1412(a)(10)(A). However, the parent's clear intent is to maintain Petitioner's enrollment at McLean. Petitioner's mother sought to enroll Petitioner with DCPS as a "non-attending" student, maintained in her Declaration that "McLean is a proper placement for [Petitioner]," and seeks funding for placement at McLean. As noted above, DCPS is under no obligation to provide FAPE under these circumstances.

The C.A.R.E. Center staff should not have referred Petitioner to Maryland for purposes of childfind. As a resident of the District, Petitioner was entitled to pursue her FAPE rights through DCPS. Under *Florence County School District Four v. Carter*,[13] when a public school system has defaulted on its obligations under the Act, a private school placement is "proper under the Act" if the education provided by the private school is "reasonably calculated to enable the child to receive educational benefits."[14] "[O]nce a court holds that the public placement violated IDEA, it is authorized to 'grant such relief as the court determines is appropriate.' '...[E]quitable considerations are relevant in fashioning relief'... and the court enjoys 'broad discretion' in so doing."[15] In this case, ordering a private school placement would not be equitable or appropriate for a number of reasons. Petitioner has not been identified as a child with a disability, Petitioner's parent has not exhibited a genuine interest in receiving services from DCPS, and Petitioner's parent has stated her intention in maintaining Petitioner's enrollment at McLean, a private general education school in Maryland. Therefore, in the event Petitioner's parent has a genuine interest in having Petitioner receive special education services from DCPS, the hearing officer will order DCPS to convene a Multidisciplinary Team meeting to initiate childfind procedures for Petitioner.

## ORDER

Upon consideration of Petitioner's request for a due process hearing, Parent's *Motion*, DCPS' *Response*, *DCPS' Motion*, Petitioner's *Reply*, and the representations of the parties' counsel at the hearings, this 10th day of April 2007, it is hereby

**ORDERED**, that *DCPS' Motion* is **DENIED**.

**IT IS FURTHER ORDERED**, that Parent's *Motion* is **GRANTED**.

**IT IS FURTHER ORDERED**, that on or before May 4, 2007, DCPS shall convene an MDT meeting at McLean. DCPS shall coordinate scheduling the MDT meeting, and any meeting in which the Petitioner's placement is discussed or determined, with Petitioner's counsel, Michael J. Eig, Esquire. The MDT shall review all current evaluations and determine whether additional evaluations are necessary to determine Petitioner's eligibility for special education services. If further evaluations are deemed necessary, DCPS shall complete the evaluations within forty-five days of the MDT

---

[13] 510 U.S. 7 (1993).
[14] *Id.*, 510 U.S. at 11.
[15] *Id.*, 510 U.S. at 15-16.

meeting and reconvene an MDT meeting on or before July 13, 2007. If no further evaluations are deemed necessary, or upon the completion of the additional evaluations, the MDT shall determine Petitioner's eligibility for special education services. If Petitioner is determined to be eligible, the MDT shall develop an Individualized Education Program ("IEP") and consider placement alternatives.

**IT IS FURTHER ORDERED,** that DCPS shall afford Petitioner's parent an opportunity to participate in any meeting in which Petitioner's placement is discussed or determined. The DCPS placement representative shall advise Petitioner's parents of the advantages and disadvantages for Petitioner with respect to each school that is discussed, including any schools proposed by the parents. DCPS shall provide Petitioner's parents in an explanation for the placement DCPS proposes, and the reasons for the proposal shall be provided in the Meeting Notes. DCPS shall issue a Prior Notice within seven days if Petitioner is placed in a public facility or within 30 days if Petitioner is placed in a private facility.

**IT IS FURTHER ORDERED,** that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

**IT IS FURTHER ORDERED,** that in the event of DCPS' failure to comply with the terms of this Order, Petitioner's counsel will contact the C.A.R.E. Center staff and the DCPS Office of Mediation & Compliance to attempt to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.

**IT IS FURTHER ORDERED,** that this Order is effective immediately.

### Notice of Right to Appeal Hearing Officer's Decision and Order

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B).

