UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-2105 (PLF) |
| ) | |
| LARRY ABRAMSON ) | |
| ) | |
| and ) | |
| ) | |
| CAROLINE NEWMAN, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

OPINION

       This is a case brought under the Individuals with Disabilities Education Act, as amended, ("IDEA"), 20 U.S.C. § 1400 *et seq*.  It is an appeal from a Hearing Officer Decision by the District of Columbia on behalf of the District of Columbia Public Schools ("DCPS").  The defendants are the parents of the student, S.A.  There are cross motions for summary judgment before the Court.  The Court heard oral argument on May 31, 2007.

I.  BACKGROUND

       The undisputed facts are as follows.  The student, S.A., was born on January 16, 1991, and, along with his parents, is a resident of the District of Columbia.  See DCPS Statement of Material Facts as to Which There is No Genuine Issue ("SMF") ¶ 1.  S.A. attended a District of Columbia public school from kindergarten through second grade, and then was placed by his parents at a private school, the Lowell School, from third through sixth grades.  See id. ¶¶ 2-3.

S.A. was placed by his parents at another private school, the Georgetown Day School, in the seventh grade and remained there until February 2006.  See id. ¶ 4.  S.A. did not request or receive special education services at any of these schools.  See id. ¶ 5.

During the 2005-2006 school year, the parents noticed a drop in S.A.'s academic performance and changes in his behavior.  S.A.'s mother took him to the Central Assessment Referral and Evaluation Center ("C.A.R.E. Center") at Shaw Junior High School on January 4, 2006 to register him as a DCPS non-attending student and to request that he be evaluated for special education services.  See DCPS SMF ¶¶ 8-9; September 14, 2006 Hearing Officer Decision ("HOD") at 2.[1]  "On January 18, 2006, the C.A.R.E. Center staff convened a Multidisciplinary Team ("MDT") meeting to discuss S.A.'s eligibility for special education services.  No decision was reached at that time."  DCPS SMF ¶ 10.

The C.A.R.E. Center later contacted the Georgetown Day School to schedule a classroom observation for S.A., but the Center was advised that his parents had withdrawn S.A. from that school effective February 27, 2006.  See DCPS SMF ¶ 11.  S.A.'s parents placed him at the Grove School, a residential therapeutic private school in Madison, Connecticut, on April 4, 2006.  See id. ¶¶ 12-13.

> On May 5, 2006, DCPS convened a second MDT Meeting, which the parents attended.  However, the MDT team declined to continue any further with the IDEA process, explaining that S.A. was no longer the responsibility of DCPS, since he was by then attending a private school outside of the District.  The C.A.R.E. Center staff informed the family that they would instead have to register S.A. within the school system of the county in which Grove is located.

---

[1]     The September 14, 2006 Hearing Officer Decision (which this case is an appeal from) can be found in the Administrative Record at pages 2-15.

<u>Id</u>. ¶ 9.

"On May 23, 2006, S.A.'s parents filed a request for a due process hearing based on the failure of DCPS to evaluate S.A., determine his eligibility, and provide him with an Individualized Education Program ("IEP") and special education placement."  Defendants' SMF ¶ 10; <u>see</u> <u>also</u> <u>id</u>. ¶ 15.  "A hearing was held on August 21, 2006 and the Hearing Officer issued his decision on September 14, 2006."  <u>id</u>. ¶ 10.

In his decision, the Hearing Officer summarized the arguments of the parties, which appear to be similar to those made in the briefs filed in connection with the cross motions for summary judgment in this case.  <u>See</u> HOD at 4-5.  The Hearing Officer then reviewed the IDEA and the applicable regulations and ruled for the parents.  <u>See</u>  <u>id</u>. at 5-10.  Defendants summarize his decision as follows:

> 12.  The Hearing Officer concluded that as S.A.'s Local Educational Agency ("LEA"), DCPS is responsible for offering a [free appropriate public education ("FAPE")] by evaluating him, convening an eligibility meeting, determining eligibility, and if S.A. is found eligible, developing an IEP and offering an appropriate placement.  Complaint ¶¶ 23-28; Hearing Officer's Decision at 8-10.  Further, he found that DCPS denied S.A. a FAPE by failing to complete the eligibility process within the 120-day timeline.  Complaint ¶ 24; Hearing Officer's Decision at 9.