Terry Michael Banks
Hearing Officer

Date:  April 10, 2007          Issued: 4/10/07

8

Copies to:

Michael J. Eig, Esquire
5454 Wisconsin Avenue; Suite 760
Chevy Chase, Maryland 20815-6938
(301) 657-1740; Fax: (301) 657-3843

Daniel McCall, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.
9th Floor
Washington, D.C. 20002

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *State Enforcement and Investigative Division*
## <u>CONFIDENTIAL</u>

### Charles R. Jones, Esq., Due Process Hearing Officer
### 825 North Capitol Street, N.E. 8th Floor
### Washington, D.C. 20002
### Facsimile: (202) 442-5556

| | | |
|---|---|---|
| In the Matter of | ) | IMPARTIAL DUE PROCESS |
| | ) | |
| J███████ G███████ Student, | ) | HEARING OFFICER'S DECISION |
| Date of Birth: ██████ | ) | |
| | ) | |
| Petitioner, | ) | Hearing Date: March 28, 2007 |
| | ) | |
| vs. | ) | |
| | ) | Held at: 825 North Capitol Street, NE |
| The District of Columbia Public Schools, | ) | Eighth Floor |
| Home School: Deal Junior High School | ) | Washington, D.C. 20002 |
| Respondent. | ) | |
| | ) | |

## <u>DECISION AND ORDER</u>

**Parent:** ████████████████████████

**Counsel for Parent:**    Patricia Cyr, Esq.
Michael J. Eig and Associates, P.C.
5454 Wisconsin Avenue, N.W.
Suite 760
Chevy Chase, Maryland 20815

**Counsel for School:**    Aaron A. Price, Sr. Attorney- Advisor
Office of the General Counsel, DCPS
825 North Capitol Street, N.E., 9th Floor
Washington, D.C. 20002

# HEARING OFFICER'S DECISION

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

### State Enforcement and Investigative Division
### Special Education Due Process Hearing

## I. INTRODUCTION

On March 23, 2007 a motion for a continuance was granted in this matter. The initial Request for a Due Process Hearing was filed with the Student Hearing Office, by counsel for the parent, Michael Eig, Esq. The request alleges DCPS failed to provide FAPE to J.G., as a student who resides in the LEA's educational district who was parentally placed within a private placement in another jurisdiction.

Due Process Hearing was convened on March 28, 2007 at the District of Columbia Public Schools, ("DCPS"), 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002. Aaron A. Price, Sr., Esq., Attorney-Advisor represented DCPS. Patricia Cyr, Esq., represented the parent. Five Day Disclosure Letters were entered into the record, without any objection by either party. On behalf of the parent: Disclosure Letter dated March 20, 2007: JG-1 through JG-13. On behalf of DCPS: Disclosure Letter dated March 22, 2007: DCPS#1 was entered into record. Parent's counsel waived a formal reading of the Due Process Rights. Witnesses on behalf of the parent: Judy Owens. Witnesses on behalf of DCPS: Patricia Young.

## II. JURISDICTION

The Due Process Hearing was convened, and this decision was written pursuant to *Public Law 108-446, The Individuals with Disabilities Education Improvement Act of 2004*, 20 United States Code 1400 et. Seq.; Title 34 of the Code of Federal Regulations, part 300; Title 5 of the District of Columbia Municipal Regulations and Section 145 of the D.C. Appropriations Act, effective October 21, 1998.

## III. ISSUES

1.      Whether DCPS denied the student FAPE by failing to allow registration of a student whose parent's reside in the LEA's educational district who was parentally placed within a private placement in another jurisdiction?

2.      Whether the Katherine Thomas School can provide J.G. with educational benefit?

2.

## IV.     SUMMARY OF RELEVANT EVIDENCE

In this case, petitioner by and through parent's counsel alleges that the District of Columbia Public Schools (hereinafter "DCPS") failed to provide J.G. a free and appropriate public education (FAPE). According to parent's counsel, petitioner's parents relocated from New Mexico and established residency in the District of Columbia. The student was enrolled at the Katherine Thomas School. It is alleged that the student had been determined to be eligible for special education and related services, as J.G. has experienced significant educational and developmental deficits. The student manifested disabilities in the following areas: speech and language delays, reduced ability to process information, difficulty with ocular motor skills and dyslexia. Parent's counsel further alleges that parent appeared at the C.A.R.E. Center at Shaw Junior High School to register J.G., as a non-attending student for the 2006-2007 school years. It is alleged that a C.A.R.E Center official refused to allow the parent to register the student as non-attending. The C.A.R.E. Center employee informed the parent that MCPS was responsible for evaluating the student. DCPS argued that the student was provided a free and appropriate public education. DCPS asserts that the local educational agency ("LEA") in which the student's private school is located is responsible for providing FAPE to the student, regardless of where the student resides; consequently, DCPS is not responsible for providing E.G. with anything because he is currently enrolled at The Katherine Thomas School, located outside of the District of Columbia.