> 13.  The Hearing Officer ordered DCPS to promptly complete the special education process and *upon a finding of eligibility, reimburse the parents for the Grove tuition until such time that DCPS provides an appropriate placement*.  Complaint ¶¶ 26-28; Hearing Officer's Decision at 10.

Defendants' SMF ¶¶ 12-13 (emphasis added).  DCPS filed this lawsuit to appeal this Hearing Officer Decision.

Defendants include in their Statement of Material Facts Not in Dispute their

summary of subsequent events as well.  <u>See</u> Defendants' SMF ¶¶ 14-18.  DCPS asserts that the subsequent events are not relevant to this lawsuit.  <u>See</u> Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl's Opp.") at 5.  The Court notes, however, that the IDEA provides: "In any action brought under this paragraph, the court . . . shall receive the records of the administrative proceedings; [and] . . . shall hear additional evidence at the request of a party . . . ." 20 U.S.C. § 1415(i)(2)(C).  Defendants have requested that the Court take into account this additional evidence, and the Court will do so in accordance with the statute to the extent that is necessary to resolve the issues in this case.

On March 9, 2007, DCPS completed a Multi-Disciplinary Team meeting and determined that S.A. is eligible for special education services.  <u>See</u> MDT Meeting Notes, Exh. 2 to Defendants' Motion to Show Cause, at 3 (pages not numbered); Defendants' SMF ¶ 17.

DCPS brought this lawsuit because, it asserts, the Hearing Officer made four significant errors:  (1) the Hearing Officer erred when he concluded that defendants' unilateral placement of S.A. at the Grove School did not relieve DCPS of the obligation to complete the evaluation process (Count I); (2) the Hearing Officer erred when he concluded that DCPS's failure to complete the eligibility process was a denial of FAPE (Count II); (3) the Hearing Officer erred when he ordered DCPS to continue with the eligibility process (Count III); and (4) the Hearing Officer erred when he ordered DCPS to reimburse the parents for S.A.'s tuition at the Grove School "from the date that an eligibility determination should have been made . . . until such time as the student is provided an appropriate placement" (Count IV).  <u>See</u> Complaint at 5-6 (quoting HOD at 10).

4

## II.  LEGAL STANDARDS

The IDEA provides as follows for District Court review of Hearing Officer

Decisions:

> Any party aggrieved by the findings and decision . . . shall have the
> right to bring a civil action with respect to the complaint presented
> pursuant to this section . . . .  In any action brought under this
> paragraph, the court . . . shall receive the records of the
> administrative proceedings, . . . shall hear additional evidence at
> the request of a party, and . . . basing its decision on the
> preponderance of the evidence, shall grant such relief as the court
> determines is appropriate.

20 U.S.C. § 1415(i)(2).  DCPS, as the aggrieved party in this case, has the burden of persuading

the Court by a preponderance of the evidence that the hearing officer was wrong.  See Angevine

v. Smith, 959 F.2d 292, 295 (D.C. Cir. 1992) (citing Kerkam v. McKenzie, 862 F.2d 884, 889

(D.C. Cir. 1989)); Armstrong v. District of Columbia, Civil Action No. 03-2598, 2005 WL

433448, at * 2 (D.D.C. Feb. 24, 2005).  Because of the parties' ability under the statute to

supplement the administrative record with new evidence, hearing officer determinations under

the IDEA are accorded "less deference than is conventional" in judicial review of agency

decisions.  Kerkam v. McKenzie, 862 F.2d at 887.