Prior to the convening of the hearing, counsel for the parent filed a Motion for Summary Decision in this matter citing the fact that DCPS had been instructed, by a HOD dated February 12, 2007, to file a response no later than the date that the Five-(5) Day Disclosure Letters are due. DCPS failed to file a Motion in Opposition; therefore, counsel states this failure should result in an affirmative decision, as the facts as alleged are undisputed. Moreover, parent's counsel cites the fact that DCPS failed to provide a response to the complaint and failed conduct a resolution meeting in this matter. The Hearing Officer deferred a decision on these matters.

## V.     FINDINGS OF FACT

The Hearing Officer makes the following findings of fact:

1.     J.G. is a thirteen- (13) year old special education student whose parent's had established residency in the District of Columbia. The student's parent's enrolled the student at the Katherine Thomas School and investigated what was required to register the student in DCPS.

3.

2.      On or about January 11, 2007, the parent, Mr. Gabel, attended the C.A.R.E. Center at Shaw Junior High School for the purpose of registering J.G. as a non-attending student for the 2006-2007 school years. The parent had appropriate documentation to establish that he was a resident of the District of Columbia.

3.      The C.A.R.E. Center staff refused to allow the registration of the student, because the student is attending a private school outside of the District of Columbia. Instead of registering the student, the staff official instructed the parent to register J.G. in Montgomery County, the Local Educational Agency ("LEA") where the Katherine Thomas School is located. This fact was not disputed.

4.      Mr. Gabel was further instructed to contact an official at MCPS who was in charge of evaluating Montgomery County students for equitable services pursuant to Section 1412 (a) (10) of the IDEA. The C.A.R.E. Center employee informed Mr. Gabel that MCPS would conduct the appropriate evaluation and, thereafter, forward evaluations to DCPS, which would be responsible for any placement decision.[1]

5.      On or about January 19, 2007, the MCPS official, Ms. Rosenberg, contacted the parent and confirmed that MCPS was not responsible for evaluating J.G. who was seeking FAPE instead of just the provision of equitable services. DCPS failed to provide FAPE to J.G.

6.      Judith Owens, Director of Admission at the Katherine Thomas School, testified and concluded that the Katherine Thomas School is an appropriate educational placement for J.G., as the school has accepted J.G. as a student at the school.[2]

7.      According to Ms. Owens, Katherine Thomas is a non-public full-time special education day school specializing in educating students with learning disabilities. The school has the following features: certified special education teachers, related service providers including: Speech and Language therapist, Occupational Therapist, small student-to-teacher ratio, and a strong reading program.

4.

---

[1] Factual Determinations outlined in Parent's Motion for Summary Decision.
[2] Testimony of Judith Owens at the Due Process hearing.

## VI.  DISCUSSION AND CONCLUSION OF LAW

In this matter, petitioner by and through parent's counsel has sustained its burden of proof.  The fundamental issue in this case is whether DCPS failed to provide FAPE by failing to allow registration of a special education student whose parent's reside in the LEA's educational district that parentally placed the student within a private placement in another jurisdiction.  Parent's counsel filed a Motion for Summary Decision in this matter contending that the Summary Decision is warranted in that there are no genuine issues of a material fact in dispute.  Although DCPS was provided an opportunity to file a Motion in Opposition, DCPS failed to file any requests for an extension of time or a Motion in Opposition.  Accordingly, in view of DCPS' failure to file a Motion in Opposition, DCPS' failure to issue a Prior Notice and DCPS' failure to file a response to the Complaint, it is concluded that the facts as alleged by the parent in the Motion for Summary Decision are undisputed and controlling in this matter.  With regard to the merits of the case, the parent had attempted to register the special education student at C.A.R.E. Center on or about January 11, 2007.  DCPS did not allow the parent to register the student, as a non-attending student.  Thereafter, DCPS informed the parent that it was not responsible for providing the student with FAPE because it was the responsible of the LEA where the private school was located, which, in this case, is Montgomery County. However, the C.A.R.E. Center official failed to follow applicable District of Columbia local law requiring that an LEA, here DCPS, "shall make a free and appropriate public education available to each child with a disability, ages three to twenty-two, who reside in, or is a ward of the District." 5 D.C.M.R. Section 3002.1 (a).  According to the U. S. Department of Education, Office of Special Education: "... *If a determination is made that a child has a disability and needs special education and related services, the LEA where the child resides is responsible for making FAPE available to the child.*  Here, in this instance, DCPS failure to allow registration prevented this student's access (Child-Find determination) into the DCPS special education program is a denial of FAPE, as the student had the right to receive special education and related services.  Inasmuch as DCPS failed to offer a special education program to the student, DCPS failed to comply with the procedural aspects of the lead case in this regard, *Board of Education of the Hendrick Hudson Central School District* v *Rowley*, 458 U.S. 176 (1982).