The question for this Court on the parties' cross-motions for summary judgment is

whether there are any genuine issues as to any material fact and whether either party is entitled to

judgment as a matter of law.  See FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is

'material' if a dispute over it might affect the outcome of a suit under governing law; factual

disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."

5

Holcomb v. Powell, 433 F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the

non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell,

433 F.3d at 895.  When a motion for summary judgment is under consideration, "the evidence of

the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."

Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; see also Washington Post Co. v. United States

Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).  Other than the question

whether the Court should consider facts concerning events that occurred after the Hearing Officer

issued his decision on September 14, 2006, there appear to be no disputes as to any material

facts.

## III.  DISCUSSION

The IDEA provides that "[a] free appropriate public education is available to all

children with disabilities residing in the State between the ages of 3 and 21, inclusive, including

children with disabilities who have been suspended or expelled from school."  20 U.S.C.

§ 1412(a)(1)(A).  As the Hearing Officer noted, "DCPS has a fundamental obligation to provide

FAPE to a child with a disability residing in the District of Columbia."  HOD at 6.  It is not

disputed that S.A. is a District of Columbia resident.

The IDEA further provides:

(A) A State educational agency, other State agency, or local
educational agency shall conduct a full and individual initial
evaluation . . . before the initial provision of special education and
related services to a child with a disability . . .

(B) . . . either a parent of a child, or a State educational agency,

> other State agency, or local educational agency may initiate a
> request for an initial evaluation to determine if the child is a child
> with a disability.
>
> (C) . . . [The] initial evaluation shall consist of procedures – (I) to
> determine whether a child is a child with a disability . . . within 60
> days of receiving parental consent for the evaluation, or, if the
> State establishes a timeframe within which the evaluation must be
> conducted, within such timeframe; and (II) to determine the
> educational needs of such child.

20 U.S.C. § 1414(a)(1).  It is undisputed that S.A.'s parents made a request for such an

evaluation in January 2006, while S.A. was a student at the Georgetown Day School.

      In arguing that it was correct to halt the evaluation process after learning that

S.A.'s parents had placed him at the Grove School in Madison, Connecticut on April 4, 2006,

DCPS asserts that "[p]rior to the 2004 revisions, the LEA where the parents reside was

responsible for conducting the child find process.  After the 2004 revision, the LEA where the

private school is located and where the child is enrolled is required to conduct child find and

provide equitable services to parentally-placed private school children with disabilities,[.]"

Plaintiff's Motion for Summary Judgment ("Pl's MSJ") at 9 (citing 71 Fed. Reg. 46590

(Aug. 14, 2006)).[2]  As a result, DCPS contends, when the parents moved S.A. to a school in

Madison, Connecticut (after their explicit request for an initial evaluation), DCPS no longer was

obligated to provide an evaluation of S.A. – only the LEA in Connecticut was.  See Pl's MSJ at

10.

---

[2]      The IDEA, as amended in 2004, provides that "[i]n calculating the proportionate
amount of Federal funds [to be expended on services to parentally placed private school
children], the local educational agency . . . shall conduct a thorough and complete child find
process to determine the number of parentally placed children with disabilities attending private
schools located in [sic] the local educational agency."  20 U.S.C. § 1412(a)(10)(A)(i)(II).

The Hearing Officer rejected this argument by DCPS, noting that the "'child find' requirement . . . is distinct from the requirement of an LEA to provide FAPE to its residents. IDEA 2004 did not eliminate the need or [*sic*] an LEA to offer FAPE to all children who reside in the LEA's educational district, even if the child is privately placed by the parent's [*sic*] in another jurisdiction." HOD at 7. The Hearing Officer further explained:

> The "child find" provisions of the Act require an LEA to identify, locate and evaluate students who are in need of special education services. In the case of a parental request for evaluation, the student has already been identified by the parental request, thus obviating the LEA need to identify that student as a possible student with a disability. However, the LEA is then obligated to move forward with the requirement of [IDEA] § 1414(a)(1) and determine whether the student is in fact a child with a disability. . . .
>
> The LEA is still required to offer FAPE to any resident when there is a parent request for the student to be evaluated for services. The LEA must offer FAPE by evaluating the student, convening an eligibility meeting, determining eligibility, developing an IEP if the student is eligible and determining and offering an appropriate placement.