To determine whether a summary judgment should be granted, a determination must be made as to whether no genuine issue as to a material fact exists and whether the moving party is entitled to judgment as a matter of law.[3]  Additionally, the facts must be reviewed in a light most favorable to the non-moving party.  Based upon the record, the facts as asserted by the parent are not disputed; therefore, there is no genuine issue as to a material fact that would prevent the parent's Motion from being granted; therefore, the motion is granted.  The sole remaining issue is whether the placement at the Katherine Thomas School is an appropriate educational placement for the student.  Undisputed testimony by the Admission Director of the Katherine School clearly indicated that student would receive educational benefit from his enrollment at this school, as the

5.

---

[3] Rule 56 ( c ) of the Rules of Civil Procedure.

Katherine Thomas School specializes in educating learning disabled students. Moreover, IDEA mandates and requires that where, as here, a student has been denied FAPE; the funding of a proper parental placement is appropriate relief. The leading case in this regards is the case of *Burlington Sch. Comm* v. *Dep't of Educe.*, 471 U.S. 359 (1985). The Supreme Court stated that to avoid compromising a child's right to FAPE the Court concluded that if " a court determined that a private placement desired by the parents was proper under the Act and that {a proposed } placement in a public school was inappropriate," the IDEA authorizes "retroactive reimbursement to parents. *Id.*

<b>Based upon the foregoing, IT IS HEREBY ORDERED:</b>

1) **Petitioner's request for relief is GRANTED.**

2) **Petitioner's request to find a denial of FAPE for DCPS' failure to allow registration of a student whose parent's reside in the Lea's educational district who was parentally placed within a private placement in another jurisdiction is GRANTED.**

3) **DCPS shall immediately place and fund the student at the Katherine Thomas School for the 2006-2007 school years to include transportation cost. DCPS shall provide retroactive funding to January 11, 2007.**

**VII.     APPEAL PROCESS**

This is the **FINAL ADMINISTRATIVE DECISION.** Appeals may be made to a court of competent jurisdiction within ninety- (90) days from the date this decision was issued.

Date Filed: 04-11-07

_____
Charles R. Jones, Esq., Hearing Officer

Date Issued: 4/12/07

6.

# Questions and Answers
## On Serving Children With Disabilities
## Placed by Their Parents in Private Schools

### January 2007

The final regulations for the reauthorized Individuals with Disabilities Education Act (IDEA) were published in the Federal Register on August 14, 2006, and became effective on October 13, 2006.  Since publication of the final regulations, the Office of Special Education and Rehabilitative Services (OSERS) in the U.S. Department of Education has received requests for clarification of some of these regulations.  This is one in a series of question and answer documents prepared by OSERS to address some of the most important issues raised by requests for clarification on a variety of high-interest topics.  Generally, the questions, and corresponding answers, presented in this Q&A document  required  interpretation of IDEA and the regulations and the answers are not simply a restatement of the statutory or regulatory requirements.  The responses presented in this document generally are informal guidance representing the interpretation of the Department of the applicable statutory or regulatory requirements in the context of the specific facts presented and are not legally binding.  The Q&As are not intended to be a replacement for careful study of IDEA and the regulations.  The statute, regulations, and other important documents related to IDEA and the regulations are found at http://idea.ed.gov.

IDEA and its implementing regulations contain a number of significant changes from the preexisting law and regulations for parentally-placed private school children with disabilities.  Section 612(a)(10)(A) of IDEA and 34 CFR §§300.130 through 300.144 now require that the local educational agency (LEA), after timely and meaningful consultation with private school representatives, conduct a thorough and complete child find process to determine the number of parentally-placed children with disabilities attending private schools *located in the LEA*.  These requirements make clear that the obligation to spend a proportionate amount of IDEA Part B funds to provide services to children with disabilities enrolled by their parents in private schools now refers to children enrolled by their parents in private elementary schools and secondary schools "in the school district served by a local education agency."  Other key changes relate to the consultation process, calculation of the proportionate share, and standards applicable to personnel providing equitable services.

## A. Consultation With Private School Representatives and Representatives of Parents of Parentally-Placed Private School Children With Disabilities

**Authority:**   The requirements for consultation are found in the regulations at 34 CFR §300.134.

**Question A-1:**   What guidance is available on how to carry out the consultation process? Are there any consultation models available?

**Answer:**   In March 2006, OSEP issued a document entitled "Questions and Answers on Serving Children With Disabilities Placed by Their Parents at Private Schools." This document provides guidance on the requirements for the consultation process. In addition, the website http://idea.ed.gov provides a topic brief and a video clip describing specific changes in the requirements in the Individuals with Disabilities Education Improvement Act of 2004 (IDEA 2004) for parentally-placed private school children with disabilities. There are a number of ways to carry out the consultation process.  OSEP, however, does not endorse any specific consultation model.