HOD at 8; see id. at 9. It was this process that DCPS refused to continue once S.A.'s parents placed him in an out-of-jurisdiction private school. The Court agrees with the Hearing Officer that DCPS' refusal to continue the process was an error, and that it was a denial of FAPE. Because S.A. remained at all times a resident of the District of Columbia, the Hearing Officer was correct to order DCPS to continue the process.

In its motion for summary judgment, DCPS acknowledges that "[o]nce a child has been determined disabled pursuant to the statute, and is deemed eligible to receive special education and related services, the LEA where the child *resides* must provide FAPE." Pl's MSJ

at 11; see also Pl's Opp. at 7. DCPS argues, however, that the "eligibility determination must precede an offer of FAPE, and the responsibility for that eligibility determination rests with the Connecticut LEA." Pl's MSJ at 11-12. While recognizing that the Connecticut LEA has its own child find responsibilities, the Court agrees with the Hearing Officer that the child find process does not prevent a parent from initiating a request for an initial evaluation from the LEA of residence or relieve the LEA where the child resides from the obligation to provide an evaluation. Indeed, 20 U.S.C. § 1414(a)(1)(B) expressly provides that parents may initiate such a request. In addition, as defendants point out, the IDEA provides that "[a]ll children with disabilities *residing in the State* . . . who are in need of special education and related services, [must be] identified, located, and evaluated . . . ." See Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("Defs' Opp.") at 4 (emphasis added) (quoting 20 U.S.C. § 1412(a)(3)(A)). Just because Connecticut may have child find responsibilities of its own and just because S.A. is currently enrolled in school in Connecticut does not relieve DCPS from having to fulfill its own responsibilities as the LEA of residence to evaluate the student and make FAPE available. See Ms. K. v. Maine School Admin. District No. 40, Civil No. 06-42-P-H, 2006 WL 3081555, at * 14 (D. Me. Oct. 26, 2006) ("[T]he hearing officer erred as a matter of law when he read the IDEIA as relieving the [residential] District of all responsibility . . ."). The Court agrees with the Hearing Officer that DCPS's refusal to continue the evaluation process for S.A., a resident of the District of Columbia, constituted a denial of FAPE. Thus, defendants are entitled to judgment as a matter of law on Counts I, II and III of plaintiff's complaint.

   With respect to the reimbursement of tuition for the parents' placement of S.A. at the Grove School (Count IV), the Hearing Officer concluded that the parents would be entitled to

reimbursement "from the date that an eligibility determination should have been made . . . until such time as the student is provided an appropriate placement," if S.A. was later determined to be a "child with a disability" -- a determination that had not yet been made at the time of the HOD. See HOD at 9-10; see also 20 U.S.C. § 1412(a)(10)(C).[3] Retroactive reimbursement is appropriate relief under the IDEA. School Committee of Town of Burlington, Massachusetts v. Department of Education of Massachusetts, 471 U.S. 359, 370-71 (1985). Indeed, several decisions by judges of this Court have held expressly that tuition reimbursement is appropriate if DCPS has not made a free appropriate public education available to a child in a timely manner prior to a private school enrollment. See Alfono v. District of Columbia, 422 F. Supp. 2d 1, 5 (D.D.C. 2006); Roca v. District of Columbia, 2005 WL 681462, at *4 (D.D.C. March 14, 2005); Goldstrom v. District of Columbia, 319 F. Supp. 2d 5, 8 (D.D.C. 2004). As this Court has noted:

> Even DCPS cannot seriously argue that [the student's parents] should have kept [him] out of school and waited patiently until the first day of school had come and gone in the hope that DCPS somehow would save the day . . . . DCPS lost the right to make this "unilateral decision" argument when it failed to comply with the statute's procedural requirements, about which the Supreme Court has stated: "We think that the importance Congress attached to [the statute's] procedural requirements cannot be gainsaid."