## B. Equitable Services

| | |
|---|---|
| **Authority:** | The requirements for equitable services are found in the regulations at 34 CFR §§300.132 and 300.137-300.138. |

**Question B-1:**   Define equitable services.

**Answer:**   Equitable services are services provided to parentally-placed private school children with disabilities in accordance with the provisions in IDEA and its implementing regulations at 34 CFR §§300.130 through 300.144.

The regulations at 34 CFR §300.137(a) explicitly provide that children with disabilities enrolled in private schools by their parents do not have an individual right to receive some or all of the special education and related services they would receive if enrolled in the public schools. Under the Act, LEAs only have an obligation to provide parentally-placed private school children with disabilities an opportunity for equitable participation in the services funded with Federal Part B dollars that the LEA has determined, after consultation, to make available to its population of parentally-placed private school children with disabilities.

The consultation process is important to ensure the provision of equitable services. Consultation among the LEA, private school representatives, and parent representatives must address how the consultation will occur throughout the school year so that parentally-placed children with disabilities identified through child find can meaningfully participate in special education and related services. How, where, and by whom special education and related services will be provided for parentally-placed private school children with disabilities is determined during the consultation process.

Equitable services for a parentally-placed private school child with disabilities must be provided in accordance with a services plan. A services plan must describe the specific special education and related services that will be provided to a parentally-placed private school child with disabilities designated to receive services.

## C. Services Plans

**Authority:**    The requirements for services plans are found in the regulations at 34 CFR §§300.132(b) and 300.138(b).

**Question C-1:**    How often must a services plan be written?

**Answer:**    IDEA and its implementing regulations do not specify how often a services plan must be written.  As provided in 34 CFR §300.138(b)(2)(ii), a services plan must, to the extent appropriate, be developed, reviewed and revised in accordance with the IEP requirements in 34 CFR §§300.321 through 300.324.  The regulations at 34 CFR §300.324(b)(1) require that a child's IEP be reviewed periodically and not less than annually, to determine whether the annual goals for the child are being achieved; and to be revised as appropriate. The Department, therefore, believes that generally a services plan should be reviewed annually and revised, as appropriate.

**Question C-2:**    Must the parent of a parentally-placed private school child participate in the development of a services plan?

**Answer:**    As provided in 34 CFR §300.138(b)(2)(ii), a services plan must, to the extent appropriate, be developed, reviewed and revised in accordance with the requirements in 34 CFR §§300.321 through 300.324.  Therefore, to the extent appropriate, the meeting to develop a services plan should be conducted in accordance with 34 CFR §300.321. Under 34 CFR §300.321(a)(1), the parents of the child are required participants. Given the emphasis on parent involvement in IDEA, the Department believes that parents should participate in the meeting to develop the services plan for their child.

## D. Due Process

**Authority:**   The requirements for how due process and State complaints apply to children parentally-placed in private schools are found in the regulations at 34 CFR §300.140.

**Question D-1:**   Under what circumstances may a parent file a complaint under the private school provisions?

**Answer:**   As provided in 34 CFR §300.140(b), a parent of a child enrolled by that parent in a private school has the right to file a due process complaint regarding the child find requirements in 34 CFR §300.131, including the requirements in 34 CFR §§300.300 through 300.311. Such a complaint must be filed with the LEA in which the private school is located and a copy forwarded to the SEA. The due process provisions in section 615 of the Act and 34 CFR §§300.504 through 300.519 of the regulations do not apply to issues regarding the provision of services to a particular parentally-placed private school child with disabilities an LEA has agreed to serve, because there is no individual right to services for parentally-placed private school children under IDEA. Disputes that arise about equitable services are, however, properly subject to the State complaint procedures in 34 CFR §§300.151 through 300.153. As provided in 34 CFR §300.140(c), a parent may file a signed written complaint in accordance with the State complaint procedures alleging that an SEA or LEA has failed to meet the private school provisions, such as failure to properly conduct the consultation process.

## E. Child Find and Individual Evaluations

**Authority:** The requirements for child find for parentally-placed private school children with disabilities are found in the regulations at 34 CFR §300.131.

**Question E-1:** Is it possible for a parent to request evaluations from the district where the private school is located as well as the district where the child resides?