Blackman v. District of Columbia, 277 F. Supp. 2d 71, 81 (D.D.C. 2003) (quoting Block v. District of Columbia, 748 F. Supp. 2d 891, 897 (D.D.C. 1990) (quoting Board of Education of the Hendrick Hudson Central School District v. Rowley, 458 U.S.176, 205 (1982))) (internal quotations omitted). This is particularly true in a case like the one before the Court, in which DCPS has refused to continue with the evaluation process at all.

---

[3]    On March 9, 2007, after issuance of the HOD, a DCPS Multidisciplinary Team ("MDT") determined that S.A. was eligible for special education. See Defendants' SMF ¶ 17.

The Court agrees with the hearing officer that, if certain requirements are met, DCPS must reimburse the parents for S.A.'s tuition "from the date that the eligibility determination should have been made . . . until such time as the student is provided with an appropriate placement." HOD at 10; see Holland v. District of Columbia, 71 F.3d 417, 420 n. 3 (D.C. Cir. 1995) (citing Florence County School District Four v. Carter, 510 U.S. 7, 10-11 (1993)); Blackman v. District of Columbia, 277 F. Supp. 2d at 84-85.[4]  As the D.C. Circuit has noted, however, "parents who place their children in private schools without the consent of local school officials are entitled to reimbursement only if a federal court finds that the public agency violated the IDEA, that the private school placement was an appropriate placement, and that [the] cost of the private education was reasonable[.]" Holland v. District of Columbia, 71 F.3d at 425 (citing Florence County School District Four v. Carter, 510 U.S. at 15.  While this Court concludes that DCPS violated the IDEA, the problem is that the Hearing Officer ordered reimbursement without making the findings required by Holland with respect to (1) whether the Grove School is the appropriate placement, and (2) whether the cost of private school education at the Grove School is reasonable.  The Court therefore will remand this case (Count IV) to the Hearing Officer to make these determinations.

Finally, defendants request that the Court include in its decision in this case a determination that the Grove School is the proper placement for S.A. and order funding for S.A. at the Grove School.  See Defendants' Motion for Summary Judgment ("Defs' MSJ") at 6.  The Court declines to make that determination.  There was an MDT meeting on March 9, 2007, at

---

[4]    DCPS itself bears the responsibility for having increased the time for which it must pay S.A.'s tuition by not providing him with a placement – in accordance with the procedural protections of the IDEA – more quickly.

which DCPS found S.A. to be eligible to receive special education services.  The parties

informed the Court during oral argument that the administrative process with respect to an

appropriate placement for S.A. is continuing.  The Court will not intervene in that process to tell

DCPS what its decision on the  merits should be.  Furthermore, if defendants are not satisfied

with the DCPS placement decision, they must seek relief in the first instance from a hearing

officer, not from this Court.  See 20 U.S.C. § 1415(f)(1)(A).  If still dissatisfied, defendants, as

aggrieved parties, then may file suit in this Court under 20 U.S.C. § 1415(i)(2).

       For the foregoing reasons, the Court will deny plaintiff's motion for summary

judgment on Counts I, II and III and will grant defendants' motion for summary judgment on

these counts.  It affirms the Hearing Officer's Decision of September 14, 2006 in part, and

remands this case to the Hearing Officer with respect to the tuition reimbursement issue (Count

IV).

       An Order consistent with this Opinion will be issued this same day.


/s/_____
PAUL L. FRIEDMAN
DATE:  July 3, 2007       United States District Judge

12