**Answer:** The Department recognizes that there could be times when parents request that their parentally-placed child be evaluated by different LEAs if the child is attending a private school that is not in the LEA in which they reside. For example, because most States generally assign the responsibility for making FAPE available to the LEA in which the child's parents reside, and because that could be an LEA that is different from the LEA in which the child's private school is located, parents could ask two different LEAs to evaluate their child for different purposes at the same time. Although there is nothing in IDEA that prohibits parents from requesting that their child be evaluated by the LEA responsible for FAPE for purposes of having a program of FAPE made available to the child at the same time that the parents request that the LEA where the private school is located evaluate their child for purposes of considering the child for equitable services, the Department does not encourage this practice. Note that a new requirement at 34 CFR §300.622(b)(3) requires parental consent for the release of information about parentally-placed private school children between LEAs. Therefore, as a practical matter, one LEA may not know that a parent also requested an evaluation from another LEA. However, the Department does not believe that the child's best interests would be served if parents request evaluations of their child by the resident school district and the LEA where the private school is located, even though these evaluations are conducted for different purposes. Subjecting a child to repeated testing by separate LEAs in close proximity of time may not be the most effective or desirable way to ensure that the evaluations are meaningful measures of whether a child has a disability or of obtaining an appropriate assessment of the child's educational needs.

**Question E-2:** Does the LEA where the private school is located have an obligation to make an offer of FAPE?

**Answer:** The LEA where a child attends private school is responsible for ensuring equitable participation. If a parentally-placed private school child also resides in that LEA, then the LEA would generally be responsible for making FAPE available to the child, unless the parent makes clear his or

her intent to keep the child enrolled in the private elementary or secondary school located in the LEA.   If a parentally-placed private school child resides in a different LEA, the district in which the private elementary or secondary school is located is not responsible for making FAPE available to that  child.

If a determination is made through the child find process by the LEA where the private school is located that a child needs special education and related services and a parent makes clear his or her intent to keep the child enrolled in the private elementary or secondary school located in another LEA, the LEA where the child resides need not make FAPE available to the child.

## F. Highly Qualified Teachers in Private Schools

**Authority:**  The requirements for highly qualified teachers in private schools are found in the regulations at 34 CFR §§300.18(h) and 300.138(a).

**Question F-1:**  Who must meet the "highly qualified teacher" requirements? If an LEA hires a teacher to provide special education services to children with disabilities placed by their parents in private schools, does the teacher have to meet the "highly qualified teacher" requirements?

**Answer:**  The regulations at 34 CFR §300.138(a) clarify that personnel providing equitable services required by IDEA to children enrolled in private schools by their parents must meet the same standards as personnel providing services in the public schools, except that private elementary and secondary school teachers who are providing equitable services to parentally-placed private school children with disabilities do not have to meet the highly qualified special education teacher requirements in 34 CFR §300.18. If the responsible LEA contracts with private school teachers to provide equitable services to children with disabilities enrolled by their parents in private schools, those private school teachers do not have to meet the highly qualified special education teacher requirements. However, if public school personnel provide equitable services to private school children on or off the premises of the private school, those public school personnel must meet the highly qualified teacher requirements.

**Question F-2:**  Can States go beyond IDEA's requirements and require teachers in private schools to hold certain credentials or certifications?

**Answer:**  The regulations at 34 CFR §§300.18(h) and 300.138(a) make clear that private school teachers do not have to meet the same highly qualified teacher requirements as teachers who are employed by public agencies. IDEA is silent regarding additional credentials or certifications that each State may require under State law.

Therefore, States may go beyond IDEA requirements and require teachers in private schools to hold certain credentials or certifications. If a State establishes requirements that exceed those required by Part B of the Act or the Federal regulations, the State is required by 34 CFR §300.199(a)(2) to identify in writing to the LEAs located in the State and to the Secretary that such rule, regulation, or policy is a State imposed requirement, which is not required by Part B of the Act or the Federal regulations.

## G.  Expenditures

| | |
|---|---|
| **Authority:** | The expenditure requirements are found in the regulations at 34 CFR §300.133. |

**Question G-1:**  Is the proportionate share that the LEA must expend to provide equitable services to children with disabilities placed by their parents in private schools different from the calculation required in previous years?

**Answer:**  Yes, the revisions to IDEA in 2004 made a significant change in the manner in which the proportionate share is calculated.  The major change is that the calculation is based on the total number of children with disabilities who are enrolled in private schools located in the LEA whether or not the children or their parents reside in the LEA.

The proportionate share is now calculated as follows: (1) For children aged three through 21, an amount that is the same proportion of the LEA's total subgrant under section 611(f) of the Act as the number of private school children with disabilities aged three through 21 who are enrolled by their parents in private, including religious, elementary schools and secondary schools located in the school district served by the LEA, is to the total number of children with disabilities in its jurisdiction aged three through 21.

(2) For children aged three through five, an amount that is the same proportion of the LEA's total subgrant under section 619(g) of the Act as the number of parentally-placed private school children with disabilities aged three through five who are enrolled by their parents in a private, including religious, elementary school located in the school district served by the LEA, is to the total number of children with disabilities in its jurisdiction aged three through five.

Appendix B of the regulations provides a helpful example of how to make this calculation.

**Question G-2:**  Which children does an LEA use to make its proportionate share calculation?

**Answer:**  Children who have been evaluated and found eligible for special education and related services, not just those children who receive services through an IEP or services plan, should be included in the calculation. As discussed at 34 CFR §300.133(a), an LEA needs to know the total number of private school children with disabilities who are enrolled by their

parents in private elementary schools and secondary schools located in the LEA and the total number of children with disabilities enrolled in public and private elementary schools and secondary schools located in the LEA.

**Question G-3:**   May an LEA expend more than the proportionate share of Part B funds on children with disabilities placed by their parents in private schools?

**Answer:**   As discussed above, each LEA is required to spend a minimum amount of its subgrant under Part B for children with disabilities placed by their parents in private schools.  As long as the LEA meets all the other requirements of the Act, including providing FAPE to children with disabilities, it is permissible for an LEA to spend more than the minimum amount of Part B funds.  In addition, as provided in 34 CFR §300.133(d), State and local funds may be used to supplement, but not supplant, the proportionate share of Federal funds required to be expended on children with disabilities placed by their parents in private schools.

**Question G-4:**   If an LEA does not expend the entire proportionate share of Part B funds on children with disabilities placed by their parents in a private school that closes, what must the LEA do with those unexpended funds?

**Answer:**   Under 34 CFR §300.133(a), each LEA is required to spend a minimum amount of its subgrant under Part B on children with disabilities placed by their parents in private elementary and secondary schools.  As provided in 34 CFR §300.133(a)(3), if an LEA has not expended all of the proportionate share of its Part B subgrant by the end of the fiscal year for which Congress appropriated the funds, the LEA must obligate the remaining funds for special education and related services to children with disabilities placed by their parents in private schools during a carry-over period of one additional year.  A reduction in the number of children, for example, when a school closes after the start of the school year, does not excuse the LEA from spending its proportionate share to provide equitable services to children with disabilities placed by their parents in private schools.

**Question G-5:**   Can an LEA require another LEA to pay for the services of a parentally-placed private school child with a disability from another State?

**Answer:**   Section 300.133(a) clarifies that the LEA where a private school is located is responsible for spending a proportionate amount of its subgrant under Part B on special education and related services for children enrolled by their parents in private elementary and secondary schools located in the

LEA.  There is no exception for out-of-State children with disabilities attending a private school located in the LEA. Therefore, out-of-State children with disabilities must be included in the group of parentally-placed children with disabilities whose needs are considered in determining which parentally-placed private school children with disabilities will be served and the types and amounts of services to be provided.  Another LEA may not be charged for child find and equitable services even if the child with a disability resides in another State.

Nothing in IDEA precludes an LEA from contracting with a third party to fulfill its obligations to ensure equitable participation.  This includes contracting with a student's LEA of residence as a third party provider.

**Question G-6:**   How can the public find out the amount an LEA must expend to meet its proportionate share of Part B funds?

**Answer:**   This information should be readily available from the LEA or SEA.  As required by 34 CFR §300.134(b), the consultation process must include a determination of the proportionate share of Federal funds available to serve parentally-placed private school children with disabilities, including how the proportionate share of funds will be calculated.

**Question G-7:**   Will the Federal/State allocation of Part B funds have to be adjusted to include parentally-placed private school children with disabilities receiving equitable services?

**Answer:**   Federal Part B funds are allocated under the Grants to States and Preschool Grants for Children with Disabilities programs to States, and from States to LEAs, based on a statutory formula that considers the amount of program funds received in a prior year (the base year) and population and poverty allocations (see 34 CFR §§300.703, 300.705, 300.807 and 300.816).  Each LEA calculates the proportionate share it must spend on parentally-placed private school children with disabilities based on the LEA's subgrant.  Because  Part B funds are allocated to States and LEAs using a statutory formula that is not based on a child count, the amount of Part B funds allocated to States and LEAs  cannot be adjusted to include the number of private school students with disabilities receiving equitable services.  Adjustments in State funding could be made depending on each State's laws and funding mechanisms.

**Question G-8:**      How are the "Maintenance of Effort" requirements affected when equitable services are no longer provided with State and local funds to children with disabilities placed by their parents in private schools?  How are the "Maintenance of Effort" requirements affected for an LEA that only used State and local funds in previous years to provide equitable participation to children with disabilities placed by their parents in a private school?

**Answer:**      In accordance with the regulations at 34 CFR §300.133(d), State and local funds may supplement, and in no case supplant, the proportionate share of Federal funds required to be expended for children with disabilities placed by their parents in private schools.  This is a new requirement in IDEA.  Prior to the reauthorization of IDEA, if an LEA spent more than the Federal proportionate share of funds using State and local funds, the LEA was not required to spend any Federal Part B funds on parentally-placed private school children.  This is no longer permissible.

An LEA that previously used only State and local funds to provide equitable services to children with disabilities placed by their parents in a private school and now uses Federal Part B funds to provide equitable services must meet the maintenance of effort requirements in 34 CFR §300.203.  The exceptions to the maintenance of effort requirements in 34 CFR §300.204 do not apply to funds used for equitable participation of parentally-placed private school children with disabilities.  Therefore, the total or per capita amount of State and local funds expended for the education of children with disabilities, including the amount previously expended for equitable services to children with disabilities placed by their parents in private schools, would have to be maintained, unless adjustments are permitted as discussed in 34 CFR §300.205.

## H. General

**Question H-1:**    When making a determination regarding the services that an LEA will provide a child with disabilities placed by their parents in a private school, could an LEA decide to only provide services to students from their LEA or their State?

**Answer:**    LEAs have discretion to determine how the proportionate share of Federal Part B funds will be expended so long as the consultation requirements in 34 CFR §300.134 are followed for all parentally-placed private school children. LEAs cannot determine, outside of the consultation process, that the proportionate share of Federal Part B funds for equitable services can only be expended to meet the needs of children who are residents of that LEA or State.

**Question H-2:**    Section 300.139(a) states that services to parentally-placed private school children with disabilities may be provided on the premises of the private school, including religious schools, to the extent consistent with law. How is "the extent consistent with law" determined?

**Answer:**    Services offered to parentally-placed private school children with disabilities may be provided on-site at a child's private school, including a religious school, to the extent consistent with law, or at another location. The Department believes that, in the interests of the child, LEAs should provide services on-site at the child's private school so as not to unduly disrupt the child's educational experience, unless there is a compelling rationale for these services to be provided off-site. The phrase "to the extent consistent with law" is in section 612(a)(10)(A)(i)(III) of the Act. The Department interprets this to mean that the provision of services on the premises of a private school must take place in a manner that would not violate the Establishment Clause of the First Amendment of the U.S. Constitution and would not be inconsistent with applicable State constitutions or laws.

**Question H-3:**    What obligation, if any, do districts have to serve 3 through 5-year-old children who are parentally-placed in private preschools?

**Answer:**    An LEA's obligation to provide equitable services to three through five-year-old parentally-placed private school children with disabilities depends on whether a child is enrolled in a private school or facility that meets the definition of "elementary school" in IDEA and the final regulations. "Elementary school" is defined at 34 CFR §300.13 as a

nonprofit institutional day or residential school, including a public elementary charter school, that provides elementary education, as determined under State law. Accordingly, three through five-year-old children with disabilities that are enrolled by their parents in a private school or facility that meets the State's definition of "elementary school" would be considered parentally-placed and the equitable participation provisions would apply. A child aged three through five enrolled by his or her parents in a private school or facility that does not meet the State's definition of "elementary school" would not be eligible to be considered for equitable services. However, the State's obligation to make FAPE available to such children remains. Section 612(a)(1) of IDEA requires that States make FAPE available to eligible children with disabilities aged three through twenty-one in the State's mandated age range (34 CFR §300.101). Because many LEAs do not offer public preschool programs, particularly for three- and four-year-olds, LEAs often make FAPE available to eligible preschool children with disabilities in private schools or facilities in accordance with 34 CFR §§300.145-300.147. In these circumstances, there is no requirement that the private school or facility be an "elementary school" under State law.

In some instances, an LEA may make FAPE available in the private preschool program that the parent has selected. If there is a public preschool program available, the LEA of residence may choose to make FAPE available to a preschool child in that program. If the group of persons making the placement decision, as specified in 34 CFR §300.116(a)(1), places the child in a public or private preschool program and the parents reject the public agency's offer of FAPE because they want their child to remain in the private preschool program they have selected, the public agency is not required to provide FAPE to that child. The parent may challenge the public agency's determination of what constitutes FAPE for their child using the State complaint and due process procedures available under IDEA.